EVANS *et al.*, *Appellants*, v. KUNZE.

Division One, May 28, 1895.

1. **Boundary Line:** ADJOINING PROPRIETORS: ESTOPPEL. Where there has been a dispute between two adjoining proprietors as to the dividing line between their lots, and one of them caused a survey of the ground to be made and a line located for the purpose of erecting a partition wall thereon, and the other is notified of the location of the line and accepts the same by telling the workmen to go on with the construction of the partition wall thereon and pays one half of the cost of said wall and erects his own building so as to conform to said line and acquiesces in the location of said line for a period of six years, the latter will be estopped from asserting that said division line is not the true one.

Evans v. Kunze.

2. **Ejectment:** HUSBAND AND WIFE: APPELLATE PRACTICE. Where, in an action of ejectment by the husband and wife jointly, the right to the possession of the property by the husband upon the title of his wife is the only issue tried by the court below or raised by the pleadings, and judgment is rendered for defendant on the ground that the acts of the husband have estopped him from recovering possession, the judgment will not be reversed on the ground that the wife can not be deprived of her right to possession by the acts of her husband, such issue being raised for the first time in this court.

3. **Appellate Practice:** ESTOPPEL. A party will not be permitted to try a case upon one theory in the court below, and have the same reversed here upon an entirely different theory.

4. **Practice:** EJECTMENT. While ejectment is the appropriate form of action in this state to try title to land, yet it is by nature a possessory action, and may not always try the title.

5. ——: ——: HUSBAND AND WIFE. It is settled law in this state that a husband is entitled to the possession of his wife's lands held by her as at common law, and may sue in ejectment therefor without joining her in the action.

6. ——: ——: IMPROPER JOINDER OF PARTIES: APPELLATE PRACTICE: HARMLESS ERROR. The fact that a wife was unnecessarily joined with her husband as a party plaintiff in an action to recover possession of her land, and was included in the judgment against him, affords no ground for reversal, since the judgment may be corrected in this court by striking out her name as party plaintiff and leaving the judgment to stand in the name of the husband alone.

*Appeal from Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*J. S. Wooldridge, Noah M. Givan* and *H. Clay Daniel* for appellants.

(1) There is no evidence on which to predicate instruction 1, given by the court at the instance of the defendant; not a scintilla of evidence that plaintiffs, or either of them, "accepts the line" (indicated by Bybee, surveyor) "by telling the workmen to go ahead and build the partition wall thereon." The theory of

the instruction is erroneous. (2) Even if such agreement had been entered into between T. D. Evans, the husband of Henrietta M. Evans, who claims to own the disputed premises, and defendant, the act of agreement was contractual and would not estop or conclude her, she being at the time a married woman. *Glidden v. Strupler*, 52 Pa. St. 403; *Lowell v. Daniels*, 2 Gray, 161; *Saulsbury v. Corwin*, 40 Mo. App. 373; 39 Cent. Law Jour. 181–185. (3) Acquiescence in an erroneous boundary line, especially when procured by the act, conduct or misrepresentation of the opposing party, does not divest the party so acquiescing of title to real estate, unless the party claiming through such acquiescence has had and held exclusive, continuous, open, notorious, hostile and adverse possession of the land in dispute for ten years prior to the bringing of the action. A party can not, by trespassing upon, and acquiring possession of, the premises of another, divest the owner of title thereto, by an adverse possession short of the period of ten years. Defendant's possession of the premises in dispute began in 1885. Such acquiescence would not divest the title of a married woman. The court erred in giving defendant's second instruction. (4) The statute of limitations will not begin to run against a married woman on account of a disseisin of her fee simple lands occurring after the creation in her husband of a tenancy by the curtesy initiate, until the determination of such estate. *Valle v. Obenhouse*, 62 Mo. 82; *Campbell v. Glass Co.*, 84 Mo. 328; *Dyer v. Wittler*, 89 Mo. 86; *Dyer v. Brannock*, 66 Mo. 391; *Bradley v. Railroad*, 91 Mo. 499. (5) A party can not set up another's act or conduct as the ground of an estoppel, unless he has been misled or deceived by such act or conduct; nor can he set it up when he knew or had the same means of knowledge as to the truth of the statement or fact,

as the other party. So the trial court erred in refusing to give declaration of law number 2, as prayed for by defendant. *Henshaw v. Bissell*, 18 Wall. 255; *Brant v. Coal & Iron Co.*, 93 U. S. 326; *Steel v. Smelting Co.*, 106 U. S. 447; 3 Wash. Real Prop. [3 Ed.], ch. 2, sec. 36, p. 72; Herman on Etoppel, sec. 752, p. 878; *Wertz v. Jones*, 34 N. E. Rep. 2; *Roberts v. Abbot*, 26 N. E. Rep. 565, 566; *Acton v. Dooley*, 74 Mo. 63; *Rogers v. Marsh*, 73 Mo. 64; *Monks v. Belden*, 80 Mo. 639; *Spurlock v. Sproule*, 72 Mo. 503–509; *Wind v. Bank*, 39 Mo. App. 449; *Cole v. Skrainka*, 37 Mo. App. 87; *Fredericks v. Railroad*, 82 Mo. 402; *Burke v. Adams*, 80 Mo. 504–514. The court also erred in refusing declaration number 3 asked by plaintiffs. (6) The court gave the declaration of law number 4 asked by the plaintiffs, and, upon the principle of law and the theory of the case therein announced, the judgment should have been for the plaintiffs.

*Wm. L. Jarrott* with *Burney & Burney* for respondent.

(1) The law was correctly stated by the court in instructions 1 and 2, given at the request of defendant. *Betts v. Brown*, 3 Mo. App. 20; *Taylor v. Zepp*, 14 Mo. 482; *Blair v. Smith*, 16 Mo. 273; *Turner v. Baker*, 64 Mo. 218; *Acton v. Dooley*, 74 Mo. 63; *Atchison v. Pease*, 96 Mo. 566; *Krider v. Milner*, 99 Mo. 145. (2) The statute of limitations had clearly barred plaintiffs' cause of action. *Cole v. Parker*, 70 Mo. 379; *Handlan v. McManus*, 100 Mo. 125; *Atchison v. Pease*, 96 Mo. 566; *Irwin v. Woodmansee*, 104 Mo. 403; *Golterman v. Schiermeyer*, 111 Mo. 404. (3) While it is true that the statute of limitations will not run against a married woman in circumstances mentioned

in point 4 of appellants' brief, yet if the statute had commenced to run against the grantor of a married woman before she had obtained her deed, her disabilities would not stop the running of the statute. *Rogers v. Brown*, 61 Mo. 187; *Burdett v. May*, 100 Mo. 13. (4) Parties can not try a cause on one theory in the circuit court, and then ask for a reversal in this court upon an entirely different theory, and upon a point not raised at the trial. *Whetstone v. Shaw*, 70 Mo. 575; *Walker v. Owen*, 79 Mo. 563; *Tetherow v. Railroad*, 98 Mo. 85; *Jennings v. Railroad*, 99 Mo. 394; *Whitmore v. Sup. Lodge*, 100 Mo. 47; *Tomlinson v. Ellison*, 104 Mo. 112; *Bank v. Hammerslough*, 72 Mo. 274; *Smith v. Culligan*, 74 Mo. 387; *Holmes v. Braidwood*, 82 Mo. 610; *Fairbanks v. Long*, 91 Mo. 634; *Reilly v. Railroad*, 94 Mo. 611; *Townsend v. Gates*, 25 Mo. App. 340; *Bettes v. Magoon*, 85 Mo. 580.

BRACE, P. J.—This is an action in ejectment instituted in the circuit court of Cass county, by Thomas D. Evans and Henrietta Evans, plaintiffs, on the third day of October, 1891, against L. O. Kunze for a narrow strip of ground in lot 4, in block 2, in the city of Harrisonville, covered by defendant's building. The case was tried by the court without a jury. Judgment for the defendant, and the plaintiffs appeal.

The petition is in common form, the answer a general denial. Plea of the statute of limitations, and a plea of estoppel, as follows:

"For another and further defense and answer herein, defendant says that on the —— day of ——, A. D. 1885, he entered upon the construction of a brick building situate on the north twenty-nine feet of the lot above described, and with the knowledge, consent and acquiescence of plaintiff T. D. Evans, defendant contracted with plaintiff to pay and did pay one

half of the costs of constructing the said wall with the agreement that it should stand and be used as a partition wall between said Evans and defendant.

"That with the knowledge, acquiescence and consent of plaintiff Evans, this defendant constructed his building on said lot, covering twenty-eight and one sixth feet on the north side thereof, beginning on the east end and extending back —— feet thereon, and placed lasting and valuable improvements thereon. Wherefore, plaintiff Evans is estopped from claiming title to the land occupied by said building described above, and he prays judgment accordingly and for costs." Issue joined by reply.

Block 2 in the city of Harrisonville was originally divided into three lots of equal size, fronting on the public square and numbered from the north, 4, 5, and 6. Joel D. Campbell was the owner of lot 4 in said block, and is the common source of title. On the eleventh day of January, 1845, he conveyed to Eli Dodson a part of said lot contained within the following metes and bounds: "Beginning eighteen feet north of the northeast corner of lot 5 in said block, running thence north nineteen and one half feet, thence west one hundred and sixty-five feet to the alley, thence south nineteen and one half feet, thence east to the place of beginning." The plaintiff, Henrietta M. Evans, by mesne conveyances, acquired Dodson's title to this part of said lot, and also to one foot more on the south side thereof, making her lot front twenty and one half feet. Afterward, on the seventh of December, 1846, Campbell conveyed to John Cummins "all that part of lot number 4 in block number 2, north of Eli Dodson's line, which part of said lot is about twenty-nine feet fronting the public square and extends west back to the alley." The defendant by mesne convey-

ances has acquired Cummins' title to this part of said lot.

When these deeds were made, the width of the lot in front was evidently supposed to be sixty-six feet six inches. The Dodson deed, under which plaintiff claims, is the prior one and fixes specifically the boundaries and quantity thereby conveyed. The quantity conveyed by the Cummins deed is estimated; the southern boundary of the parcel conveyed being fixed, however, by the north line of the Dodson grant, which in front was thirty-seven and one half feet north of the northeast corner of lot 5. It appears from the evidence on this trial that the lot in fact only fronted sixty-four feet, five inches, so that the Cummins deed only conveyed the twenty-six feet, eleven inches, lying between the north line of the Dodson grant and the north line of the lot, instead of twenty-nine feet as estimated, and the true line between these coterminous proprietors is a line drawn that distance from the north line of the lot and block. Mrs. Evans acquired title in 1871, and Kunze in 1867, and each had ever since, until 1885, been in the occupancy of their respective subdivisions of said lot 4, claiming to own the same according to the lines called for in their several deeds.

In 1885, Evans and Kunze, being desirous of improving their property, each removed the old structures on the front part of their respective lots, and erected substantial brick business houses thereon, having a partition wall in common. The house built by Kunze, at a cost of over $6,000, being twenty-eight feet, two inches, in front by eighty feet deep, from the outside of the north wall, which was on the north line of his lot, to the outside of the south wall, extended fifteen inches over the true division line onto the plaintiffs' premises, and they in this action seek to recover this strip, or rather so much of it, as is in the

possession of the defendant, being the nine inches between the center of the wall and the plaintiff's north line.

There was evidence tending to prove the hypothetical facts stated in the following declarations of law given for the defendant, and of which the plaintiffs complain:

"1.   If the court sitting as a jury, find and believe from the evidence that, in the year 1885, the defendant Kunze, and plaintiff Evans, were contemplating building brick superstructures on their respective tracts of land, and a difference arose between them as to the true boundary, and that neither party knew the exact dividing line, and thereupon the said Kunze caused a survey of the ground to be made and a line located; and that the said Evans made no objections to the line thus located, but accepted the same, by telling the workmen to go ahead and build the partition wall thereon, and by paying for one half of the cost thereof, and so erecting his own building as to conform to said line, and that, but for such acceptance of said division line, the said Kunze would not have built his brick storehouse up to said line, then the verdict should be for defendant Kunze.

"2.   The court further declares the law of this case to be that if, in the year 1885, plaintiff and defendant were making preparations to build brick buildings upon their respective tracts of ground, and, being uncertain as to the true boundary line dividing their said property, a difference arose as to where the partition wall should be built; and thereafter the county surveyor was called in by Mr. Kunze to locate said line, for the purpose of fixing a place to construct the partition wall, and the surveyor did so locate it twenty-eight feet and two inches or thereabouts from the north line of said Kunze lot, that the said Evans had his

attention called to the location of said line by Mr.
Kunze, or his contractor, and upon inquiry expressed
himself as being satisfied that the wall should be built
upon the line so located, and thereupon the building
was constructed by Mr. Kunze on twenty-eight feet
and two inches in width off the north side of lot four,
extending from the east end to a point eighty feet west
thereof, and the partition wall on the line so fixed was
paid for one half by Kunze and one half by Evans, and
has been used and acquiesced in by both parties as the
boundary line ever since that date, then the plaintiff,
Evans, can not recover.''

The doctrine announced in these declarations is
supported by a long line of decisions in this state, of
which it is only necessary to cite the following: *Taylor
v. Zepp*, 14 Mo. 482; *Blair v. Smith*, 16 Mo. 273; *Tur-
ner v. Baker*, 64 Mo. 218; *Acton v. Dooley*, 74 Mo. 63;
*Jacobs v. Moseley*, 91 Mo. 457; *Schad v. Sharp*, 95 Mo.
573; *Atchison v. Pease*, 96 Mo. 566; *Krider v. Milner*,
99 Mo. 145.

The facts found by the court bring the case so
clearly within the principles established in these cases
and declared by the court, from whatever standpoint
they be viewed, that we deem it unnecessary to discuss
these declarations of law so far as they apply to the
plaintiff T. D. Evans, upon whose acts, declarations
and conduct they are based.

It is contended, however, that the judgment should
be reversed, because it appears from the evidence that
the legal title to the premises in controversy is in the
plaintiff, Mrs. Evans, and that she can not be estopped
from asserting her right to the possession of the prem-
ises, by the acts, declarations or conduct of her hus-
band.   This point was not made on the trial in the
court below in any manner whatever.   It was not nec-
essarily raised by the pleadings.   It does not appear

from the petition that Henrietta M. Evans was the owner of the premises sued for, nor that she was the wife of her coplaintiff. The petition is entitled "Thomas D. Evans and Henrietta M. Evans, plaintiffs v. L. O. Kunze, defendant," followed by the averment that plaintiffs are entitled to the possession of the premises, and that the defendant entered upon and unlawfully withholds the same from them.

While ejectment is the appropriate form of action in this state to try title, yet it is by nature a possessory action. Title to real estate does not always draw to it the right of immediate possession. Hence, while the action of ejectment always tries the right to possession, it may not always try the title. Hence a simple judgment in ejectment is not a bar to a subsequent like action upon the same title.

Now, although the evidence discloses that the legal title to the premises is in the plaintiff Henrietta M. Evans, and that she is a married woman, it also discloses the fact that she is the wife of her coplaintiff, T. D. Evans, and it is well settled law in this state that a husband is entitled to the possession of his wife's lands and may sue in ejectment therefor without joining her in the action. *Flesh v. Lindsay*, 115 Mo. 1; *Peck v. Lockridge*, 97 Mo. 549; *Mueller v. Kaessmann*, 84 Mo. 318; *Gray v. Dryden*, 79 Mo. 106; *Kanaga v. Railroad*, 76 Mo. 214.

The plaintiff T. D. Evans, *juri mariti* was entitled to the possession of his wife's fee simple lands, and as such was the proper party to sue to recover the possession of the premises. To his action for the possession, his wife was not a necessary nor a proper party. The right to the possession of the property by the husband Evans upon the title of his wife, was in fact, the only issue tried by the court below, and is the only case before us for review, for as has been

repeatedly held, a party will not be permitted to try a case upon one theory in the court below, and have the same reversed here upon an entirely different theory. *Tomlinson v. Ellison*, 104 Mo. 105, and cases cited.

The court correctly held that T. D. Evans, by his acts, declarations and conduct, had estopped himself from asserting his right to the possession of the premises upon the title of his wife as against the defendant, and might well have entered judgment against him, as it did, for the costs.   The fact that his wife was unnecessarily joined with him as a party plaintiff and included in the judgment, affords no ground for reversal of the judgment since "such joinder is not a fatal error, and may be corrected in this court by striking out her name as party plaintiff, and leaving the judgment to stand in the name of the husband alone." *Mueller v. Kaessmann*, 84 Mo. 318.   It will accordingly be so done, and the judgment affirmed.   All concur.

# INDEX

## AMENDMENTS.

1. CONSTITUTION: AMENDMENT. A constitution adopted by the people can be changed, modified or amended only in the manner provided by the instrument itself. *Russie v. Brazzell, 93.*

2. ———: ———: RELIGIOUS SOCIETY. The constitution of a religious society, adopted by its general conference and acquiesced in for forty years, although it was never submitted to, or ratified by, the persons to be governed by it, and was never fully recognized by the entire body of the church, will be held to constitute the paramount law thereof, and can be changed or repealed only as provided in the constitution itself, and not by the conference or legislative body by which it was adopted. *Ib.*

3. ———: ———: ———. The method of amendment of the constitution of a religious society considered and *held* to be in substantial compliance with the provisions of such constitution. *Ib.*

4. ———: ———: ———. Where a constitution of a religious society provided that amendments thereto should be made on the request of two thirds of the society, a resolution of the general conference that two thirds of those voting should be taken as the request of two thirds of the members, is conclusive on the courts. *Ib.*

5. ———: CONSTITUTION: AMENDMENTS: BALLOTS. A vote on proposed amendments to a constution of a religious society will not be adjudged invalid on collateral attack on the ground that the ballots were unfair, in that all contained the word "yes," with directions that those voting in the negative should erase such word and insert the word "no." *Ib.*

6. STATUTE: TITLE: CONSTITUTION. Amendments to sections of the revised statutes may be made by acts whose titles refer to those sections by numbers. *The State ex rel. Dickason v. County Court of Marion County, 427.*

## APPEALS.

1. ELECTION CONTEST: APPEAL: BOND: SUPERSEDEAS. The appeal bond required to be given by section 4744, Revised Statutes, 1889, providing for appeals from judgments in election contests, does not operate as a *supersedeas* as to anything appealed from, except the costs. *The State ex rel. Craig v. Woodson, 497.*

2. APPEAL: BOND: PRACTICE. Appeals in civil cases are regulated entirely by statute and the provisions regulating them must be strictly pursued. Where the statute requires an appeal bond and declares the conditions thereof, it implies that, without such bond, no appeal lies. *Ib.*

3. STATUTES: CONSTRUCTION: ELECTION CONTESTS: APPEALS. Statutes relating to ordinary appeals and appeals in election contests are statutes *in pari materia* and should be construed together with reference to the whole system of which they form a part. *I b.*

See PRACTICE IN SUPREME COURT, 3.

APPELLATE PRACTICE.

See PRACTICE IN SUPREME COURT.

ASSIGNMENT.

1. MORTGAGE: INVALID FORECLOSURE: ASSIGNMENT. An invalid foreclosure sale of property under a power contained in a mortgage does not necessarily operate to discharge it; it may be, and frequently is, given the effect in equity of an assignment to the purchaser for his protection. *Ess v. Griffith, 50.*

2. INSOLVENT CORPORATION: PREFERENCE: ASSIGNMENT. An insolvent corporation, having possession and control of its property, may, in the absence of fraud or statutory restriction, prefer a *bona fide* creditor by a deed of trust on its property, and the execution of a general assignment of the same property immediately thereafter, and on the same day, will not invalidate the preference. *The Waggoner-Gates Milling Co. v. The Ziegler-Zaiss Commission Co., 473.*

ATTACHMENT.

1. ATTACHMENT: STATUTE. 'All the substantial requirements of the statute must be fairly complied with in order to acquire jurisdiction of property by attachment. *Bryant v. Duffy, 18.*

2. ———: SHERIFF: ABSTRACT OF ATTACHMENT. A failure of the sheriff to file at abstract of attachment of land as required by Revised Statutes, 1889, section 543, subdivision 3, will render the attachment invalid. *I b.*

3. ———: JUDGMENT: CONSTRUCTIVE NOTICE. A judgment in an attachment suit rendered on constructive notice binds only the property attached. (R. S. 1889, sec. 558.) *I b.*

AUSTRALIAN BALLOT.

See ELECTIONS, 7, 8, 9.

BACK TAXES.

See TAXATION, 1, 5.

BILLS AND NOTES.

NOTE: TIME OF PAYMENT, EXTENSION OF. A note payable in three months will become payable on demand by the acceptance by the payee of payments of interest and portions of the principal from time to time for a period of years. *Greer v. Lafayette County Bank, 559.*

BILL OF EXCEPTIONS.

1. PRACTICE: BILL OF EXCEPTIONS: EXTENSION OF TIME. Where time was granted in which to file a bill of exceptions and before the expiration of the time an agreement was filed with the clerk extending the time to a given date, the bill can not be filed after such date agreed upon, notwithstanding the court may have attempted to make an order extending the time beyond the agreed date. *The State v. Woolwine, 347.*

**2.** APPELLATE PRACTICE: BILL OF EXCEPTIONS: EXTENSION OF TIME. The trial court can not, in vacation, extend the time for filing a bill of exceptions after the expiration of the time originally granted had expired, and a bill filed after such extension of time will be disregarded on appeal. *The State v. Chain, 361.*

**3.** ———: RECORD PROPER: BILL OF EXCEPTIONS. Recitals in the bill of exceptions will not supply the record proper. *Walser v. Wear, 652.*

### BOND.

See APPEALS, 1, 2.

RECOGNIZANCE.

### BOULEVARDS.

See MUNICIPAL CORPORATIONS, 19–27.

### BOUNDARIES.

**1.** CONVEYANCE: BOUNDARY: HIGHWAY. A conveyance of land bounded on a public highway carries with it the fee to the center of the highway, subject to the public easement, where there are no words or specific description showing a contrary intent, provided the grantor at the time owned to the center; and this is so, although no highway be mentioned, where the description by courses and distances carries the line along the side of a highway. *Grant v. Moon, 43.*

**2.** ———: ———: ———: PRACTICE: PRESUMPTION. The question whether a conveyance of land bounded on a highway passes the title to its center is one of intention to be ascertained from the language of the deed, together with other facts and circumstances properly going to explain that language such as the situation of the land and the relation of the parties; but the presumption of intent to pass the title to the center of the highway will prevail, unless a contrary intention appears. *Ib.*

**3.** ———: ———: ———: PRACTICE IN SUPREME COURT. Where there is evidence to support the finding of the trial court as to the location of disputed boundaries of land it will not be disturbed upon appeal. *Ib.*

**4.** BOUNDARY LINE: ADJOINING PROPRIETORS: ESTOPPEL. Where there has been a dispute between two adjoining proprietors as to the dividing line between their lots, and one of them caused a survey of the ground to be made and a line located for the purpose of erecting a partition wall thereon, and the other is notified of the location of the line and accepts the same by telling the workmen to go on with the construction of the partition wall thereon and pays one half of the cost of said wall and erects his own building so as to conform to said line and acquiesces in the location of said line for a period of six years, the latter will be estopped from asserting that said division line is not the true one. *Evans v. Kunze, 670.*

See DEDICATION, 1, 3.

### BURDEN OF PROOF.

See PRACTICE, CIVIL, 9.

### CARRIERS.

See RAILROADS.

## CENSUS.

JUDICIAL NOTICE: CENSUS. Judicial notice will be taken of the published official census of the United States for the purpose of determining the population of cities in Missouri. *The State ex rel. Dickason v. County Court of Marion County, 427.*

## CHANGE OF VENUE.

See VENUE.

## CHASTITY.

See CRIMINAL LAW, 31.

## CHATTELS.

See MORTGAGES AND DEEDS OF TRUST, 2--9.

## CHILDREN.

See LAND AND LAND TITLES, 8.

## CHURCHES.

See RELIGIOUS SOCIETY.

## CITIES.

See MUNICIPAL CORPORATIONS.

## CONDEMNATION PROCEEDINGS.

1. MUNICIPAL CORPORATION: STREET EXTENSION: EMINENT DOMAIN. Where, in a proceeding to condemn land for a street extension, it appears that an ordinance for extension was passed by the city council; that the beginning point of the extension is within the city limits as described by its charter and the charter declares the city to be within a certain county, the record sufficiently shows the extension to be within that county. *Kansas City v. Vineyard, 75.*

2. ———: ———: ———: PRESUMPTION. It will be presumed that the city did not, by its ordinance, extend the street beyond its territorial limits; if it did so, the burden was on the defendant to show such to be the fact. *Ib.*

3. ———: PUBLIC ACTS: JUDICIAL NOTICE. The courts will take judicial notice of a public act creating a corporation, and of the extent and limits of its territory as defined by said act. *Ib.*

4. EMINENT DOMAIN: JURY TRIAL: "INCORPORATED COMPANY:" CONSTITUTION. A municipal corporation is not an "incorporated company" within the constitution, article 12, section 4, which provides that "the right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right." *Ib.*

5. ———: ———: ——— :———. The fact that some of the defendants in such condemnation proceeding are incorporated companies does not give other defendants the right to demand a trial by jury. *Ib.*

6. MUNICIPAL CORPORATION: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: STATUTES: REPEAL. The power of the mayor and council of Kansas City to establish a boulevard under its charter (arts. 3 and 7) was not abrogated by the amendment of section 3, article 10, of such charter, requiring the board of park and boulevard commissioners to select streets for the establishment of boulevards and to recommend its action thereon to the council. *Kansas City v. Smart, 272.*

7. ——: ——: ——: PROCEDURE. An effort by Kansas City to acquire by amicable agreement, private property for the establishment of boulevards not being required by its charter, such attempted agreement is not essential to the maintenance of condemnation proceedings for such boulevard purposes. *Ib.*

8. ——: ——: ——: ——. The filing by the engineer of said city, with the mayor, of a map descriptive of the land sought to be condemned, and of its owners, is not a jurisdictional step under the charter of Kansas City in a proceeding to condemn land for boulevard purposes, and the failure of the mayor's record to recite the filing of such map does not affect the validity of such proceeding. *Ib.*

9. ——: ——: ——: FILING PAPER. The placing by an officer of a filing mark on a paper required to be filed in his office is not essential in order to make it a matter of record. *Ib.*

10. ——: ——: ——: OBJECTION TO JUROR. A general objection to the whole panel in proceedings to condemn land is insufficient, on appeal, as an objection to a particular juror on the ground that he was a member of the council when the ordinance providing for the proposed improvement was passed. *Ib.*

11. ——: ——: ——: JURY TRIAL. The fact that, in a condemnation proceeding by a city for boulevard purposes, certain of the defendants are incorporated companies does not give the other defendants the right to demand a trial by a jury of twelve under article 12, section 4, of the constitution. *Ib.*

12. ——: ——: ——: ——. A municipal corporation is not an incorporated company within the meaning of said constitutional provision guaranteeing a jury trial. *Ib.*

13. ——: ——: ——: VERDICT. The mere fact that the verdict in such proceedings assessed the benefits to the city at one dollar will not justify setting aside as unjust and discriminating, such verdict being founded on the conflicting evidence of numerous witnesses and on views of the premises by them extending over a period of several weeks. *Ib.*

14. ——: ——: ——. An appellant in such proceeding can not avail himself of any error or defects affecting the rights of other parties not appealing. *Ib.*

15. ——: ——: ——: VERDICT. A mistake in the description affecting a certain lot in the verdict is immaterial where it is obviated by a correct description in the ordinance providing for the condemnation proceedings. *Ib.*

16. ——: ——. Condemnation proceedings under an ordinance of Kansas City for the establishment of a boulevard, *held* valid as against the objection that the record does not disclose the state or county in which the property sought to be condemned is situated. *Ib.*

## CONSTABLES.

See OFFICES AND OFFICERS, 3.

## CONSTITUTIONAL LAW.

1. EMINENT DOMAIN: JURY TRIAL: "INCORPORATED COMPANY:" CONSTITUTION. A municipal corporation is not an "incorporated company" within the constitution, article 12, section 4, which provides that "the right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right." *Kansas City v. Vineyard, 75.*

2. ———: ———: ———: ———. The fact that some of the defendants in such condemnation proceeding are incorporated companies does not give other defendants the right to demand a trial by jury. *Ib.*

3. CONSTITUTION: AMENDMENT. A constitution adopted by the people can be changed, modified or amended only in the manner provided by the instrument itself. *Russie v. Brazzell, 93.*

4. ———: ———: RELIGIOUS SOCIETY. The constitution of a religious society, adopted by its general conference and acquiesced in for forty years, although it was never submitted to, or ratified by, the persons to be governed by it, and was never fully recognized by the entire body of the church, will be held to constitute the paramount law thereof, and can be changed or repealed only as provided in the constitution itself, and not by the conference or legislative body by which it was adopted. *Ib.*

5. ———: ———: ———. The method of amendment of the constitution of a religious society considered and *held* to be in substantial compliance with the provisions of such constitution. *Ib.*

6. ———: ———: ———. Where a constitution of a religious society provided that amendments thereto should be made on the request of two thirds of the society, a resolution of the general conference that two thirds of those voting should be taken as the request of two thirds of the members, is conclusive on the courts. *Ib.*

7. RELIGIOUS SOCIETY: CONFESSION OF FAITH, CHANGE OF. A revised confession, merely setting out more fully and clearly the doctrines of a religious society, is not a change of its confession of faith. *Ib.*

8. ———: CONSTITUTION: AMENDMENTS: BALLOTS. A vote on proposed amendments to a constitution of a religious society will not be adjudged invalid on collateral attack on the ground that the ballots were unfair, in that all contained the word "yes," with directions that those voting in the negative should erase such word and insert the word "no." *Ib.*

9. MUNICIPAL CORPORATIONS: CITY OF FOURTH CLASS: TAXATION: EXEMPTION: CONSTITUTION. Revised Statutes, 1889, section 1580, exempting from taxation, in cities of the fourth class, agricultural lands exceeding five acres included within the city limits is violative of the constitution, article 10, section 3, providing that taxes "shall be uniform upon the same class of subjects and shall be levied and collected by general laws" and article 10, section 6, which exempts agricultural land when "used exclusively for agricultural or horticultural societies." *City of Westport ex rel. Kitchen v. McGee, 152.*

10. ——: ——: ——: ——. Although the exemption contained in the foregoing section is unconstitutional, the power of extending the city limits therein provided for is not so dependent on the exemption clause as to render the extension clause unconstitutional. *Ib.*

11. CONSTITUTION: STATUTE: REPEAL BY IMPLICATION. An unconstitutional enactment will not by mere implication repeal a prior valid law. *Ib.*

12. TAXATION, RATE OF: CONSTITUTION. An annual tax, authorized by section 12, article 10, of the Missouri constitution, is not within the limitations of section 11 of that article, but may be imposed, under the conditions and restrictions of section 12, even though in excess of the rates stated in section 11. The effect and relations of these two sections are discussed. *Lamar Water & Electric Light Company v. City of Lamar, 188.*

13. ——: ——: SPECIAL ASSESSMENTS: LOCAL IMPROVEMENTS. The "special" taxes referred to in section 11, article 10, of the constitution, do not embrace special assessments for local improvements, though the latter are based on the taxing power. *Ib.*

14. ——: ——: ——: MUNICIPAL CORPORATION. Where a city of the fourth class agrees in proper manner to pay a certain sum annually for a water supply, during a term of twenty years, the total sum that may fall due within that period is not an "indebtedness" for that sum, within the meaning of article 10, section 12, of the constitution. *Ib.*

15. CONSTITUTION: CONSTRUCTION. In construing a constitution, effect must, if possible, be given to every clause. The court will discard an interpretation which will render a clause nugatory, where another interpretation may reasonably be put upon the instrument which will give that clause some effect. *Ib.*

16. ——: ——. In determining the meaning of any one word of a law, the context must be considered. *Ib.*

17. ——: ——. A constitution should be construed with due regard to the existing law at the time of its adoption. *Ib.*

18. ——: ——: STATUTE. In ascertaining the intention of a law, whether organic or statutory, it is always permissible to consider the consequences of any construction proposed. *Ib.*

19. ——: ——: ——. It is not to be supposed that unjust or unreasonable results are to flow from a law; so it will not be construed to accomplish such results, if its terms will permit a more beneficial reading. *Ib.*

20. ——: ——: TAXATION. In determining what constitutes the "income and revenue provided for" one year, within the meaning of section 12, article 10, of the constitution, all sources of income, including that from licenses, should be estimated. *Ib.*

21. ——: GRAND JURY: EXAMINATION OF BALLOTS: ELECTION FRAUDS. The court can not compel the production of ballot boxes before the grand jury for their examination while investigating election frauds. (Constitution, art. 8, sec. 3.) *Ex Parte Arnold, 256.*

22. ——: ——: ——: ——. Constitution, article 8, section 3, limits the right of the examination of ballots to election contest cases. *Ib.*

23. CRIMINAL LAW: TRADE MARK: COUNTERFEITING LABOR UNION'S LA-
BEL: STATUTE. The act of the legislature of 1893 (Laws, p. 260),
making it a misdemeanor to use a label adopted by a union of work-
ingmen, prohibits the unauthorized use of a label adopted by a union of
cigar makers and furnished to cigar manufacturers employing only
members of the union in the making of the cigars, to indicate that
the cigars were made by members of the union. Said act is not un-
constitutional on the ground that it is class legislation. *The State v.
Bishop, 373.*

24. DRAMSHOP: LICENSE: RAILROAD: STATUTE: CONSTITUTION. The pro-
viso in section 4575 (R. S. 1889) *held* constitutional as against the
objection that it is retrospective in effect. *The State ex rel. Dickason
v. County Court of Marion County, 427.*

25. ——: ——: ——: ——. The proviso of section 4575 is
within the scope of the title of the act of which it is part. *Ib.*

26. STATUTE: TITLE: CONSTITUTION. The title of an act is sufficient if it
does not mislead as to its chief topic, and the minor features have a
natural connection with the subject named in the title. *Ib.*

27. ——: ——: ——. Mere generality in the title of an act will
not vitiate it, if it is not misleading. *Ib.*

28. ——: ——: ——. Amendments to sections of the revised
statutes may be made by acts whose titles refer to those sections by
numbers. *Ib.*

29. ——: SPECIAL LAW: CONSTITUTION. That an act is to apply only
to counties having a stated population does not, of itself, render it
special. *Ib.*

30. CONSTITUTION: REENACTMENT OF PROVISION: CONSTRUCTION. Where
a particular phrase of a constitution is construed by the supreme
court, and then is reenacted in a later organic law, the construction
is to be taken as also reenacted, unless a different intent appear
somewhere in the new instrument. *Ib.*

31. CITY ORDINANCE: REGULATION OF PAWNBROKERS: CONSTITUTION. A
city ordinance requiring pawnbrokers to keep a book in which shall
be entered a description of all property left with them in pawn,
together with the name and description of the person leaving it, and to
submit such book to the mayor or to any police officer on demand, is
a mere police regulation to aid in the detection and prevention of
larceny, which a city is authorized to pass under a charter conferring
on it the power to license, regulate, tax or suppress pawnbrokers.
Such ordinance is not in conflict with the constitution, article 2, sec-
tion 11, providing that the people shall be secure in their persons,
papers, homes and effects from unreasonable searches and seizures.
*City of St. Joseph v. Levin, 588.*

32. CONSTITUTION: ACTS, 1891, P. 175: SPECIAL OR LOCAL LEGISLATION.
The provisions of the act approved April 23, 1891 (Acts, 1891, p. 175),
for paying justices of the peace of the city of St. Louis a salary, and
for paying their costs and fees into the city treasury, are not in con-
flict with any of the prohibitory clauses of section 53, article 4, of the
constitution. *Spaulding v. Brady, 653.*

33. ——: ——: ——. Legislation which is authorized by the con-
stitution itself can not be regarded as local or special within the
meaning of the prohibition of section 53, article 4, of the constitution,
although its application is purely local. *Ib.*

## CONSTRUCTION.

1. STATUTE: CONSTRUCTION: FORFEITURE. It is a general principle of the common law that a statute should be liberally construed to prevent a forfeiture of rights. *McGrath v. Kansas City & Colorado Railroad Company, 1*.

2. ——: ——. A change of language in a statute does not necessarily indicate a change in its prior construction; and will not be held to have such effect where the change appears to be merely an embodiment of that construction into positive law. *I b.*

3. CONSTITUTION: CONSTRUCTION. In construing a constitution, effect must, if possible, be given to every clause. The court will discard an interpretation which will render a clause nugatory, where another interpretation may reasonably be put upon the instrument which will give that clause some effect. *Lamar Water & Electric Company v. City of Lamar, 188*.

4. ——: ——. In determining the meaning of any one word of a law, the context must be considered. *I b.*

5. ——: ——. A constitution should be construed with due regard to the existing law at the time of its adoption. *I b.*

6. ——: ——: STATUTE. In ascertaining the intention of a law, whether organic or statutory, it is always permissible to consider the consequences of any construction proposed. *I b.*

7. ——: ——: ——. It is not to be supposed that unjust or unreasonable results are to flow from a law; so it will not be construed to accomplish such results, if its terms will permit a more beneficial reading. *I b.*

8. ——: ——: TAXATION. In determining what constitutes the "income and revenue provided for" one year, within the meaning of section 12, article 10, of the constitution, all sources of income including that from licenses, should be estimated. *I b.*

9. CONTRACT BETWEEN FERRY AND RAILROAD COMPANIES: INTERPRETATION. A contract between the Wiggins Ferry Company, the proprietor of a tract of land on the Mississippi river opposite St. Louis, including Bloody Island, and the Chicago & Alton Railroad Company, operating a road to such island, recited the ferry company's object to be to secure company's ferrying business, and the railroad company's object to be to secure depot grounds, etc., which were therein granted to it by the ferry company; the contract further providing that the railroad company would always employ said ferry company to transport across such river all persons and property taken across, to or from the railroad, and that "no other than the Wiggins Ferry" should ever be employed by the railroad company to cross any passengers or freight coming or going on such road. *Held*, that the contract did not prevent the railroad company from carrying its freight and passengers over the river at the ferry crossing by means of a bridge afterward constructed, but merely prohibited it from employing any other ferry in transporting them. *Wiggins Ferry Company v. Chicago & Alton Railroad Company, 224*.

10. ——: ——: PUBLIC POLICY. A construction of the contract that it prevented the use of the bridge by the railroad company for the transportation of freight and passengers would render it contrary to public policy and void. *I b.*

11. ——: ——: ——. Where a contract is fairly and reasonably open to two constructions, one making it legal and the other illegal, the former must be adopted. *I b.*

12. ——: ——: CARRIER:. CONVERSION. A shipper of goods has the right to designate the connecting line over which his goods shall be carried and the first carrier is bound to obey the direction of the shipper in respect thereto, and if he does not do so he is liable for conversion. *I b.*

13. ——: ——: BREACH OF CONTRACT: LOSS OF PROFITS. If, however, the railroad company, by persistent and determined effort, diverted its car transfer business to another ferry, by reason of its failure to make any connection with the Wiggins Ferry Company, so that shippers had no choice of routes across the river, such railroad company, under its contract above mentioned, became liable to the Wiggins Ferry Company for its loss of profits on its business. *I b.*

14. ——: ——. The railroad is not liable, under said contract, to the Wiggins Ferry Company for loss of profits on cars delivered by it for other railway companies to another ferry for transportation across the river under contracts between them and the company, and with which contract the Wiggins Ferry Company had nothing to do. *I b.*

15. ——: ——. Nor is such railroad company liable on account of cars delivered by it to another railroad company at Bloody Island, by which they were conveyed down the river eight miles beyond the limits of St. Louis where they were ferried across the river and delivered to connecting carriers; such cars being delivered to such other road by directions of the consignor or consignee. *I b.*

16. CARRIER. POOLING CONTRACT: PARTNERSHIP. A pooling contract entered into between three carriers provided that their joint gross earnings should be divided between them on a fixed basis, each company being required to report its earnings to a pooling auditor, whose duty it was to state the accounts between the contracting parties; it was further provided that transportation rates should be charged by each company according to a schedule to be agreed upon and that there should be no interference by one company with the business of the others. *Held,* that the contract did not constitute the parties thereto partners. *I b.*

17. CONSTITUTION: REENACTMENT OF PROVISION: CONSTRUCTION. Where a particular phrase of a constitution is construed by the supreme court, and then is reenacted in a later organic law, the construction is to be taken as also reenacted, unless a different intent appear somewhere in the new instrument. *The State ex rel. Dickason v. County Court of Marion County, 427.*

18. STATUTE, CONSTRUCTION OF: STARE DECISIS. Where a mode of legislation has been followed on the faith of rulings of the supreme court, and rights have been acquired thereunder, the court will follow those rulings on the maxim, *stare decisis,* without reopening the question of their correctness. *I b.*

19. ——. A statute, fairly susceptible of a construction in harmony with the organic law, must be given that construction by the courts in order to sustain it. *I b.*

20. ——: ——. It is the duty of the courts to sustain a legislative act, unless convinced that it infringes some particular provision of the organic law. *I b.*

21. ———. The words of a statute should be constructed in accordance with their plain and ordinary meaning. *Ib.*

22. ———. All parts of a law must be considered in getting at the full significance of any part of it. *Ib.*

23. STATUTES: CONSTRUCTION: ELECTION CONTESTS: APPEALS. Statutes relating to ordinary appeals and appeals in election contests are statutes *in pari materia* and should be construed together with reference to the whole system of which they form a part. *The State ex rel. Craig v. Woodson, 497.*

24. ———: ———: ———: ———. Statutes on cognate subjects, not strictly *in pari materia,* may be considered as auxiliaries of interpretation of a statute. *Ib.*

CONTEMPT.

1. HABEAS CORPUS: CONTEMPT. A person committed for contempt for disobeying an order which the court committing him had no authority to make, may be released on *habeas corpus* proceeding. *Ex Parte Arnold, 256.*

2. APPELLATE PRACTICE: PROHIBITION: CONTEMPT. Whether a Missouri creditor, who sues in Illinois to obtain the application to his demand of a fund due there to a Missouri corporation (in the hands of a receiver of a Missouri circuit court), is guilty of contempt of the latter, is *held* to be a question which the supreme court will not decide on an application for a prohibition against the circuit court, in advance of a ruling by the latter on that subject. *The State ex rel. Hofmann v. Scarritt, 331.*

3. CIRCUIT COURT: JURISDICTION: CONTEMPT. The circuit court in Missouri has jurisdiction to punish for contempt, and has the power to determine, in the first instance, whether or not a party duly brought before it on such a charge has been guilty thereof. *Ib.*

4. PROHIBITION: CONTEMPT. A writ of prohibition will not lie to prevent the examination of a charge of contempt in a pending proceeding merely on the ground that the petition in the proceeding does not state a cause of action, or is otherwise defective. *Ib.*

CONTRACTS.

1. JUDGMENT: CONTRACT: LIMITATIONS: STATUTE OF KANSAS. A judgment is a contract within the meaning of section 18 of the civil code of Kansas requiring actions upon any agreement, contract or promise in writing, other than for the recovery of real property, to be brought within five years. And under the provisions of section 445 of said code, declaring that a judgment shall become dormant if execution is not sued out within five years, or if five years have intervened between the date of the last execution issued and the suing out of another, no action can be brought on a judgment more than five years after its entry, where no execution was issued thereon and no steps have been taken to revive it. *St. Louis Type Foundry Company v. Jackson, 119.*

2. ————: ————: ————: JUDGMENT OF KANSAS. No action can be brought in this state upon a judgment rendered in Kansas, after such judgment has, by the law of the latter state, become dormant, which the decisions of that state construe to mean dead. *Ib.*

3. CONTRACT BETWEEN FERRY AND RAILROAD COMPANIES: INTERPRETATION. A contract between the Wiggins Ferry Company, the proprietor of a tract of land on the Mississippi river opposite St. Louis, including Bloody Island, and the Chicago & Alton Railroad Company, operating a road to such island, recited the ferry company's object to be to secure the railroad company's ferrying business, and the railroad company's object to be to secure depot grounds, etc., which were therein granted to it by the ferry company; the contract further providing that the railroad company would always employ said ferry company to transport across such river all persons and property taken across, to or from the railroad, and that "no other than the Wiggins Ferry" should ever be employed by the railroad company to cross any passengers or freight coming or going on such road. *Held*, that the contract did not prevent the railroad company from carrying its freight and passengers over the river at the ferry crossing by means of a bridge afterward constructed, but merely prohibited it from employing any other ferry in transporting them. *Wiggins Ferry Company v. Chicago & Alton Railroad Company, 224.*

4. ————: ————: PUBLIC POLICY. A construction of the contract that it prevented the use of the bridge by the railroad company for the transportation of freight and passengers would render it contrary to public policy and void. *Ib.*

5. ————: ————: ————. Where a contract is fairly and reasonably open to two constructions, one making it legal and the other illegal, the former must be adopted. *Ib.*

6. ————: ————: CARRIER: CONVERSION. A shipper of goods has the right to designate the connecting line over which his goods shall be carried and the first carrier is bound to obey the direction of the shipper in respect thereto, and if he does not do so he is liable for conversion. *Ib.*

7. ————: ————: BREACH OF CONTRACT: LOSS OF PROFITS. If, however, the railroad company, by persistent and determined effort, diverted its car transfer business to another ferry, by reason of its failure to make any connection with the Wiggins Ferry Company, so that shippers had no choice of routes across the river, such railroad company, under its contract above mentioned, became liable to the Wiggins Ferry Company for its loss of profits on its business. *Ib.*

8. ————: ————. The railroad is not liable, under said contract, to the Wiggins Ferry Company for loss of profits on cars delivered by it for other railway companies to another ferry for transportation across the river under contracts between them and the ferry company, and with which contract the Wiggins Ferry Company had nothing to do. *Ib.*

9. ————: ————. Nor is such railroad company liable on account of cars delivered by it to another railroad company at Bloody Island, by which they were conveyed down the river eight miles beyond the limits of St. Louis where they were ferried across the river and delivered to connecting carriers; such cars being delivered to such other road by directions of the consignor or consignee. *Ib.*

10. CARRIER: POOLING CONTRACT: PARTNERSHIP. A pooling contract entered into between three carriers provided that their joint gross earnings should be divided between them on a fixed basis, each company being required to report its earnings to a pooling auditor, whose duty it was to state the accounts between the contracting parties; it was further provided that transportation rates should be charged by each company according to a schedule to be agreed upon and that there should be no interference by one company with the business of the others. *Held,* that the contract did not constitute the parties thereto partners. *Ib.*

11. CONTRACT, BREACH OF: MEASURE OF DAMAGES. Where, in an action for breach of contract, the measure of damages applied by the referee was that approved on the former appeal in a prior suit between the same parties and the finding of facts as to the loss of profits, though high, is supported by the evidence, an objection that the damages allowed are excessive will not be sustained. *Ib.*

12. ———: INTEREST. Plaintiff is not entitled to interest on the damages sustained in an action for a breach of contract where the measure of damages is the loss of profits. *Ib.*

13. SALE: MEMORANDUM: PAROL EVIDENCE. Where the memorandum of a contract of sale is incomplete, parol evidence is admissible to show the omitted matter. *Quick v. Glass, 320.*

14. ———: CONTRACT: PASSING TITLE. In the absence of fraud, the title to lumber, cut in accordance with an agreement by plaintiff to buy the lumber cut by defendant's mill for a year, passed, as between the grantor and grantee, when the lumber was separately stacked, marked with plaintiff's initials, measured and a formal unconditional bill of sale was executed and delivered, though plaintiff still owed a residue on the lumber which was not to be paid until it was shipped. *Collins v. Wayne Lumber Company, 451.*

## CONTRIBUTORY NEGLIGENCE.

See NEGLIGENCE, 4, 5, 6, 8, 9, 13.

## CONVERSION.

1. CONVERSION: PARTIES. In an action for conversion, the purchaser of the property as agent, and his principal who received the property, are properly joined as defendants. *Ess v. Griffith, 50.*

2. CONTRACT BETWEEN FERRY AND RAILROAD COMPANIES: INTERPRETATION: CARRIER: CONVERSION. A shipper of goods has the right to designate the connecting line over which his goods shall be carried and the first carrier is bound to obey the direction of the shipper in respect thereto, and if he does not do so he is liable for conversion. *Wiggins Ferry Company v. Chicago & Alton Railroad Company, 224.*

3. LOAN PAYABLE ON DEMAND: PLEDGE: SALE: NOTICE: CONVERSION. A sale of collaterals held for a loan payable on demand, without notice to or demand of the pledgor, is invalid and may, at the option of the latter, be affirmed or treated as a conversion. *Greer v. Lafayette County Bank, 559.*

4. PLEDGE: SALE: NOTICE: AGENT: REDEMPTION. The pledgee must, as a general rule, give reasonable notice to the pledgor of his intention to sell and he can not buy at the sale, whether made by himself or his agent or broker. A sale without notice or at which the pledgee purchases is a breach of the contract of pledge and the pledgor may treat such sale and purchase as a conversion and will be entitled to redeem on payment or tender of the principal debt. *Ib.*

# 694                           INDEX.

## CONVEYANCES.

1. CONVEYANCE: BOUNDARY: HIGHWAY. A conveyance of land bounded on a public highway carries with it the fee to the center of the highway, subject to the public easement, where there are no words or specific description showing a contrary intent, provided the grantor at the time owned to the center; and this is so, although no highway be mentioned, where the description by courses and distances carries the line along the side of a highway. *Grant v. Moon, 43.*

2. ———: ———: ———: PRACTICE: PRESUMPTION. The question whether a conveyance of land bounded on a highway passes the title to its center is one of intention to be ascertained from the language of the deed, together with other facts and circumstances properly going to explain that language such as the situation of the land and the relation of the parties; but the presumption of intent to pass the title to the center of the highway will prevail, unless a contrary intention appears. *I b.*

See DEEDS.

## CORPORATIONS.

1. CORPORATION: DEBTOR AND CREDITOR: PREFERENCE. A corporation has the right, in good faith, to prefer a creditor, though it is in a failing condition, irrespective of whether its managers intend to go on, or to wind up its business, so long as the corporation is not dissolved, and retains control of its property. *Slavens v. Cook Drug Company, 341.*

2. INSOLVENT CORPORATION: PREFERENCE: ASSIGNMENT. An insolvent corporation, having possession and control of its property, may in the absence of fraud or statutory restriction, prefer a *bona fide* creditor by a deed of trust on its property, and the execution of a general assignment of the same property immediately thereafter, and on the same day, will not invalidate the preference. *The Waggoner-Gates Milling Company v. The Ziegler-Zaiss Commission Company, 473.*

3. ———: ———. *Bona fide* creditors of such corporation, who are not stockholders or directors therein, are not precluded from taking security for their claims, though the notes held by them against the corporation were also indorsed by some of the directors individually. *I b.*

4. STOCK, VALUE OF: EVIDENCE. In the absence of evidence of the market value of stock, its value may be established by showing its dividend-earning capacity. *Greer v. Lafayette County Bank, 559.*

## COUNTERFEITING.

See CRIMINAL LAW, 3–6.

## COUNTIES.

See STATUTES, 5, 7.

## COUNTY COURT.

See LAND AND LAND TITLES, 9.

## CRIMINAL LAW.

1. CONSTITUTION: GRAND JURY: EXAMINATION OF BALLOTS: ELECTION FRAUDS. The court can not compel the production of ballot boxes before the grand jury for their examination while investigating election frauds. (Constitution, art. 8, sec. 3.) *Ex Parte Arnold, 256.*

2. ———: ———: ———: ———. Constitution, article 8, section 3, limits the right of the examination of ballots to election contest cases. *I b.*

3. CRIMINAL LAW: TRADE-MARK: COUNTERFEITING LABOR UNION'S LABEL: STATUTE. The act of the legislature of 1893 (Laws, p. 260), making it a misdemeanor to use a label adopted by a union of workingmen, prohibits the unauthorized use of a label adopted by a union of cigar makers and furnished to cigar manufacturers employing only members of the union in the making of the cigars, to indicate that the cigars were made by members of the union. *The State v. Bishop, 373.*

4. ———: ———: ———: ———: CONSTITUTION. The foregoing act of 1893 is not unconstitutional on the ground that it is class legislation (Const., art. 4, sec. 53).

5. ———: ———: ———: ———: INDICTMENT. It is not necessary for an indictment under said act of 1893 (Laws, p. 260) to charge an exclusive right in the union to the use of the label. *I b.*

6. ———: ———: ———: ———. Guilty knowledge on the part of the defendant that the label is counterfeited must be shown to authorize a conviction under the act of 1893, *supra. I b.*

7. PLEADING, CRIMINAL: INDICTMENT: FELONIOUS ASSAULT. An indictment for felonious assault which charges that E. in and upon the body of one S., "feloniously, on purpose and of malice aforethought did make an assault and with a deadly weapon, to wit, a knife of the length of six inches, etc., the said E. did then and there feloniously, on purpose and of his malice aforethought, strike, cut, stab, and thrust, with intent then and there him the said S. to kill and murder," is fatally defective in failing to allege who was cut, struck or stabbed. *The State v. Evans, 406.*

8. ———: ———: INTENDMENT. In criminal prosecutions everything constituting the offense must be charged with certainty and clearness and nothing material must be left to intendment or implication. *I b.*

9. CRIMINAL LAW: ASSAULT: IMPERFECT SELF-DEFENSE. An assault, voluntarily made with intent only to commit an ordinary battery, is not made with malice aforethought and will not deprive the assailant of his imperfect right of self-defense. (Approving *State v. Partlow*, 90 Mo. 608.) *I b.*

10. PRACTICE, CRIMINAL: MOTION FOR NEW TRIAL. Allegations of fact contained in a motion for new trial do not prove themselves; complaint, in such motion, of misconduct of attorney and jurors will not be noticed on appeal where there is no evidence in the record of any misconduct on their part. *The State v. Whalen, 467.*

11. ———: ———: NEWLY DISCOVERED EVIDENCE. A new trial will not be granted upon the ground of newly discovered evidence, where it is not shown that such evidence has in fact been discovered and its character disclosed. *I b.*

12. ———: SPECIAL GRAND JURY: PRESUMPTION. It will not be presumed that the trial court impaneled a special grand jury before the discharge of the regular one. *The State v. Overstreet, 470.*

13. ———: ———: DISCRETION OF COURT. The impaneling of a special grand jury is a matter within the discretion of the trial court, and, like all matters of discretion, its action in such cases will not be reviewed on appeal, unless its discretion has been abused. *I b.*

14. ———: ———: JURISDICTION. A special grand jury is not restricted in its investigations exclusively to those offenses which have been committed since the adjournment of the regular grand jury, but, when impaneled, it may inquire and make presentment of any offense committed within the jurisdiction of the court, which is not barred by the statute of limitations. *Ib.*

15. PEDDLER, WHO IS: STATUTE. One who goes from place to place in this state for the purpose of offering for sale and who sells sewing machines manufactured in another state and the property of a citizen of the latter state, is a peddler within the meaning of Revised Statutes, section 7211. *The State v. Snoddy, 523.*

16. ———: SALE OF ARTICLES MANUFACTURED IN ANOTHER STATE: LICENSE: PENALTY. A peddler who sells in this state articles manufactured and owned by a resident of another state must procure the license required by law (R. S. 1889, sec. 7212), and failure to do so will render him liable to the penalty imposed by the statute. (R. S. 1889, sec. 7218.) *Ib.*

17. ———: ———: ———: ———. The statutes of this state defining who are peddlers, prohibiting them from dealing as such without license, and prescribing penalties therefor, make no distinction between articles manufactured and owned by residents of other states and those manufactured and owned by residents of this state, and are not in conflict with section 1 of article 8 of the constitution of the United States delegating to congress the sole power to regulate commerce among the states. *Ib.*

18. CRIMINAL LAW: DEFILING WARD: INDICTMENT. An indictment for defiling a female under eighteen years of age, intrusted to defendant's care, which alleges that such female was on a certain day under eighteen years of age and that on that day the defendant, to whose care she had been and was then confided, defiled her, is sufficient. *The State v. Lingle, 528.*

19. ———: PRACTICE: CHANGE OF VENUE: EVIDENCE. Where a change of venue has been taken in a criminal case, it is for the court trying the case to determine whether the order of removal and prior proceedings in the county in which the prosecution originated were sufficient to confer jurisdiction, and the transcript of such order and prior proceedings need not be offered in evidence on the trial by the state. *Ib.*

20. ———: ———: ———: PRESUMPTION. An order of removal on change of venue is sufficient, where the transcript contains the petition of defendant for a change, necessary affidavits in support of it, and recites that the application was considered by the court, the change awarded and bond fixed and given for defendant's appearance at the next term of the circuit court of the county to which the change was awarded, and it will not be presumed in such case that there might have been another application on a different ground. *Ib.*

21. ———: ———: INSTRUCTION: DEFILING WARD. Where, in a prosecution for defiling a ward, the indictment alleges that she was at the time of such defilement, under eighteen years of age, it was proper to submit to the jury the question whether she was at the time of the commission of the offense under that age. *Ib.*

22. ———: ———: ———: DEFENDANT AND WIFE TESTIFYING, CREDI-BILITY OF. It is proper to instruct the jury in a criminal case that in considering the weight of the evidence given by both the defendant and his wife they will take into consideration the fact that he is the defendant, testifying in his own behalf, and that she is his wife, and that they may consider their interest in the case and the marital relation in passing on the credibility of their testimony. *I b.*

23. ———: ———: ———: DEFILING WARD: EVIDENCE OF HIGHER CRIME. On trial for defiling a ward, it is proper to instruct the jury that before they can acquit, because a higher degree of crime has been shown, they must believe from the evidence that if defendant were on trial for a higher degree of crime, it would be their duty, from such evidence, to convict him of such higher degree of crime; but although they believe from the evidence that defendant used force to accomplish his purpose, yet, if they further believe that the prosecuting witness did yield her consent, however reluctantly, before the carnal act was accomplished, the defendant would not be guilty of such higher crime. *I b.*

24. ———: ———: INSTRUCTIONS. Where a term used in an instruction has been properly defined, it is not error to refuse another instruction defining it. *I b.*

25. ———: ———: DEFILING WARD: FORCE: REMARKS OF COUNSEL. It is improper for counsel for defendant on trial for defiling his ward, to comment, in his opening argument to the jury, on the improbability of conception following an act of sexual intercourse effected by force, where there was no expert or other testimony to that effect. *I b.*

26. EVIDENCE: JUDICIAL NOTICE: CITY ORDINANCE. A conviction under a city ordinance can not be sustained where it was not read in evidence. *City of St. Louis v. Roche, 541.*

27. CITY ORDINANCE: REPUTATION: EVIDENCE. The fact that, on the trial of one for violating a city ordinance in knowingly associating with persons having the reputation of being thieves, policemen testify that the persons with whom defendant associated had the reputation of being thieves does not constitute proof of the evil reputation of such associates, and this is true though such testimony is admitted without objection. *I b.*

28. ———: ASSOCIATING WITH THIEVES: PERSONAL LIBERTY. A city ordinance making it an offense for anyone to knowingly associate with persons having the reputation of being thieves, gamblers, etc., for the purpose of aiding and abetting such persons in their unlawful acts is invalid because it is an invasion of personal liberty. *I b.*

29. CRIMINAL LAW: RAPE: AGE OF PROSECUTRIX: EVIDENCE. In a prosecution for rape, where the prosecutrix, her mother, and another testified positively and directly that the prosecutrix was, at the time of the alleged offense, under the age of fourteen years, and other witnesses gave indirect and unsatisfactory testimony to the contrary, the evidence will be held sufficient to sustain the finding of the jury that she was then under fourteen years of age. *The State v. Duffey, 549.*

30. ———: ———: ———: ———. The evidence examined and held sufficient to sustain the finding that defendant had sexual intercourse with the prosecutrix constituting rape, she being at the time under fourteen years of age. *I b.*

31. ———: ———: ———: ———: CHASTITY. Evidence of bad reputation for chastity is admissible in prosecutions for rape, where the woman is capable of consenting, but is immaterial where the prosecutrix is under the age of consent, except to affect her credibility, for which purpose it is competent. *Ib.*

See PRACTICE, CRIMINAL, 13–19.

DAMAGES.

1. MUNICIPAL CORPORATION: CHANGE OF STREET GRADE: MEASURE OF DAMAGES: EVIDENCE. In actions for damages to property caused by lowering the grade of a street, the general rule is that when the reasonable cost of repairing the injury by restoring the premises, as near as may be, to their former condition in less than the diminution in the market value of the property by reason of the injury, such cost of restoration is the proper measure of damages; but when the cost of restoration is more than such diminution the latter is generally the true measure of damages, and evidence of the cost of restoration and of diminution in the market value are both admissible on the question of damages to be awarded. *Smith v. Kansas City, 23.*

2. ———: ———: ———: INSTRUCTION. In an action for damages to property by lowering the grade of a street, an instruction to the effect that, in estimating the damages, the jury may take into consideration, with the other evidence in the case, the cost of adjusting the premises to the condition of the street created by the change of grade, is not erroneous, where the measure of damages is fixed by other instructions at the difference in the market value before and after the change. *Ib.*

3. CONTRACT, BREACH OF: MEASURE OF DAMAGES. Where, in an action for breach of contract, the measure of damages applied by the referee was that approved on the former appeal in a prior suit between the same parties and the finding of facts as to the loss of profits, though high, is supported by the evidence, an objection that the damages allowed are excessive will not be sustained. *Wiggins Ferry Co. v. Chicago & Alton Railroad Company, 224.*

4. ———: INTEREST. Plaintiff is not entitled to interest on the damages sustained in an action for a breach of contract where the measure of damages is the loss of profits. *Ib.*

DEBTOR AND CREDITOR.

See PREFERENCE.

DECREE.

See JUDGMENTS, 7.

DEDICATION.

1. DEDICATION: PLAT: BOUNDARIES: MONUMENTS. Where an addition to a city was platted with reference to monuments fixed by a government survey, there being no actual survey of the ground, and streets of such addition marked on the plat, were subsequently located on the ground by measurements with a chain without other instruments, the lines of the streets so measured, and corners so located, must yield to the true location made by an accurate survey controlled by the government monuments as indicated in the recorded plat. *Brown v. The City of Carthage, 10.*

2. ———: ———: ADDITION TO CITY: STREETS AND ALLEYS: RESERVA-
TIONS. The reservation in the plat, of an addition to a city, of the
trees and rocks on the surface of the streets and alleys, does not
impair the force and effect of the plat as an absolute statutory dedi-
cation for the purposes contemplated by the statute, the fee by such
dedication becoming vested in the city without the necessity of an
acceptance on the part of the public. (R. S. 1889, sec. 7313.) *Ib.*

3. ———: ———: ———: ———. After such dedication,
neither the dedicator, or anyone claiming under him, can change the
boundaries of the streets and alleys. *Ib.*

4. ———: ———: ———: ———: LIMITATIONS. The statute of lim-
itations does not run against any lands dedicated to public use. (R.
S. 1889, sec. 6772.) *Ib.*

## DEEDS.

1. CONVEYANCE: BOUNDARY: HIGHWAY. A conveyance of land bounded
on a public highway carries with it the fee to the center of the high-
way, subject to the public easement, where there are no words or
specific description showing a contrary intent, provided the grantor
at the time owned to the center; and this is so, although no highway
be mentioned, where the description by courses and distances carries
the line along the side of a highway. *Grant v. Moon, 43.*

2. ———: ———: ———: PRACTICE: PRESUMPTION. The question
whether a conveyance of land bounded on a highway passes the title
to its center is one of intention to be ascertained from the language
of the deed, together with other facts and circumstances properly
going to explain that language such as the situation of the land and
the relation of the parties; but the presumption of intent to pass the
title to the center of the highway will prevail, unless a contrary in-
tention appears. *Ib.*

3. DEED: RESCISSION: FRAUDULENT MISREPRESENTATION. Where it ap-
pears that a party, charging fraudulent misrepresentations in respect
to the giving of a quitclaim deed to land, in fact acted upon his own
judgment in so doing, and that the alleged misrepresentations formed
no material inducement to his action, he can not rescind it. *Warren
v. Ritchie, 311.*

4. DEED, CONSTRUCTION OF: FEE SIMPLE: FEE TAIL. A deed to B. and
her heirs by A., "their heirs and assigns forever," made after the
death of A. by one to whom he had conveyed the land in trust for
himself and family, does not vest a fee tail in B. (which, by Revised
Statutes, 1889, section 8836, would be converted into a life estate in
her, with remainder over to her children by A.), but a fee simple
estate in her and her said children. *Fanning v. Doan, 323.*

5. ———: ———: "HEIRS": "CHILDREN." The word "heirs" in a
conveyance will be construed to mean "children," and *vice versa*,
whenever the context so requires in order to give meaning and effect
to all parts of the instrument. *Ib.*

6. SWAMP LANDS: CONVEYANCE: SEAL. A common law seal affixed to a
conveyance is sufficient in the absence of the statutory seal. *Alt v.
Norman, 330.*

7. ———: ———: ———. The seal of the county court impressed
upon paper attached to the deed, and adopted by a commissioner
appointed to convey swamp lands under Revised Statutes, 1879, sec-
tion 671, is sufficient. *Ib.*

8. ———: ———: ———. The acknowledgment of a commissioner appointed to convey county lands, may be considered in determining whether the seal used was adopted as his seal. *Ib.*

See CONVEYANCES.

DEEDS OF TRUST.

See MORTGAGES AND DEEDS OF TRUST.

DEFILING FEMALE.

1. CRIMINAL LAW: DEFILING WARD: INDICTMENT. An indictment for defiling a female under eighteen years of age, intrusted to defendant's care, which alleges that such female was on a certain day under eighteen years of age and that on that day the defendant, to whose care she had been and was then confided, defiled her, is sufficient. *The State v. Lingle, 528.*

2. ———: ———: INSTRUCTION: DEFILING WARD. Where, in a prosecution for defiling a ward, the indictment alleges that she was at the time of such defilement, under eighteen years of age, it was proper to submit to the jury the question whether she was at the time of the commission of the offense under that age. *Ib.*

3. ———: ———: ———: DEFENDANT AND WIFE TESTIFYING, CREDIBILITY OF. It is proper to instruct the jury in a criminal case that in considering the weight of the evidence given by both the defendant and his wife they will take into consideration the fact that he is the defendant, testifying in his own behalf, and that she is his wife, and that they may consider their interest in the case and the marital relation in passing on the credibility of their testimony.

4. ———: ———: ———: DEFILING WARD: EVIDENCE OF HIGHER CRIME. On trial for defiling a ward, it is proper to instruct the jury that before they can acquit, because a higher degree of crime has been shown, they must believe from the evidence that if defendant were on trial for a higher decree of crime, it would be their duty, from such evidence, to convict him of such higher degree of crime; but although they believe from the evidence that defendant used force to accomplish his purpose, yet, if they further believe that the prosecuting witness did yield her consent, however reluctantly, before the carnal act was accomplished, the defendant would not be guilty of such higher crime. *Ib.*

5. ———: ———: DEFILING WARD: FORCE: REMARKS OF COUNSEL. It is improper for counsel for defendant on trial for defiling his ward, to comment, in his opening argument to the jury, on the improbability of conception following an act of sexual intercourse effected by force, where there was no expert or other testimony to that effect. *Ib.*

DELINQUENT TAXES.

See TAXATION, 1, 5.

DELIVERY.

SALE: SYMBOLIC DELIVERY: REPLEVIN. Symbolic delivery of personal property, as by bill of sale or warehouse receipt, is sufficient to vest title in the vendee and a right to maintain replevin therefor. *Collins v. Wayne Lumber Company, 451.*

## DEPOSITIONS.

See EVIDENCE, 2.

## DISCRETION OF COURT.

See PRACTICE, CRIMINAL, 4.

## DOMICILE.

See RESIDENCE.

## DOWER.

HOMESTEAD: DOWER: WIDOW: PARTITION. Where a widow is entitled to both dower and homestead in land subject to partition and one interest only is assigned her in such suit, neither she nor one claiming under her will be estopped in another suit to assert a right to the other. *Ketchum v. Christman, 38.*

## DRAMSHOP.

See STATUTES, 5.

## EJECTMENT.

1. EJECTMENT: HUSBAND AND WIFE: APPELLATE PRACTICE. Where, in an action of ejectment by the husband and wife jointly, the right to the possession of the property by the husband upon the title of his wife is the only issue tried by the court below or raised by the pleadings, and judgment is rendered for defendant on the ground that the acts of the husband have estopped him from recovering possession, the judgment will not be reversed on the ground that the wife can not be deprived of her right to possession by the acts of her husband, such issue being raised for the first time in this court. *Evans v. Kunze, 670.*

2. PRACTICE: EJECTMENT. While ejectment is the appropriate form of action in this state to try title to land, yet it is by nature a possessory action, and may not always try the title. *Ib.*

3. ———: ———: HUSBAND AND WIFE. It is settled law in this state that a husband is entitled to the possession of his wife's lands held by her as at common law, and may sue in ejectment therefor without joining her in the action. *Ib.*

4. ———: ———: IMPROPER JOINDER OF PARTIES: APPELLATE PRACTICE: HARMLESS ERROR. The fact that a wife was unnecessarily joined with her husband as a party plaintiff in an action to recover possession of her land, and was included in the judgment against him, affords no ground for reversal, since the judgment may be corrected in this court by striking out her name as party plaintiff and leaving the judgment to stand in the name of the husband alone. *Ib.*

## ELECTIONS.

1. CONSTITUTION: GRAND JURY: EXAMINATION OF BALLOTS: ELECTION FRAUDS. The court can not compel the production of ballot boxes before the grand jury for their examination while investigating election frauds. (Constitution, art. 8, sec. 3.) *Ex Parte Arnold, 256.*

2. ———: ———: ———: ———. Constitution, article 8, section 3, limits the right of the examination of ballots to election contest cases. *Ib.*

3. ELECTION CONTEST: DECISION: STATUTE. Section 4707, Revised Statutes, 1889, with regard to election contests, which provides that "the person holding the certificate of election may give bond, qualify and take the office at the time specified by law, and exercise the duties thereof until the contest shall be decided, and if the contest be decided against him, the court or other tribunal deciding the same shall make an order for him to give up the office to the successful party in the contest * * * and may enforce such order by attachment or other legal process" means a decision and order by the trial, and not the appellate court. *The State ex rel. Craig v. Woodson, 497.*

4. ———: ———: SURRENDER OF OFFICE: APPEAL. The trial court, upon rendering final judgment in an election contest against the holder of the certificate, can, pending appeal, compel him to surrender the office and its appurtenances to the contestee and can enforce its order to do so by attachment or other proper legal process. *Ib.*

5. ———: APPEAL: BOND: SUPERSEDEAS. The appeal bond required to be given by section 4744, Revised Statutes, 1889, providing for appeals from judgments in election contests, does not operate as a *supersedeas* as to anything appealed from, except the costs. *Ib.*

6. STATUTES: CONSTRUCTION: ELECTION CONTESTS: APPEALS. Statutes relating to ordinary appeals and appeals in election contests are statutes *in pari materia* and should be construed together with reference to the whole system of which they form a part. *Ib.*

7. ELECTIONS: AUSTRALIAN BALLOT: SECRECY: MANDATORY REQUIREMENTS. The controlling object of the Australian ballot law is to secure an absolutely secret ballot. Every positive requirement, which, if disobeyed, would necessarily defeat this object should be held mandatory. But such as do not have that effect should be treated as directory and a failure of the elector to comply strictly therewith should not be held to invalidate his vote, if the spirit of the law in the particular case is not violated. *Hall v. Schoenecke 661.*

8. ———: ———: ———: ———: STATUTE. Section 4781, Revised Statutes, 1889, amended (Laws, 1893, p. 156), requiring a voter to retire to a booth or compartment to prepare his ballot, is mandatory, in the sense that it should be observed. Under its provisions, the judges of election should refuse to receive a ballot which they know had been prepared in a place other than the one provided. The willful disregard of this requirement of this section on the part of the voter should defeat his vote. *Ib.*

9. ———: ———: ———: ———: ———. The failure of the voter to retire to the booth or compartment to prepare his ballot, should not result in the rejection of his vote, where it does not appear that such failure was willful and the evidence is not conclusive that the ballot was not secretly prepared, there being no mandatory provision of the statute requiring its rejection for such failure. *Ib.*

10. ———: ELECTION DISTRICTS IN CITY: QUALIFICATION OF VOTER. A citizen of a town is only qualified as a voter and entited to vote in the election district of such town in which he resides. (R. S. 1889, section 4670.) *Ib.*

## EMINENT DOMAIN.

See CONDEMNATION PROCEEDINGS.

## EQUITY.

APPELLATE PRACTICE: EQUITY CASES.   In cases of equitable character the supreme court reviews the facts.   *Warren v. Ritchie, 311.*

See FRAUDULENT CONVEYANCES, 12, 13.

## ESTOPPEL.

1. PARTITION: HOMESTEAD: JUDGMENT: ESTOPPEL: MARRIED WOMAN. An heir can not assert title to land under a deed from the widow, where such heir, though a married woman, was a party to a suit subsequently instituted in partition in which the same land was allotted in fee to the widow as a homestead. *Ketchum v. Christman, 38.*

2. HOMESTEAD: DOWER: WIDOW: PARTITION.   Where a widow is entitled to both dower and homestead in land subject to partition and one interest only is assigned her in such suit, neither she nor one claiming under her will be estopped in another suit to assert a right to the other. *Ib.*

3. PRACTICE: ERROR: ESTOPPEL.   One can not complain of error which he has himself introduced into the record. *Schaeffer v. St. Louis & Suburban Railway Company, 64.*

4. HUSBAND AND WIFE: DEBTOR AND CREDITOR: FRAUDULENT CONVEYANCE: ESTOPPEL.   Where land was bought with the proceeds of a sale of a wife's land and the deed to the land so purchased taken and recorded in the name of her husband, who, subsequently, without his wife's knowledge and out of the course of his business, became liable as surety on a note, she will not be estopped to deny the husband's title, although the creditor of the husband loaned the money for which the note was given upon the faith of the latter's apparent ownership of the land. *De Berry v. Wheeler, 84.*

5. BOUNDARY LINE: ADJOINING PROPRIETORS: ESTOPPEL.   Where there has been a dispute between two adjoining proprietors as to the dividing line between their lots, and one of them caused a survey of the ground to be made and a line located for the purpose of erecting a partition wall thereon, and the other is notified of the location of the line and accepts the same by telling the workmen to go on with the construction of the partition wall thereon and pays one half of the cost of said wall and erects his own building so as to conform to said line and acquiesces in the location of said line for a period of six years, the latter will be estopped from asserting that said division line is not the true one. *Evans v. Kunze, 670.*

6. APPELLATE PRACTICE: ESTOPPEL.   A party will not be permitted to try a case upon one theory in the court below, and have the same reversed here upon an entirely different theory. *Ib.*

## EVIDENCE.

1. MUNICIPAL CORPORATION: CHANGE OF STREET GRADE: MEASURE OF DAMAGES: EVIDENCE.   In actions for damages to property caused by lowering the grade of a street, the general rule is that when the reasonable cost of repairing the injury by restoring the premises, as near as may be, to their former condition is less than the diminution in the market value of the property by reason of the injury, such cost of restoration is the proper measure of damages; but, when the cost of restoration is more than such diminution, the latter is generally the true measure of damages, and evidence of the cost of restoration and of diminution in the market value are both admissible on the question of damages to be awarded. *Smith v. Kansas City, 23.*

2. PRACTICE: EVIDENCE: DEPOSITION. Where the testimony of a witness on a former trial, contained in the stenographer's report was read in evidence at the second trial, the witness residing in another state, it was error to exclude a deposition of such witness, laying the foundation for impeaching testimony, taken prior to the second trial in the presence of the opposing counsel and concerning facts which had come to the knowledge of the party taking the deposition after the former trial. *Ess v. Griffith, 50.*

3. SALE: MEMORANDUM: PAROL EVIDENCE. Where the memorandum of a contract of sale is incomplete, parol evidence is admissible to show the omitted matter. *Quick v. Glass, 320.*

4. CITY ORDINANCE: REPUTATION: EVIDENCE. The fact that, on the trial of one for violating a city ordinance in knowingly associating with persons having the reputation of being thieves, policemen testify that the persons with whom defendant associated had the reputation of being thieves does not constitute proof of the evil reputation of such associates, and this is true though such testimony is admitted without objection. *City of St. Louis v. Roche, 541.*

5. CRIMINAL LAW: RAPE: AGE OF PROSECUTRIX: EVIDENCE: CHASTITY. Evidence of bad reputation for chastity is admissible in prosecutions for rape, where the woman is capable of consenting, but is immaterial where the prosecutrix is under the age of consent, except to affect her credibility, for which purpose it is competent. *The State v. Duffey, 549.*

6. STOCK, VALUE OF: EVIDENCE. In the absence of evidence of the market value of stock, its value may be established by showing its dividend-earning capacity. *Greer v. Lafayette County Bank, 559.*

EXCEPTIONS (BILL OF).

See BILL OF EXCEPTIONS.

EXEMPTIONS.

See HOMESTEADS AND EXEMPTIONS.

FEES.

See OFFICES AND OFFICERS, 2, 3.

FEE SIMPLE.

See LAND AND LAND TITLES, 7.

FEE TAIL.

See LAND AND LAND TITLES, 7.

FELONIOUS ASSAULT.

See CRIMINAL LAW, 7.

FENCES.

See RAILROADS, 20, 21.

FERRY COMPANY.

See RAILROADS, 8–14.

FORECLOSURE.

See MORTGAGES AND DEEDS OF TRUST, 1.

FORFEITURE.

See CONSTRUCTION, 1.

FRAUD.

1. DEED: RESCISSION: FRAUDULENT MISREPRESENTATION. Where it appears that a party, charging fraudulent misrepresentations in respect to the giving of a quitclaim deed to land, in fact acted upon his own judgment in so doing, and that the alleged misrepresentations formed no material inducement to his action, he can not rescind it. *Warren v. Ritchie, 311.*

2. FRAUD: PROOF: PRESUMPTION. Fraud is not to be presumed, but is an affirmative fact to be proved. It may, however, be shown by circumstances or by acts. *Ib.*

3. PRINCIPAL AND AGENT: FRAUDULENT ACTS OF AGENT. A principal is bound by the acts of his accredited agent, done in the course of his employment, even though they be of a fraudulent character. *Greer v. Lafayette County Bank, 559.*

See FRAUDULENT CONVEYANCES.

FRAUDULENT CONVEYANCES.

1. HUSBAND AND WIFE: DEBTOR AND CREDITOR: FRAUDULENT CONVEYANCE. A conveyance by the husband solely for the purpose of transferring to his wife land held in trust for her is not fraudulent as to the creditors of the husband. *DeBerry v. Wheeler, 84.*

2. ————: ————: ————: ESTOPPEL. Where land was bought with the proceeds of a sale of a wife's land and the deed to the land so purchased taken and recorded in the name of her husband, who, subsequently, without his wife's knowledge and out of the course of his business, became liable as surety on a note, she will not be estopped to deny the husband's title, although the creditor of the husband loaned the money for which the note was given upon the faith of the latter's apparent ownership of the land. *Ib.*

3. CHATTEL MORTGAGE: FRAUD: STATUTE. A mortgage of chattels is void, as against creditors, where it shows on its face that the mortgagee is to retain possession and dispose of the goods in the usual course of business. (R. S. 1889, sec. 6159). *Barton v. Sitlington, 164.*

4. ————: ————: QUESTION FOR JURY. Where the mortgage is not void on its face and the extrinsic evidence introduced on the issue of its fraudulent character is conflicting, the question is one for the jury under proper instructions. *Ib.*

5. ————: ————: ORAL AGREEMENT: POSSESSION BY MORTGAGEE. Though it is orally agreed between the mortgagor and mortgagee that the former shall retain possession of the mortgaged chattels and sell them in the usual course of business, yet the mortgagee's title will be good as against other creditors, if he takes actual possession before the rights of the latter attach. *Ib.*

6. ———: ———: POSSESSION BY MORTGAGEE. Nor is any other con-
sent on the mortgagor's part requisite to such possession by the mort-
gagee than the authority contained in the mortgage itself to take pos-
session in case of default in the payment of the secured debt or if the
mortgagee should consider himself insecure. *Ib.*

7. ———: PART OF DEBT FRAUDULENT: CREDITORS. Where any part of
a debt secured by a mortgage is fraudulent as to creditors, the whole
debt is thereby tainted and subsequent possession by the mortgagee
of the property will not cure the defect. *Ib.*

8. CHATTEL MORTGAGE: FAILURE TO RECORD: FRAUD: CREDITORS. The
failure to record a chattel mortgage does not make it fraudulent as to
the mortgagor's creditors, unless before it is recorded or before the
mortgagee takes possession thereunder, third persons are induced to
give credit to the mortgagor, believing his property to be free from
incumbrance. *Ib.*

9. ———. A clause in a chattel mortgage that it shall cover all mer-
chandise that may subsequently be added to the mortgagor's stock
is valid and the mortgagee acquires a valid lien by taking possession
under the mortgage before the rights of other creditors intervene. *Ib.*

10. ———: AGREEMENT AS TO EXCESS: CREDITORS. An agreement con-
tained in a chattel mortgage that the excess arising from a sale of the
property after paying the debt shall be paid to the mortgagor, does
not render the transaction fraudulent as to creditors. *Ib.*

11. DEED: RESCISSION: FRAUDULENT MISREPRESENTATION. Where it ap-
pears that a party, charging fraudulent misrepresentations in respect to
the giving of a quitclaim deed to land, in fact acted upon his own
judgment in so doing, and that the alleged misrepresentations formed
no material inducement to his action, he can not rescind it. *Warren
v. Ritchie, 311.*

12. EQUITY: CONVEYANCE, WHEN NOT IN FRAUD OF CREDITORS. In an
action to annul a deed because made in fraud of creditors, the evi-
dence showed that the grantor's title was clouded by a tax sale; that
he was a nonresident and had no other property; that the grantee, as
a consideration for the deed, agreed to pay the costs and expense of
litigation necessary to quiet the title in himself and to sell the prem-
ises back to the grantor at any time within six months on repayment
to him of said costs and expenses, the title to become absolute in him
if not so repurchased. It was also shown that the only claim being
pressed against the grantor at the time of the transfer was one which
his attorney assured him was barred by the statute of limitations.
*Held,* that the deed was not fraudulent. *Robinson v. McCune, 577.*

13. ———: FAILURE TO FIND FACTS: ERRONEOUS DECREE. A decree
reciting that a deed was given and recorded, and setting it aside,
without any finding of facts as a basis for such action, is erroneous.
*Ib.*

GRAND JURIES.

See CRIMINAL LAW, 1, 12, 13, 14.

HABEAS CORPUS.

HABEAS CORPUS: CONTEMPT. A person committed for contempt for dis-
obeying an order which the court committing him had no authority to
make may be released on *habeas corpus* proceeding. *Ex Parte Arnold,
256.*

## HEIRS.

See LAND AND LAND TITLES, 8.

## HIGHWAYS.

See BOUNDARIES, 1, 2.

ROADS AND HIGHWAYS.

## HOMESTEADS AND EXEMPTIONS.

1. PARTITION: HOMESTEAD: JUDGMENT: ESTOPPEL: MARRIED WOMAN. An heir can not assert title to land under a deed from the widow, where such heir, though a married woman, was a party to a suit subsequently instituted in partition in which the same land was allotted in fee to the widow as a homestead. *Ketchum v. Christman, 38.*

2. HOMESTEAD: DOWER: WIDOW: PARTITION. Where a widow is entitled to both dower and homestead in land subject to partition and one interest only is assigned her in such suit, neither she nor one claiming under her will be estopped in another suit to assert a right to the other. *Ib.*

3. PERSONAL PROPERTY: VENDOR: EXEMPTION: STATUTE. A lien is not created in favor of the vendor of personal property by Revised Statutes, 1889, section 4914, which declares that such property shall not be exempt from execution or judgment for the purchase price thereof, except in the hands of an innocent purchaser for value without notice of any prior claim, said statute being one merely of exemption. *Barton v. Sitlington, 164.*

See TAXATION, 6, 7.

## HUSBAND AND WIFE.

1. HUSBAND AND WIFE: DEBTOR AND CREDITOR: FRAUDULENT CONVEYANCE. A conveyance by the husband solely for the purpose of transferring to his wife land held in trust for her is not fraudulent as to the creditors of the husband. *DeBerry v. Wheeler, 84.*

2. ———: ———: ———: ESTOPPEL. Where land was bought with the proceeds of a sale of a wife's land and the deed to the land so purchased taken and recorded in the name of her husband, who, subsequently, without his wife's knowledge and out of the course of his business, became liable as surety on a note, she will not be estopped to deny the husband's title, although the creditor of the husband loaned the money for which the note was given upon the faith of the latter's apparent ownership of the land. *Ib.*

3. HUSBAND'S INTEREST IN WIFE'S LAND: VESTED RIGHTS: STATUTE. Prior to the revision of the statutes in 1889, a husband, by virtue of his marital rights, was entitled to the possession of his wife's lands, held by her as at common law, and could sue therefor in his own name; and the enactment of sections 6869 and 6864, Revised Statutes, 1889, providing that real estate belonging to the wife should be her separate property and under her sole control, and empowering her to sue and be sued at law or in equity, as a *feme sole*, did not deprive the husband of such rights in his wife's property which had become vested prior to 1889. *Arnold v. Willis, 145.*

4. ———: ———: LIMITATIONS. The statute of limitations will not begin to run against a husband who is entitled to the possession of his wife's lands until his right to enter accrues. Where such lands descended to the wife subject to a lease, the husband will not be entitled to possession until the expiration of the lease. *Ib.*

5. ——: ——: ——: DISABILITY OF WIFE. Where a husband sues in right of his wife, as in an action for possession of her lands, he can not avail himself of her disability. *Ib.*

6. ——: ——. Where the husband is entitled to the possession of his wife's lands, her right of entry will be postponed until the termination of the coverture. *Ib.*

7. EJECTMENT: HUSBAND AND WIFE: APPELLATE PRACTICE. Where, in an action of ejectment by the husband and wife jointly, the right to the possession of the property by the husband upon the title of his wife is the only issue tried by the court below or raised by the pleadings, and judgment is rendered for defendant on the ground that the acts of the husband have estopped him from recovering possession, the judgment will not be reversed on the ground that the wife can not be deprived of her right to possession by the acts of her husband, such issue being raised for the first time in this court. *Evans v. Kunze, 670.*

8. ——: ——: HUSBAND AND WIFE. It is settled law in this state that a husband is entitled to the possession of his wife's lands held by her as at common law, and may sue in ejectment therefor without joining her in the action. *Ib.*

9. ——: ——: IMPROPER JOINDER OF PARTIES: APPELLATE PRACTICE: HARMLESS ERROR. The fact that a wife was unnecessarily joined with her husband as a party plaintiff in an action to recover possession of her land, and was included in the judgment against him, affords no ground for reversal, since the judgment may be corrected in this court by striking out her name as party plaintiff and leaving the judgment to stand in the name of the husband alone. *Ib.*

## INSTRUCTIONS.

1. MUNICIPAL CORPORATION: CHANGE OF STREET GRADE: MEASURE OF DAMAGES: INSTRUCTION. In an action for damages to property by lowering the grade of a street, an instruction to the effect that, in estimating the damages, the jury may take into consideration, with the other evidence in the case, the cost of adjusting the premises to the condition of the street created by the change of grade, is not erroneous, where the measure of damages is fixed by other instructions at the difference in the market value before and after the change. *Smith v. Kansas City, 23.*

2. PRACTICE: INSTRUCTIONS. Instructions should be read and construed all together. *Ib.*

3. ——: INSTRUCTION. An instruction upon an issue not supported by any evidence is harmless. *Schaefer v. St. Louis & Suburban Railway Company, 64.*

4. ——: ——: JUDGMENT. A judgment will not be reversed for error in an instruction upon the measure of damages where the finding was for the defendant. *Ib.*

5. INSTRUCTIONS: WAIVER OF ERROR. When the instructions in a case, taken as a whole, properly present it to the jury, the fact that one of them standing alone would be misleading will not cause a reversal of the judgment of the trial court. *Deweese v. Meramec Iron Mining Company, 423.*

6. CRIMINAL LAW: PRACTICE: INSTRUCTIONS. Where a term used in an instruction has been properly defined, it is not error to refuse another instruction defining it. *The State v. Lingle, 528.*

7. APPELLATE PRACTICE: VERDICT: ERRONEOUS INSTRUCTION. Where a verdict is the only one that could properly have been rendered on the evidence, it will not be disturbed because of the giving of an erroneous instruction. *Greer v. Lafayette County Bank, 559.*

8. PRACTICE: INSTRUCTION: COMMENTING ON EVIDENCE. An instruction that, in determining whether the employees in charge of a train approaching a highway crossing exercised ordinary care or were guilty of negligence, the jury should take into consideration the rate of speed at which the train was running, the place of the accident, the signals or alarms given and whether the employees were at their posts and all the other facts and circumstances in evidence relative to the movement and management of the train is not objectionable as commenting on the evidence, but is a proper guide in determining what would be ordinary care or negligence under the circumstances. *Lloyd v. The St. Louis, Iron Mountain & Southern Railway Company, 595.*

## INTENDMENT.

See PLEADING, CRIMINAL, 3.

## INTENTION.

See RESIDENCE, 2, 4.

## INTEREST.

See DAMAGES, 4.

## JUDGMENTS.

1. ATTACHMENT: JUDGMENT: CONSTRUCTIVE NOTICE. A judgment in an attachment suit rendered on constructive notice binds only the property attached. (R. S. 1889, sec. 558). *Bryant v. Duffy, 18.*

2. PARTITION: HOMESTEAD: JUDGMENT: ESTOPPEL: MARRIED WOMAN. An heir can not assert title to land under a deed from the widow, where such heir, though a married woman, was a party to a suit subsequently instituted in partition in which the same land was allotted in fee to the widow as a homestead. *Ketchum v. Christman, 38.*

3. ———: JUDGMENT. A judgment in partition vests in each party to whom an allotment is made the title of all the parties to the suit. *Ib.*

4. JUDGMENT: CONTRACT: LIMITATION: STATUTE OF KANSAS. A judgment is a contract within the meaning of section 18 of the civil code of Kansas requiring actions upon any agreement, contract or promise in writing, other than for the recovery of real property, to be brought within five years. And under the provisions of section 445 of said code, declaring that a judgment shall become dormant if execution is not sued out within five years, or if five years have intervened between the date of the last execution issued and the suing out of another, no action can be brought on a judgment more than five years after its entry, where no execution was issued thereon and no steps have been taken to revive it. *St. Louis Type Foundry Company v. Jackson, 119.*

5. ———: ———: ———: JUDGMENT OF KANSAS. No action can be brought in this state upon a judgment rendered in Kansas, after such judgment has, by the law of the latter state, become dormant, which the decisions of that state construe to mean dead. *Ib.*

6. BACK TAXES: LIEN: JUDGMENT: SALE, SETTING ASIDE OF. Where the court had jurisdiction of the subject-matter and of the defendant in an action for back taxes, its judgment rendered therein is not void, and it was error, in the absence of fraud, to set aside the sale under execution on the judgment, on motion of the defendant, for any irregularity before the rendition of the judgment, such as failure to correct the delinquent list before suit was brought, or the payment of the taxes, or because of inadequacy of price at the sale. *The State ex rel. Daubin v. Boyd, 130.*

7. DECREE: FAILURE TO FIND FACTS: ERRONEOUS DECREE. A decree reciting that a deed was given and recorded, and setting it aside without any finding of facts as a basis for such action, is erroneous. *Robinson v. McCune, 577.*

## JUDICIAL NOTICE.

1. MUNICIPAL CORPORATION: PUBLIC ACTS: JUDICIAL NOTICE. The courts will take judicial notice of a public act creating a municipal corporation, and of the extent and limits of its territory as defined by said act. *Kansas City v. Vineyard, 75.*

2. ———: KANSAS CITY CHARTER: JUDICIAL KNOWLEDGE. The charter of Kansas City is a public act, of which the courts will take judicial notice. *Kansas City v. Smart, 272.*

3. JUDICIAL NOTICE: CENSUS. Judicial notice will be taken of the published official census of the United States for the purpose of determining the population of cities in Missouri. *The State ex rel. Dickason v. County Court of Marion County, 427.*

4. EVIDENCE: JUDICIAL NOTICE: CITY ORDINANCE. Courts will not take judicial notice of city ordinances. *City of St. Louis v. Roche, 541.*

## JURISDICTION.

1. CIRCUIT COURT: JURISDICTION: CONTEMPT. The circuit court in Missouri has jurisdiction to punish for contempt, and has the power to determine, in the first instance, whether or not a party duly brought before it on such a charge has been guilty thereof. *The State ex rel. Hofmann v. Scarritt, 331.*

2. CRIMINAL PRACTICE: CHANGE OF VENUE. Where an order for a change of venue has been duly entered of record, the county to which the venue is changed immediately acquires jurisdiction of the cause. *The State ex rel. Gibson v. Lay, 609.*

## JUSTICES' COURTS.

PRACTICE: COMMENCEMENT OF ACTION: JUSTICE'S COURT. In a justice's court an action is deemed commenced upon delivery of the writ to the constable. *McGrath v. Kansas City & Colorado Railroad Company, 1.*

## JUSTICES OF THE PEACE.

See OFFICES AND OFFICERS, 2, 3.

## KANSAS CITY.

1. KANSAS CITY CHARTER: STREET IMPROVEMENT: LIEN: PROCEEDING IN REM. A proceeding to enforce a lien for street paving against an abutting lot under the charter of Kansas City (Laws, 1875, p. 252), is not a proceeding *in rem* strictly, the intention of the legislature being that the right or title of no owner should be affected or bound, unless he is made a party or notified according to law. *Jaicks v. Sullivan, 177.*

2. MUNICIPAL CORPORATION: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: STATUTES: REPEAL. The power of the mayor and council of Kansas City to establish a boulevard under its charter (arts. 3 and 7) was not abrogated by the amendment of section 3, article 10, of such charter, requiring the board of park and boulevard commissioners to select streets for the establishment of boulevards and to recommend its action thereon to the council. *Kansas City v. Smart, 272.*

3. ———: ———: ———: PROCEDURE. An effort by Kansas City to acquire, by amicable agreement, private property for the establishment of boulevards not being required by its charter, such attempted agreement is not essential to the maintenance of condemnation proceedings for such boulevard purposes. *Ib.*

4. ———: ———: ———: ———. The filing by the engineer of said city, with the mayor, of a map descriptive of the land sought to be condemned, and of its owners, is not a jurisdictional step under the charter of Kansas City in a proceeding to condemn land for boulevard purposes and the failure of the mayor's record to recite the filing of such map does not affect the validity of such proceeding. *Ib.*

5. ———: ———: JUDICIAL KNOWLEDGE. The charter of Kansas City is a public act, of which the courts will take judicial notice. *Ib.*

6. ———: ———. Condemnation proceedings under an ordinance of Kansas City for the establishment of a boulevard, *held* valid as against the objection that the record does not disclose the state or county in which the property sought to be condemned is situated. *Ib.*

KILLING STOCK.

See RAILROADS, 20, 21.

LAND AND LAND TITLES.

1. HUSBAND AND WIFE: DEBTOR AND CREDITOR: FRAUDULENT CONVEYANCE. A conveyance by the husband solely for the purpose of transferring to his wife land held in trust for her is not fraudulent as to the creditors of the husband. *DeBerry v. Wheeler, 84.*

2. ———: ———: ———: ESTOPPEL. Where land was bought with the proceeds of a sale of a wife's land and the deed to the land so purchased taken and recorded in the name of her husband, who, subsequently, without his wife's knowledge and out of the course of his business, became liable as surety on a note, she will not be estopped to deny the husband's title, although the creditor of the husband loaned the money for which the note was given upon the faith of the latter's apparent ownership of the land. *Ib.*

3. HUSBAND AND WIFE: HUSBAND'S INTEREST IN WIFE'S LAND: VESTED RIGHTS: STATUTE. Prior to the revision of the statutes in 1889, a husband, by virtue of his marital rights, was entitled to the possession of his wife's lands, held by her as at common law, and could sue therefor in his own name; and the enactment of sections 6869 and 6864, Revised Statutes, 1889, providing that real estate belonging to the wife should be her separate property and under her sole control, and empowering her to sue and be sued at law or in equity, as a *feme sole*, did not deprive the husband of such rights in his wife's property which had become vested prior to 1889. *Arnold v. Willis, 145.*

4. ——: ——: LIMITATIONS. The statute of limitations will not begin to run against a husband who is entitled to the possession of his wife's lands until his right to enter accrues. Where such lands descended to the wife subject to a lease, the husband will not be entitled to possession until the expiration of the lease. *I b.*

5. ——: ——: ——: DISABILITY OF WIFE. Where a husband sues in right of his wife, as in an action for possession of her lands, he can not avail himself of her disability. *I b.*

6. ——: ——. Where the husband is entitled to the possession of his wife's land, her right of entry will be postponed until the termination of the coverture. *I b.*

7. DEED, CONSTRUCTION OF: FEE SIMPLE: FEE TAIL. A deed to B. and her heirs by A., "their heirs and assigns forever," made after the death of A. by one to whom he had conveyed the land in trust for himself and family, does not vest a fee tail in B. (which, by Revised Statutes, 1889, section 8836, would be converted into a life estate in her, with remainder over to her children by A.), but a fee simple estate in her and her said children. *Fanning v. Doan, 323.*

8. ——: ——: "HEIRS:" "CHILDREN." The word "heirs" in a conveyance will be construed to mean "children," and *vice versa,* whenever the context so requires in order to give meaning and effect to all parts of the instrument. *I b.*

9. SWAMP.LANDS: CONVEYANCE: COUNTY COURT. A county was authorized, under the act of 1869 (Acts, page 67), to sell swamp lands at private sale. *Alt v. Norman, 330.*

10. ——: ——: ——. The seal of the county court impressed upon paper attached to the deed, and adopted by a commissioner appointed to convey swamp lands under Revised Statutes, 1879, section 671, is sufficient. *I b.*

11. ——: ——: ——. The acknowledgment of a commissioner appointed to convey county lands, may be considered in determining whether the seal used was adopted as his seal. *I b.*

## LAWS.

See STATUTES.

## LICENSE TAX.

See STATUTES, 5.

## LIENS.

1. MUNICIPAL CORPORATIONS: CITY OF FOURTH CLASS: TAXATION: LIEN. A city of the fourth class must by ordinance establish the rate of taxes upon the basis of the county assessment, and no lien is created therefor until the taxes are levied and extended by the city council on the city tax book. *City of Westport ex rel. Kitchen v. McGee, 152.*

2. PERSONAL PROPERTY: VENDOR: EXEMPTION: STATUTE. A lein is not created in favor of the vendor of personal property by Revised Statutes, 1889, section 4914, which declares that such property shall not be exempt from execution or judgment for the purchase price thereof, except in the hands of an innocent purchaser for value without notice of any prior claim; said statute being one merely of exemption. *Barton v. Sitlington, 164.*

3. KANSAS CITY CHARTER: STREET IMPROVEMENT: LIEN: PROCEEDING IN REM. A proceeding to enforce a lien for street paving against an abutting lot under the charter of Kansas City (Laws, 1875, p. 252), is not a proceeding *in rem* strictly, the intention of the legislature being that the right or title of no owner should be affected or bound, unless he is made a party or notified according to law. *Jaicks v. Sullivan, 177.*

4. TAX BILL: LIMITATION: NEW PARTIES. Where, under a statute providing that a tax bill shall be a lien on the property for two years but no longer, unless within that time suit is brought, suit is commenced against S. alone, who is at the time deceased, and after two years his heirs are brought in by amendment, the action is barred. *Ib.*

5. SALE: VENDOR'S LIEN: WAIVER. A vendor of personal property who has possession of it at the time of the insolvency of the vendee may enforce a vendor's lien against it for the unpaid purchase price, although he has previously accepted the vendee's notes for the full sum of such purchase price. *Vogelsang's Administrator v. Fisher, 386.*

6. ———: ———: POSSESSION. A distiller, pursuant to a contract with a dealer, made for him a quantity of whiskey, branding the barrel with the dealer's name as distiller and stored it in a United States bonded warehouse invoiced to the dealer who gave to the distiller notes for the purchase price. The contract stipulated that the dealer should not be responsible for the management of the distillery while being operated in his name and that the distiller should charge storage on the whiskey while in the warehouse and give it all the necessary care and deliver it free of charge on board the cars for shipment to the dealer. *Held,* that, the possession of the whiskey while in the warehouse was not in the dealer but was in the distiller, jointly with the government storekeeper, so as to give the vendor a right to a lien, on the insolvency of the dealer. *Ib.*

7. ———: WAREHOUSE RECEIPTS: PLEDGE: VENDOR'S LIEN. The giving of *non* negotiable warehouse receipts, by a vendee of whiskey stored in a government bonded warehouse, to a creditor of such vendee to secure an antecedent debt operates only as a pledge of such property to secure said debt and does not affect an existing vendor's lien thereon. *Ib.*

## LIMITATIONS.

1. PRACTICE: COMMENCEMENT OF ACTION: LIMITATION: STATUTE. Under section 2013 (R. S. 1889), the filing of a petition in a court of record is the commencement of action, as against the bar of limitation, notwithstanding the summons may not be issued until after the period of limitation expires. *McGrath v. The Kansas City & Colorado Railroad Company, 1.*

2. DEDICATION: PLAT: ADDITION TO CITY: STREETS AND ALLEYS: LIMITATIONS. The statute of limitations does not run against any lands dedicated to public use. R. S. 1889, sec. 6772. *Brown v. City of Carthage, 10.*

3. JUDGMENT: CONTRACT: LIMITATIONS: STATUTE OF KANSAS. A judgment is a contract within the meaning of section 18 of the civil code of Kansas requiring actions upon any agreement, contract or promise in writing, other than for the recovery of real property, to be brought within five years. And under the provisions of section 445 of said code, declaring that a judgment shall become dormant if execution is not sued out within five years, or if five years have intervened between the date of the last execution issued and the suing out of another, no action can be brought on a judgment more than five years after its entry, where no execution was issued thereon and no steps have been taken to revive it. *St. Louis Type Foundry Company v. Jackson, 119.*

4.———: ———: ———: JUDGMENT OF KANSAS. No action can be brought in this state upon a judgment rendered in Kansas, after such judgment has, by the law of the latter state, become dormant, which the decisions of that state construe to mean dead. *I b.*

5. HUSBAND AND WIFE: HUSBAND'S INTEREST IN WIFE'S LAND: LIMITA-TIONS. The statute of limitations will not begin to run against a husband who is entitled to the possession of his wife's lands until his right to enter accrues. Where such lands descended to the wife subject to a lease, the husband will not be entitled to possession until the expiration of the lease. *Arnold v. Willis, 145.*

6. PRACTICE: STATUTE OF LIMITATIONS: NEW PARTIES. Where, between the time of the commencement of an action and when new defendants are brought in, the statutory period of limitation has expired, the new parties may plead the statute, although the defense was not available to the original defendants. *Jaicks v. Sullivan, 177.*

7. TAX BILL: LIMITATION: NEW PARTIES. Where, under a statute providing that a tax bill shall be a lien on the property for two years but no longer, unless within that time suit is brought, suit is commenced against S. alone, who is at the time deceased, and after two years his heirs are brought in by amendment, the action is barred. *I b.*

### LIS PENDENS.

PRACTICE: COMMENCEMENT OF ACTION: LIS PENDENS. The filing of a petition, under the law in force until 1889, was not regarded as the commencement of suit in respect of the law of *lis pendens. McGrath v. Kansas City & Colorado Railroad Company, 1.*

### LOCAL IMPROVEMENTS.

See TAXATION, 10.

### LOCAL AND SPECIAL LAWS.

1. DRAMSHOP: LICENSE: RAILROAD INDEBTEDNESS: STATUTE: GENERAL LAW. A law which applies to all persons who may come into like situation and circumstances is not special, within the meaning of the constitution. *The State ex rel. Dickason v. County Court of Marion County, 427.*

2. ———: SPECIAL LAW: CONSTITUTION. That an act is to apply only to counties having a stated population does not, of itself, render it special. *I b.*

3. CONSTITUTION: ACTS, 1891, P. 175: SPECIAL OR LOCAL LEGISLATION. The provisions of the act approved April 23, 1891 (Acts, 1891, p. 175), for paying justices of the peace of the city of St. Louis a salary, and for paying their costs and fees into the city treasury, are not in conflict with any of the prohibitory clauses of section 53, article 4, of the constitution. *Spaulding v. Brady, 653.*

4. ———: ———: ———. Legislation which is authorized by the constitution itself can not be regarded as local or special within the meaning of the prohibition of section 53, article 4, of the constitution, although its application is purely local. *I b.*

## MARRIED WOMEN.

PARTITION: HOMESTEAD: JUDGMENT: ESTOPPEL: MARRIED WOMAN. An heir can not assert title to land under a deed from the widow, where such heir, though a married woman, was a party to a suit subsequently instituted in partition in which the same land was allotted in fee to the widow as a homestead. *Ketchum v. Christman, 38.*

## MASTER AND SERVANT.

1. NEGLIGENCE: MASTER AND SERVANT: MINES. When persons at work in a mine are, owing to the condition of its slopes, in danger of injury from stones rolling down such slopes, and the owner of the mine knows of the danger, it is his duty to use reasonable care to prevent injury to his employees therefrom. *Deweese v. The Meramec Iron Mining Company, 423.*

2. MASTER AND SERVANT: FELLOW SERVANT: NEGLIGENCE. In an action by a servant against his master for personal injuries, it is only when the negligence of a fellow servant is the whole cause of the injuries that it will avail the master as a defense. *Ib.*

3. ———: WHEN SERVANT'S ACT BINDS MASTER: PLEADING. While the act of the servant must, to bind his employer, be in the line of his duty to his master, yet if the petition states the relation from which the duty necessarily flows, it is sufficient without further averment. *McPeak v. Missouri Pacific Railway Company, 617.*

## MEASURE OF DAMAGES.

See DAMAGES.

## MEMORANDUM.

See CONTRACTS, 13.

## MISREPRESENTATIONS.

See FRAUD, 1.

## MONUMENTS.

See DEDICATION, 1.

## MORTGAGES AND DEEDS OF TRUST.

1. MORTGAGE: INVALID FORECLOSURE: ASSIGNMENT. An invalid foreclosure sale of property under a power contained in a mortgage does not necessarily operate to discharge it; it may be, and frequently is, given the effect in equity of an assignment to the purchaser for his protection. *Ess v. Griffith, 50.*

2. CHATTEL MORTGAGE: FRAUD: STATUTE. A mortgage of chattels is void, as against creditors, where it shows on its face that the mortgagee is to retain possession and dispose of the goods in the usual course of business. (R. S. 1889, sec. 6159.) *Barton v. Sitlington, 164.*

3. ———: ———: QUESTION FOR JURY. Where the mortgage is not void on its face and the extrinsic evidence introduced on the issue of its fraudulent character is conflicting, the question is one for the jury under proper instructions. *Ib.*

**4.** ——: ——: ORAL AGREEMENT: POSSESSION BY MORTGAGEE. Though it is orally agreed between the mortgagor and mortgagee that the former shall retain possession of the mortgaged chattels and sell them in the usual course of business, yet the mortgagee's title will be good as against other creditors, if he takes actual possession before the rights of the latter attach. *Ib.*

**5.** ——: ——: POSSESSION BY MORTGAGEE. Nor is any other consent on the mortgagor's part requisite to such possession by the mortgagee than the authority contained in the mortgage itself to take possession in case of default in the payment of the secured debt or if the mortgagee should consider himself insecure. *Ib.*

**6.** ——: PART OF DEBT FRAUDULENT: CREDITORS. Where any part of a debt secured by a mortgage is fraudulent as to creditors, the whole debt is thereby tainted and subsequent possession by the mortgagee of the property will not cure the defect. *Ib.*

**7.** ——: FAILURE TO RECORD: FRAUD: CREDITORS. The failure to record a chattel mortgage does not make it fraudulent as to the mortgagor's creditors, unless before it is recorded or before the mortgagee takes possession thereunder, third persons are induced to give credit to the mortgagor, believing his property to be free from incumbrance. *Ib.*

**8.** ——. A clause in a chattel mortgage that it shall cover all merchandise that may subsequently be added to the mortgagor's stock is valid and the mortgagee acquires a valid lien by taking possession under the mortgage before the rights of other creditors intervene. *Ib.*

**9.** ——: AGREEMENT AS TO EXCESS: CREDITORS. An agreement contained in a chattel mortgage that the excess arising from a sale of the property after paying the debt shall be paid to the mortgagor, does not render the transaction fraudulent as to creditors. *Ib.*

## MUNICIPAL CORPORATIONS.

**1.** DEDICATION: PLAT: BOUNDARIES: MONUMENTS. Where an addition to a city was platted with reference to monuments fixed by a government survey, there being no actual survey of the ground, and streets of such addition marked on the plat, were subsequently located on the ground by measurements with a chain without other instruments, the lines of the streets so measured, and the corners so located, must yield to the true location made by an accurate survey controlled by the government monuments as indicated in the recorded plat. *Brown v. The City of Carthage, 10.*

**2.** ——: ——: ADDITION TO CITY: STREETS AND ALLEYS: RESERVATIONS. The reservation in the plat, of an addition to a city, of the trees and rocks on the surface of the streets and alleys, does not impair the force and effect of the plat as an absolute statutory dedication for the purposes contemplated by the statute, the fee by such dedication becoming vested in the city without the necessity of an acceptance on the part of the public. (R. S. 1889, sec. 7313.) *Ib.*

**3.** ——: ——: ——: ——: ——. After such dedication, neither the dedicator nor anyone claiming under him, can change the boundaries of the streets and alleys. *Ib.*

4. MUNICIPAL CORPORATION: CHANGE OF STREET GRADE: MEASURE OF DAMAGES: EVIDENCE. In actions for damages to property caused by lowering the grade of a street, the general rule is that when the reasonable cost of repairing the injury by restoring the premises, as near as may be, to their former condition is less than the diminution in the market value of the property by reason of the injury, such cost of restoration is the proper measure of damages; but when the cost of restoration is more than such diminution the latter is generally the true measure of damages, and evidence of the cost of restoration and of diminution in the market value are both admissible on the question of damages to be awarded. *Smith v. Kansas City, 23.*

5. ———: ———: ———: INSTRUCTION. In an action for damages to property by lowering the grade of a street, an instruction to the effect that in estimating the damages the jury may take into consideration, with the other evidence in the case, the cost of adjusting the premises to the condition of the street created by the change of grade, is not erroneous, where the measure of damages is fixed by other instructions at the difference in the market value before and after the change. *Ib.*

6. ———: STREET EXTENSION: EMINENT DOMAIN. Where, in a proceeding to condemn land for a street extension, it appears that an ordinance for extension was passed by the city council; that the beginning point of the extension is within the city limits as described by its charter, and the charter declares the city to be within a certain county, the record sufficiently shows the extension to be within that county. *Kansas City v. Vineyard, 75.*

7. ———: ———: ———: PRESUMPTION. It will be presumed that the city did not, by its ordinance, extend the street beyond its territorial limits; if it did so, the burden was on the defendant to show such to be the fact. *Ib.*

8. ———: PUBLIC ACTS: JUDICIAL NOTICE. The courts will take judicial notice of a public act creating a corporation, and of the extent and limits of its territory as defined by said act. *Ib.*

9. EMINENT DOMAIN: JURY TRIAL: "INCORPORATED COMPANY:" CONSTITUTION. A municipal corporation is not an "incorporated company" within the constitution, article 12, section 4, which provides that "the right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right." *Ib.; Kansas City v. Smart, 272.*

10. ———: ———: ———: ———. The fact that some of the defendants in such condemnation proceeding are incorporated companies does not give other defendants the right to demand a trial by jury. *Ib. Kansas City v. Smart, 272.*

11. MUNICIPAL CORPORATION: EXTENSION OF LIMITS: TAXES. Lands brought into a city by the extension of its boundaries are not subject to a tax levy already made. *City of Westport ex rel. Kitchen v. McGee, 152.*

12. ———: CITY OF FOURTH CLASS: TAXATION: LIEN. A city of the fourth class must, by ordinance, establish the rate of taxes upon the basis of the county assessment, and no lien is created therefor until the taxes are levied and extended by the city council on the city tax book. *Ib.*

## 718 INDEX.

13. ——: ——: ——. The law pertaining to such cities does not require its taxes to be levied on any fixed date, and the requirement that the mayor shall obtain a copy of the county assessment on the first day of May of each year is, as to such time, merely directory. *Ib.*

14. ——: ——: ——: INTEREST. The allowance of twelve per cent. interest on delinquent taxes due cities of the fourth class is legal. (R. S. 1889, secs. 1604, 7605.) *Ib.*

15. ——: ——: ——: EXEMPTION: CONSTITUTION. Revised Statutes, 1889, section 1580, exempting from taxation in cities of the fourth class agricultural lands exceeding five acres included within the city limits is violative of the constitution, article 10, section 3, providing that taxes "shall be uniform upon the same class of subjects and shall be levied and collected by general laws" and article 10, section 6, which exempts agricultural land when "used exclusively for agricultural or horticultural societies." *Ib.*

16. ——: ——: ——: ——. Although the exemption contained in the foregoing section is unconstitutional, the power of extending the city limits therein provided for is not so dependent on the exemption clause as to render the extension clause unconstitutional. *Ib.*

17. KANSAS CITY CHARTER: STREET IMPROVEMENT: LIEN: PROCEEDING IN REM. A proceeding to enforce a lien for street paving against an abutting lot under the charter of Kansas City (Laws, 1875, p. 252), is not a proceeding *in rem* strictly, the intention of the legislature being that the right or title of no owner should be affected or bound, unless he is made a party or notified according to law. *Jaicks v. Sullivan,* 177.

18. TAXATION, RATE OF: CONSTITUTION: SPECIAL ASSESSMENTS: LOCAL IMPROVEMENTS: MUNICIPAL CORPORATION. Where a city of the fourth class agrees in proper manner to pay a certain sum annually for a water supply, during a term of twenty years, the total sum that may fall due within that period is not an "indebtedness" for that sum, within the meaning of article 10, section 12 of the constitution. *Lamar Water & Electric Light Company v. City of Lamar, 188.*

19. MUNICIPAL CORPORATION: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: STATUTES: REPEAL. The power of the mayor and council of Kansas City to establish a boulevard under its charter (arts. 3 and 7) was not abrogated by the amendment of section 3, article 10, of such charter, requiring the board of park and boulevard commissioners to select streets for the establishment of boulevards and to recommend its action thereon to the council. *Kansas City v. Smart, 272.*

20. ——: ——: ——: PROCEDURE. An effort by Kansas City to acquire by amicable agreement, private property for the establishment of boulevards not being required by its charter, such attempted agreement is not essential to the maintenance of condemnation proceedings for such boulevard purposes. *Ib.*

21. ——: ——: ——: ——. The filing by the engineer of said city, with the mayor, of a map descriptive of the land sought to be condemned, and of its owners, is not a jurisdictional step under the charter of Kansas City in a proceeding to condemn land for boulevard purposes, and the failure of the mayor's record to recite the filing of such map does not affect the validity of such proceeding. *Ib.*

22. ——: ——: ——: FILING PAPER. The placing by an officer of a filing mark on a paper required to be filed in his office is not essential in order to make it a matter of record. *Ib.*

23. ———: ———: ———: VERDICT. The mere fact that the verdict in such proceedings assessed the benefits to the city at one dollar will not justify setting it aside as unjust and discriminating, such verdict being founded on the conflicting evidence of numerous witnesses and on views of the premises by them extending over a period of several weeks. *Ib.*

24. ———: ———: ———. An appellant in such proceeding can not avail himself of any error or defects affecting the rights of other parties not appealing. *Ib.*

25. ———: ———: ———: VERDICT. A mistake in the description affecting a certain lot in the verdict is immaterial where it is obviated by a correct description in the ordinan e providing for the condemnation proceedings. *Ib.*

26. ———: ———: JUDICIAL KNOWLEDGE. The charter of Kansas City is a public act, of which the courts will take judicial notice. *Ib.*

27. ———: ———. Condemnation proceedings under an ordinance of Kansas City for the establishment of a boulevard, *held* valid as against the objection that the record does not disclose the state or county in which the property sought to be condemned is situated. *Ib.*

28. EVIDENCE: JUDICIAL NOTICE: CITY ORDINANCE.' Courts will not take judicial notice of city ordinances. *City of St. Louis v. Roche, 541.*

29. ———: ———: ———. A conviction under a city ordinance can not be sustained where it was not read in evidence. *Ib.*

30. CITY ORDINANCE: REPUTATION: EVIDENCE. The fact that, on the trial of one for violating a city ordinance in knowingly associating with persons having the reputation of being thieves, policemen testify that the persons with whom defendant associated had the reputation of being thieves does not constitute proof of the evil reputation of such associates, and this is true though such testimony is admitted without objection. *Ib.*

31. ———: ASSOCIATING WITH THIEVES: PERSONAL LIBERTY. A city ordinance making it an offense for anyone to knowingly associate with persons having the reputation of being thieves, gamblers, etc., for the purpose of aiding and abetting such persons in their unlawful acts is invalid because it is an invasion of personal liberty. *Ib.*

32. CITY ORDINANCE: REGULATION OF PAWNBROKERS: CONSTITUTION. A city ordinance requiring pawnbrokers to keep a book in which shall be entered a description of all property left with them in pawn, together with the name and description of the person leaving it, and to submit such book to the mayor or to any police officer on demand, is a mere police regulation to aid in the detection and prevention of larceny, which a city is authorized to pass under a charter conferring on it the power to license, regulate, tax, or suppress pawnbrokers. *The City of St. Joseph v. Levin, 588.*

33. ———: ———: ———. Such ordinance is not in conflict with the constitution, article 2, section 11, providing that the people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. *Ib.*

34. ———: SUFFICIENCY OF COMPLAINT. The complaint of the violation of the ordinance in not permitting the inspection by a police officer of the book required by the ordinance to be kept by defendant as pawnbroker, *held* good, although it only inferentially charged that defendant kept said book. *Ib.*

## NEGLIGENCE.

1. RAILROADS: DEFECTIVE STEPS: INJURY TO PASSENGER. In an action against a railroad company for injury caused by the negligence of defendant in failing to provide "safe steps or platform for egress from the trains," an instruction that, "if defendant provided and used such platform steps to enable the passengers to alight as were ordinarily provided for similar cars on similar roads," it has satisfied the requirements of the law, was erroneous, the issue being whether the platform steps of defendant's cars, at the time plaintiff was injured, were safe for the use of passengers. *Dougherty v. The Kansas City & Independence Rapid Transit Railway, 33.*

2. ———: ———. A railroad company can not excuse itself from the obligation to furnish its passengers with safe appliances for getting in and out of its cars, by showing that the appliances it had adopted had been adopted and used by other railroads engaged in a similar work. *Ib.*

3. ———: PASSENGER: INSTRUCTION. It is not error, in an action for personal injuries against a railroad company, to refuse an instruction declaring that if plaintiff, without negligence on his part, was injured in attempting to get upon defendant's car, "then the burden is thrown upon the defendant to show to the satisfaction of the jury that its employees managing the car exercised the utmost human care" in its management. *Schaefer v. St. Louis & Suburban Railway Company, 64.*

4. ———: ———: CONTRIBUTORY NEGLIGENCE: GETTING ON OR OFF MOVING TRAINS: QUESTION FOR JURY. Whether a person who attempts to get on or off a slowly moving train, especially at a platform, is guilty of contributory negligence, is a question of mixed law and fact, to be determined by the jury, under the guidance of proper instructions, in the light of attending circumstances. *Ib.*

5. RAILROAD: PERSONAL INJURIES: PASSENGER: CONTRIBUTORY NEGLIGENCE: INSTRUCTION. In an action against a railroad company for personal injuries, instructions which do not recognize plaintiff as a passenger are not, for that reason, erroneous, where the real issue is whether or not, in the light of all the evidence, plaintiff was guilty of negligence in attempting to board defendant's car, which directly contributed to the injury of which he complained. *Ib.*

6. ———: SWITCH YARD: INJURY TO SERVANT: CONTRIBUTORY NEGLIGENCE. Servants of a railroad company operating a switch engine in its yards are not required to anticipate that an experienced section hand, familiar with the work of the engine and knowing the risk of crossing the track in front of moving cars, will heedlessly step on the track in front of such engine without even looking for it. *Loring v. Kansas City, Fort Scott & Memphis Railroad Company, 349.*

7. ———: ———: ———. The fact that the engine was being run at a rate of speed of twelve miles an hour did not render the company guilty of negligence, there being no ordinance prohibiting such speed and no highways to be crossed and it appearing that the deceased was familiar with the movements of the engine. *Ib.*

8. ———: ———: ———: CONTRIBUTORY NEGLIGENCE. Where the servants of the company in charge of the engine are not bound to anticipate persons on the track, and the injured person's own negligence placed him in peril, there can be no recovery, unless those in charge of the engine could have prevented the injury after actually discovering the peril. *Ib.*

9. ———: ———: ———. Evidence examined and *held* that a section hand killed while at work on defendant's railway track was guilty of contributory negligence precluding a recovery by his widow for his death. *Ib.*

10. NEGLIGENCE: MASTER AND SERVANT: MINES. When persons at work in a mine are, owing to the condition of its slopes, in danger of injury from stones rolling down such slopes, and the owner of the mine knows of the danger, it is his duty to use reasonable care to prevent injury to his employees therefrom. *Deweese v. The Meramec Iron Mining Company, 423.*

11. MASTER AND SERVANT: FELLOW SERVANT: NEGLIGENCE. In an action by a servant against his master for personal injuries, it is only when the negligence of a fellow servant is the whole cause of the injuries that it will avail the master as a defense. *Ib.*

12. RAILROAD: PUBLIC CROSSING: RINGING BELL AND SOUNDING WHISTLE: NEGLIGENCE. The failure of the servants of a railway company to ring the locomotive bell or to sound the whistle when approaching a public crossing as required by Revised Statutes, 1889, section 2508, will warrant the jury in finding for the injured person, when it appears that obedience to the statute would have prevented the injury. *Lloyd v. The St. Louis, Iron Mountain & Southern Railway Company, 595.*

13. ———: ———: ———: ———. Where the bell is not rung nor the whistle sounded as required by the foregoing statute, and the engineer in charge of the train could, by the exercise of ordinary care, have seen the deceased in time to have prevented the accident, the case should be submitted to the jury, notwithstanding the deceased may have been negligent in going upon the track. *Ib.*

14. ———: ———: ———: ———. The evidence examined and *held* that it was sufficient to authorize a finding of the jury that the engineer by the exercise of ordinary care could have seen the deceased in time to have avoided the injury. *Ib.*

15. PRACTICE: INSTRUCTION: COMMENTING ON EVIDENCE. An instruction, that, in determining whether the employees in charge of a train approaching a highway crossing exercised ordinary care or were guilty of negligence, the jury should take into consideration the rate of speed at which the train was running, the place of the accident, the signals or alarms given and whether the employees were at their posts and all the other facts and circumstance, in evidence relative to the movement and management of the train, is not objectionable as commenting on the evidence, but is a proper guide in determining what would be ordinary care or negligence under the circumstances. *Ib.*

16. RAILROAD: NEGLIGENCE: DUTY OF BRAKEMAN: PERSONAL INJURY. Where a brakeman at the brake rod in the cupola of a caboose car from which he could see up and down the track, on a signal for brakes to stop the train, excitedly and recklessly calls out in the hearing of passengers, "Jump! jump for your lives!" the company is liable for injury to a passenger jumping from the train, although there was no real danger. *McPeak v. Missouri Pacific Railway Company, 617.*

VOL. 128—46

17. ————: ————: IMMINENT PERIL: DISCRETION. One placed in a situation of apparent imminent peril, without time to deliberate, and acting upon the instinct of self-preservation, as a prudent person might be expected to act in the circumstances, who is injured by adopting a dangerous alternative in attempting to escape, may still recover from one by whose negligence he has been impelled to act, although no injury would have resulted had no attempt to escape been made. *Ib.*

18. ————: ————: DUTY OF BRAKEMAN: PERSONAL INJURY: JUMPING FROM TRAIN. It was a question for the jury, in this case, to determine whether a reasonably prudent man would have jumped from the train, when urged to do so by the servant in charge of the brake, who occupied a position from which he could readily discover danger, considering the construction of the car, the signal for brakes and that the urgency of the warning left no time for deliberation. *Ib.*

## NEW TRIAL.

1. PRACTICE, CRIMINAL: MOTION FOR NEW TRIAL. Allegations of fact contained in a motion for a new trial do not prove themselves; complaint, in such motion, of misconduct of attorney and jurors will not be noticed on appeal where there is no evidence in the record of any misconduct on their part. *The State v. Whalen, 467.*

2. ————: ————: NEWLY DISCOVERED EVIDENCE. A new trial will not be granted upon the ground of newly discovered evidence, where it is not shown that such evidence has in fact been discovered and its character disclosed. *Ib.*

## NOTICE.

See PROCESS.

SALE, 9, 10.

## NUISANCE.

NUISANCE: NOTICE: ST. LOUIS CITY CHARTER. The charter and ordinances of the city of St. Louis provide that notices in relation to nuisances shall be served on the owner or agent having charge of the property on which a nuisance is charged to be maintained "in the same manner as writs of summons are required to be served in civil cases." *Held,* that a service on one of two members of a firm is not notice to the other. *The City of St. Louis v. Flynn, 413.*

## OFFICES AND OFFICERS.

1. MUNICIPAL CORPORATION: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: FILING PAPER. The placing by an officer of a filing mark on a paper required to be filed in his office is not essential in order to make it a matter of record. *Kansas City v. Smart, 272.*

2. CONSTITUTION: ACTS, 1891, P. 175: SPECIAL OR LOCAL LEGISLATION. The provisions of the act approved April 23, 1891 (Acts, 1891, p. 175), for paying justices of the peace of the city of St. Louis a salary, and for paying their costs and fees into the city treasury, are not in conflict with any of the prohibitory clauses of section 53, article 4, of the constitution. *Spaulding v. Brady, 653.*

3. CITY OF ST. LOUIS: FEES OF JUSTICES OF THE PEACE: CONSTABLES. Under Acts, 1891, p. 175, fees of justices of the peace of the city of St. Louis collected by constables are to be paid into the city treasury. *Ib.*

## ORDERS.

See PRACTICE, CRIMINAL, 13.

## PARTIES.

1. CONVERSION: PARTIES. In an action for conversion, the purchaser of the property as agent, and his principal who received the property, are properly joined as defendants. *Ess v. Griffith, 50.*

2. PRACTICE: STATUTE OF LIMITATIONS: NEW PARTIES. Where, between the time of the commencement of an action and when new defendants are brought in, the statutory period of limitation has expired, the new parties may plead the statute, although the defense was not available to the original defendants. *Jaicks v. Sullivan, 177.*

3. ———: PARTIES: REAL PLAINTIFF. Where, in a suit to set aside a deed because made in fraud of creditors, it appears that the land in controversy was sold at a sheriff's sale and bought in by M., the execution plaintiff; that by his direction the sheriff's deed was subsequently made to R., who paid no consideration therefor; that R. afterward conveyed it without consideration to the present plaintiff, and that the pending litigation was carried on either in the name of M. or for his benefit, M. will be treated as the plaintiff on the record. *Robinson v. McCune, 577.*

4. ———: EJECTMENT: IMPROPER JOINDERS OF PARTIES: APPELLATE PRACTICE: HARMLESS ERROR. The fact that a wife was unnecessarily joined with her husband as a party plaintiff in an action to recover possession of her land, and was included in the judgment against him, affords no ground for reversal, since the judgment may be corrected in this court by striking out her name as party plaintiff and leaving the judgment to stand in the name of the husband alone. *Evans v. Kunze, 670.*

## PARTITION.

1. PARTITION: HOMESTEAD: JUDGMENT: ESTOPPEL: MARRIED WOMAN. An heir can not assert title to land under a deed from the widow, where such heir, though a married woman, was a party to a suit subsequently instituted in partition in which the same land was allotted in fee to the widow as a homestead. *Ketchum v. Christman, 38.*

2. ———: JUDGMENT. A judgment in partition vests in each party to whom an allotment is made the title of all the parties to the suit. *Ib.*

3. HOMESTEAD: DOWER: WIDOW: PARTITION. Where a widow is entitled to both dower and homestead in land subject to partition and one interest only is assigned her in such suit, neither she nor one claiming under her will be estopped in another suit to assert a right to the other. *Ib.*

## PARTNERSHIP.

CARRIER: POOLING CONTRACT: PARTNERSHIP. A pooling contract entered into between three carriers provided that their joint gross earnings should be divided between them on a fixed basis, each company being required to report its earnings to a pooling auditor, whose duty it was to state the accounts between the contracting parties; it was further provided that transportation rates should be charged by each company according to a schedule to be agreed upon and that there should be no interference by one company with the business of the others. *Held,* that the contract did not constitute the parties thereto partners. *Wiggins Ferry Company v. Chicago & Alton Railroad Company, 224.*

## PAWNBROKERS.

1. CITY ORDINANCE: REGULATION OF PAWNBROKERS: CONSTITUTION. A city ordinance requiring pawnbrokers to keep a book in which shall be entered a description of all property left with them in pawn, together with the name and description of the person leaving it, and to submit such book to the mayor or to any police officer on demand, is a mere police regulation to aid in the detection and prevention of larceny, which a city is authorized to pass under a charter conferring on it the power to license, regulate, tax or suppress pawnbrokers. *The City of St. Joseph v. Levin, 588.*

2. ——: ——: ——. Such ordinance is not in conflict with the constitution, article 2, section 11, providing that the people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures. *I b.*

3. ——: SUFFICIENCY OF COMPLAINT. The complaint of the violation of the ordinance in not permitting the inspection by a police officer of the book required by the ordinance to be kept by defendant as pawnbroker, *held* good, although it only inferentially charged that defendant kept said book. *I b.*

## PEDDLER.

1. PEDDLER, WHO IS: STATUTE. One who goes from place to place in this state for the purpose of offering for sale and who sells sewing machines manufactured in another state and the property of a citizen of the latter state, is a peddler within the meaning of Revised Statutes, section 7211. *The State v. Snoddy, 523.*

2. ——: SALE OF ARTICLES MANUFACTURED IN ANOTHER STATE: LICENSE: PENALTY. A peddler who sells in this state articles manufactured and owned by a resident of another state must procure the license required by law (R. S. 1889, sec. 7212), and failure to do so will render him liable to the penalty imposed by the statute. (R. S. 1889, sec. 7218.) *I b.*

3. ——: ——: ——: ——. The statutes of this state defining who are peddlers, prohibiting them from dealing as such, without license, and prescribing penalties therefor, make no distinction between articles manufactured and owned by residents of other states and those manufactured and owned by residents of this state, and are not in conflict with section 1 of article 8 of the constitution of the United States delegating to congress the sole power to regulate commerce among the states. *I b.*

### PERSONAL INJURIES.

See RAILROADS, 1, 5, 7, 16, 19, 27-29.

### PERSONAL LIBERTY.

See CRIMINAL LAW, 28.

### PERSONAL PROPERTY.

See LIENS, 2.

SALE, 7.

### PLAT.

See DEDICATION, 1.

## PLEADING.

MASTER AND SERVANT: WHEN SERVANT'S ACT BINDS MASTER: PLEADING. While the act of the servant must, to bind his employer, be in the line of his duty to his master, yet if the petition states the relation from which the duty necessarily flows, it is sufficient without further averment. *McPeak v. Missouri Pacific Railway Company, 617.*

## PLEADING, CRIMINAL.

1. CRIMINAL LAW: TRADE-MARK: COUNTERFEITING LABOR UNION'S LABEL: STATUTE. The act of the legislature of 1893 (Laws, p. 260), making it a misdemeanor to use a label adopted by a union of workingmen, prohibits the unauthorized use of a label adopted by a union of cigar makers and furnished to cigar manufacturers employing only members of the union in the making of the cigars to indicate that the cigars were made by members of the union. It is not necessary for an indictment under said act to charge an exclusive right in the union to the use of the label. *The State v. Bishop, 373.*

2. PLEADING, CRIMINAL: INDICTMENT: FELONIOUS ASSAULT. An indictment for felonious assault which charges that E. in and upon the body of one S. "feloniously, on purpose and of malice aforethought did make an assault and with a deadly weapon, to wit, a knife of the length of six inches, etc., the said E. did then and there feloniously, on purpose and of his malice aforethought, strike, cut, stab, and thrust, with intent then and there him the said S. to kill and murder," is fatally defective in failing to allege who was cut, struck or stabbed. *The State v. Evans, 406.*

3. ———: ———: INTENDMENT. In criminal prosecutions everything constituting the offense must be charged with certainty and clearness and nothing material must be left to intendment or implication. *Ib.*

4. CRIMINAL LAW: DEFILING WARD: INDICTMENT. An indictment for defiling a female under eighteen years of age, intrusted to defendant's care, which alleges that such female was on a certain day under eighteen years of age and that on that day the defendant, to whose care she had been and was then confided, defiled her, is sufficient. *The State v. Lingle, 528.*

5. CITY ORDINANCE: PAWNBROKER: SUFFICIENCY OF COMPLAINT. The complaint of the violation of an ordinance in not permitting the inspection by a police officer of the book required by the ordinance to be kept by defendant as pawnbroker, *held* good, although it only inferentially charged that defendant kept said book. *City of St. Joseph v. Levin, 588.*

## PLEDGE.

1. SALE: WAREHOUSE RECEIPTS: PLEDGE: VENDOR'S LIEN. The giving of *non* negotiable warehouse receipts by a vendee of whisky stored in a government bonded warehouse, to a creditor of such vendee to secure an antecedent debt operates only as a pledge of such property to secure said debt and does not affect an existing vendor's lien thereon. *Vogelsang's Administrator v. Fisher, 386.*

2. ———: PERSONAL PROPERTY: PLEDGE. Where bank stock was pledged as collateral security for a note given a bank and the note and collateral were sold by the pledgee to another bank which afterward transferred it to the president of the pledgee bank upon his direction, without any mutual agreement to that effect and without any price having been agreed upon, such transfer does not constitute a sale and the title of the pledged stock remained as before such attempted transfer. *Greer v. Lafayette County Bank, 559.*

3. LOAN PAYABLE ON DEMAND: PLEDGE: SALE: NOTICE: CONVERSION. A sale of collaterals held for a loan payable on demand, without notice to or demand of the pledgor, is invalid and may, at the option of the latter, be affirmed or treated as a conversion. *I b.*

4. PLEDGE: SALE: NOTICE: AGENT: REDEMPTION. The pledgee must, as a general rule, give reasonable notice to the pledgor of his intention to sell and he can not buy at the sale, whether made by himself, or his agent or broker. A sale without notice or at which the pledgee purchases is a breach of the contract of pledge and the pledgor may treat such sale and purchase as a conversion and will' be entitled to redeem on payment or tender of the principal debt. *I b.*

POSSESSION.

See SALE, 3.

PRACTICE, CIVIL.

1. PRACTICE: COMMENCEMENT OF ACTION: LIMITATION: STATUTE. Under section 2013 (R. S. 1889) the filing of a petition in a court of record is the commencement of action, as against the bar of limitation, notwithstanding the summons may not be issued until after the period of limitation expires. *McGrath v. The Kansas City & Colorado Railroad Co., 1.*

2. ———: ———: JUSTICE'S COURT. In a justice's court an action is deemed commenced upon delivery of the writ to the constable. *I b.*

3. ———: ———: LIS PENDENS. The filing of a petition, under the law in force until 1889, was not regarded as the commencement of suit in respect of the law of *lis pendens*. *I b.*

4. PRACTICE IN SUPREME COURT: STRIKING OUT SPECIAL PLEA: EXCEPTIONS. Where the action of the trial court in striking out, on motion, a special plea contained in an answer is not excepted to, nor the motion preserved in the bill of exceptions, such action will not be reviewed on appeal. *Smith v. Kansas City, 23.*

5. MUNICIPAL CORPORATIONS: CHANGE OF STREET GRADE: MEASURE OF DAMAGES: INSTRUCTION. In an action for damages to property by lowering the grade of a street, an instruction to the effect that, in estimating the damages, the jury may take into consideration, with the other evidence in the case, the cost of adjusting the premises to the condition of the street created by the change of grade, is not erroneous, where the measure of damages is fixed by other instructions at the difference in the market value before and after the change. *I b.*

6. PRACTICE: INSTRUCTIONS. Instructions should be read and construed all together. *I b.*

7. CONVEYANCE: BOUNDARY: HIGHWAY: PRACTICE: PRESUMPTION. The question whether a conveyance of land bounded on a highway passes the title to its center is one of intention to be ascertained from the language of the deed, together with other facts and circumstances properly going to explain that language, such as the situation of the land and the relation of the parties; but the presumption of intent to pass the title to the center of the highway will prevail, unless a contrary intention appears. *Grant v. Moon, 43.*

8. PRACTICE: EVIDENCE: DEPOSITION. Where the testimony of a witness on a former trial, contained in the stenographer's report, was read in evidence at the second trial, the witness residing in another state, it was error to exclude a deposition of such witness, laying the foundation for impeaching testimony, taken prior to the second trial, in the presence of the opposing counsel and concerning facts which had come to the knowledge of the party taking the deposition after the former trial. *Ess v. Griffith, 50.*

9. ————: BURDEN OF PROOF. The burden at all times rests upon the plaintiff to prove the allegations of his petition, but, upon certain facts being proved by him, he may, by reason of the legal conclusions deducible from the establsihment of such facts, be entitled to a judgment, where the facts so proved are left unexplained by defendant. *Schaefer v. St. Louis & Suburban Railway Company, 64.*

10. ————: ERROR: ESTOPPEL. One can not complain of error which he has himself introduced into the record. *Ib.*

11. ————: INSTRUCTION. An instruction upon an issue not supported by any evidence is harmless. *Ib.*

12. ————: ————: JUDGMENT. A judgment will not be reversed for error in an instruction upon the measure of damages where the finding was for the defendant. *Ib.*

13. ————: WITNESSES: QUESTIONS BY COURT AND JURORS. The trial judge and members of the jury may question witnesses upon matters necessary for their consideration in determining the case before them. *Ib.*

14. EMINENT DOMAIN: JURY TRIAL: "INCORPORATED COMPANY:" CONSTITUTION. A municipal corporation is not an "incorporated company" within the constitution, article 12, section 4, which provides that "the right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right." *Kansas City v. Vineyard, 75.*

15. ————: ————: ————: ————. The fact that some of the defendants in such condemnation proceeding are incorporated companies does not give other defendants the right to demand a trial by jury. *Ib.*

16. CHATTEL MORTGAGE: FRAUD: QUESTION FOR JURY. Where a mortgage is not void on its face and the extrinsic evidence introduced on the issue of its fraudulent character is conflicting, the question is one for the jury under proper instructions. *Barton v. Sitlington, 164.*

17. PRACTICE: STATUTE OF LIMITATIONS: NEW PARTIES. Where, between the time of the commencement of an action and when new defendants are brought in, the statutory period of limitation has expired, the new parties may plead the statute, although the defense was not available to the original defendants. *Jaicks v. Sullivan, 177.*

18. MUNICIPAL CORPORATIONS: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: JURY TRIAL. The fact that, in a condemnation proceeding by a city for boulevard purposes, certain of the defendants are incorporated companies does not give the other defendants the right to demand a trial by a jury of twelve under article 12, section 4, of the constitution. *Kansas City v. Smart, 272.*

19. ——: ——: ——: VERDICT. The mere fact that the verdict in such proceedings assessed the benefits to the city at one dollar will not justify setting it aside as unjust and discriminating, such verdict being founded on the conflicting evidence of numerous witnesses and on views of the premises by them extending over a period of several weeks. *Ib.*

20. PRACTICE: BILL OF EXCEPTIONS: EXTENSION OF TIME. Where time was granted in which to file a bill of exceptions and before the expiration of the time an agreement was filed with the clerk extending the time to a given date, the bill can not be filed after such date agreed upon, notwithstanding the court may have attempted to make an order extending the time beyond the agreed date. *The State v. Woolwine, 347.*

21. INSTRUCTIONS: WAIVER OF ERROR. When the instructions in a case, taken as a whole, properly present it to the jury, the fact that one of them standing alone would be misleading will not cause a reversal of the judgment of the trial court. *Deweese v. The Meramec Iron Mining Company, 423.*

22. PRACTICE: REOPENING TRIAL. A defendant can not have the trial of a cause reopened at a subsequent term of the court in order to introduce evidence after having, on the trial, withdrawn his witnesses and informed the court that he would insist on his demurrer to the evidence which had been overruled. *Collins v. Wayne Lumber Co., 451.*

23. PRACTICE, CRIMINAL: MOTION FOR NEW TRIAL. Allegations of fact contained in a motion for new trial do not prove themselves; complaint, in such motion, of misconduct of attorney and jurors will not be noticed on appeal where there is no evidence in the record of any misconduct on their part. *The State v. Whalen, 467.*

24. ——: ——: NEWLY DISCOVERED EVIDENCE. A new trial will not be granted upon the ground of newly discovered evidence, where it is not shown that such evidence has in fact been discovered and its character disclosed. *Ib.*

25. APPEAL: BOND: PRACTICE. Appeals in civil cases are regulated entirely by statute and the provisions regulating them must be strictly pursued. Where the statute requires an appeal bond and declares the conditions thereof, it implies that without such bond no appeal lies. *The State ex rel. Craig v. Woodson, 497.*

26. PRACTICE: PARTIES: REAL PLAINTIFF. Where, in a suit to set aside a deed because made in fraud of creditors, it appears that the land in controversy was sold at a sheriff's sale and bought in by M., the execution plaintiff; that by his direction the sheriff's deed was subsequently made to R., who paid no consideration therefor; that R. afterward conveyed it without consideration to the present plaintiff, and that the pending litigation was carried on either in the name of M. or for his benefit, M. will be treated as the plaintiff on the record. *Robinson v. McCune, 577.*

27. EQUITY: FAILURE TO FIND FACTS: ERRONEOUS DECREE. A decree reciting that a deed was given and recorded, and setting it aside, without any finding of facts as a basis for such action, is erroneous. *Ib.*

28. PRACTICE: INSTRUCTION: COMMENTING ON EVIDENCE. An instruction that, in determining whether the employees in charge of a train approaching a highway crossing exercised ordinary care or were guilty of negligence, the jury should take into consideration the rate of speed at which the train was running, the place of the accident, the signals or alarms given and whether the employees were at their posts and all the other facts and circumstances in evidence relative to the movement and management of the train is not objectionable as commenting on the evidence, but is a proper guide in determining what would be ordinary care or negligence under the circumstances. *Lloyd v. The St. Louis, Iron Mountain & Southern Railway Company, 595.*

29. ———: JURY: IMPROPER REMARKS OF JUDGE. Where a jury failed to agree, after being out from 8 P. M. to 10:30 A. M. the next day, when the court reminded them of the trouble and expense of trying the case, and one of the jurors replied that "there's eleven of us that could get together in about a minute," the remark of the court that "Verdicts are often reached in cases after further consideration. * * * I don't want to put you gentlemen to any discomfort unnecessarily; yet I think you ought to look it over, and experience shows that it often takes some little time to get their minds together. I trust and presume that every juror is acting rationally and that nobody is acting from a dogmatic spirit, merely for the purpose of asserting his opinion," will constitute reversible error, a verdict having been agreed upon in an hour and a half after it was made. *McPeak v. The Missouri Pacific Railway Company, 617.*

30. RAILROAD: NEGLIGENCE: PRACTICE. Where there is a conflict between the witnesses for the plaintiff and those for the defendant upon a material allegation of the petition, the question is one of fact and veracity to be decided by the jury. *Ib.*

31. RESIDENCE: QUESTION FOR COURT. The question of residence is one of fact for the court in cases tried by it, and where no declarations of law are given and there is substantial evidence to support its finding, it will not be disturbed on appeal. *Hall v. Schoenecke, 661.*

32. PRACTICE: EJECTMENT. While ejectment is the appropriate form of action in this state to try title to land, yet it is by nature a possessory action, and may not always try the title. *Evans v. Kunze, 670.*

33. ———: ———: HUSBAND AND WIFE. It is settled law in this state that a husband is entitled to the possession of his wife's lands held by her as at common law, and may sue in ejectment therefor without joining her in the action. *Ib.*

## PRACTICE, CRIMINAL.

1. PRACTICE, CRIMINAL: MOTION FOR NEW TRIAL. Allegations of fact contained in a motion for new trial do not prove themselves; complaint, in such motion, of misconduct of attorney and jurors will not be noticed on appeal where there is no evidence in the record of any misconduct on their part. *The State v. Whalen, 467.*

2. ———: ———: NEWLY DISCOVERED EVIDENCE. A new trial will not be granted upon the ground of newly discovered evidence, where it is not shown that such evidence has in fact been discovered and its character disclosed. *Ib.*

3. ———: SPECIAL GRAND JURY: PRESUMPTION. It will not be presumed that the trial court impaneled a special grand jury before the discharge of the regular one. *The State v. Overstreet, 470.*

4. ———: ———: DISCRETION OF COURT. The impaneling of a special grand jury is a matter within the discretion of the trial court, and, like all matters of discretion, its action in such cases will not be reviewed on appeal unless its discretion has been abused. *Ib.*

5. ———: ———: JURISDICTION. A special grand jury is not restricted in its investigations exclusively to those offenses which have been committed since the adjournment of the regular grand jury, but, when impaneled, it may inquire and make presentment of any offense committed within the jurisdiction of the court, which is not barred by the statute of limitations. *Ib.*

6. CRIMINAL LAW: PRACTICE: CHANGE OF VENUE: EVIDENCE. Where a change of venue has been taken in a criminal case, it is for the court trying the case to determine whether the order of removal and prior proceedings in the county in which the prosecution originated were sufficient to confer jurisdiction, and the transcript of such order and prior proceedings need not be offered in evidence on the trial by the state. *The State v. Lingle, 528.*

7. ———: ———: ———: PRESUMPTION. An order of removal on change of venue is sufficient, where the transcript contains the petition of defendant for a change, necessary affidavits in support of it, and recites that the application was considered by the court, the change awarded and bond fixed and given for defendant's appearance at the next term of the circuit court of the county to which the change was awarded, and it will not be presumed in such case that there might have been another application on a different ground. *Ib.*

8. ———: ———: INSTRUCTION: DEFILING WARD. Where, in a prosecution for defiling a ward, the indictment alleges that she was at the time of such defilement, under eighteen years of age, it was proper to submit to the jury the question whether she was at the time of the commission of the offense under that age. *Ib.*

9. ———: ———: ———: DEFENDANT AND WIFE TESTIFYING, CREDIBILITY OF. It is proper to instruct the jury in a criminal case that in considering the weight of the evidence given by both the defendant and his wife they will take into consideration the fact that he is the defendant, testifying in his own behalf, and that she is his wife, and that they may consider their interest in the case and the marital relation in passing on the credibility of their testimony. *Ib.*

10. ———: ———: ———: DEFILING WARD: EVIDENCE OF HIGHER CRIME. On trial for defiling a ward, it is proper to instruct the jury that before they can acquit, because a higher degree of crime has been shown, they must believe from the evidence that if defendant were on trial for a higher degree of crime, it would be their duty, from such evidence, to convict him of such higher degree of crime; but, although they believe from the evidence that defendant used force to accomplish his purpose, yet, if they further believe that the prosecuting witness did yield her consent, however reluctantly, before the carnal act was accomplished, the defendant would not be guilty of such higher crime. *Ib.*

11. ———: ———: INSTRUCTIONS. Where a term used in an instruction has been properly defined, it is not error to refuse another instruction defining it. *Ib.*

12. ———: ———: DEFILING WARD: FORCE: REMARKS OF COUNSEL. It is improper for counsel for defendant on trial for defiling his ward, to comment, in his opening argument to the jury, on the improbability of conception following an act of sexual intercourse effected by force, where there was no expert or other testimony to that effect. *Ib.*

13. CRIMINAL PRACTICE: ROUTINE BUSINESS. Orders of a court of record of general jurisdiction pertaining to its routine business are not necessarily judicial. *The State ex rel. Gibson v. Lay, 609.*

14. ———: CHANGE OF VENUE: RECOGNIZANCE. A defendant in a criminal case, to whom a change of venue to the circuit court of another county has been awarded, and who has entered into a recognizance to appear therein, is bound to appear at the next succeeding term of such court; and this is true although the time for his appearance as required in the recognizance had passed when it was executed. *Ib.*

15. ———: ———: ———: CLERICAL ERROR. The recital in the recognizance as to the time of the appearance will be treated as a clerical error. *Ib.*

16. ———: ———: ———. Where a sheriff, under Revised Statutes, 1889, section 4126, takes and approves the recognizance of a defendant and files the same in the office of the circuit clerk, he can not impair its validity by subsequently removing it from the clerk's office and withdrawing his approval. *Ib.*

17. ———: ———: ———. The circuit court has in such case authority to protect its records notwithstanding jurisdiction of the cause itself has been lost by the entry of an order granting a change of venue. *Ib.*

18. ———: ———. Where an order for a change of venue has been duly entered of record, the county to which the venue is changed immediately acquires jurisdiction of the cause. *Ib.*

19. ———: ———. *Semble,* that the awarding a change of venue in a criminal case in the absence of the prisoner is of doubtful propriety. *Ib.*

PRACTICE IN SUPREME COURT.

1. PRACTICE IN SUPREME COURT: STRIKING OUT SPECIAL PLEA: EXCEPTIONS. Where the action of the trial court in striking out, on motion, a special plea contained in an answer is not excepted to, nor the motion preserved in the bill of exceptions, such action will not be reviewed on appeal. *Smith v. Kansas City, 23.*

2. CONVEYANCE: BOUNDARY: HIGHWAY: PRACTICE IN SUPREME COURT. Where there is evidence to support the finding of the trial court as to the location of disputed boundaries of land it will not be disturbed upon appeal. *Grant v. Moon, 43.*

3. PRACTICE: NEW TRIAL: APPEAL. One who, without appealing from an order granting a new trial, participates in the retrial, waives his right to have the order reviewed on appeal from the final judgment. *Ess v. Griffith, 50.*

4. ———: INSTRUCTION: JUDGMENT. A judgment will not be reversed for error in an instruction upon the measure of damages where the finding was for the defendant. *Schaefer v. St. Louis & Suburban Railway Company, 64.*

5. PRACTICE IN SUPREME COURT: MOTION FOR NEW TRIAL. Where no motion for new trial was filed in the trial court, the supreme court will, on appeal, review only such errors as appear on the face of the record proper; in such case, errors assigned upon the admission of evidence and other rulings during the progress of the trial will not be considered. *Bartlett v. Veach, 91.*

6. MUNICIPAL CORPORATION: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: OBJECTION TO JUROR. A general objection to the whole panel in proceedings to condemn land· is insufficient, on appeal, as an objection to a particular juror on the ground that he was a member of the council when the ordinance providing for the proposed improvement was passed. *Kansas City v. Smart, 272.*

7. ———: ———: ———. An appellant in such proceeding can not avail himself of any error or defects affecting the rights of other parties not appealing. *I b.*

8. APPELLATE PRACTICE: EQUITY CASES. In cases · of equitable character the supreme court reviews the facts. *Warren v. Ritchie, 311.*

9. ———: PROHIBITION: CONTEMPT. Whether a Missouri creditor, who sues in Illinois to obtain the application to his demand of a fund due there to a Missouri corporation (in the hands of a receiver of a Missouri circuit court), is guilty of contempt of the latter, is *held* to be a question which the supreme court will not decide on an application for a prohibition against the circuit court, in advance of a ruling by the latter on that subject. *The State ex rel. Hofmann v. Scarritt, 331.*

10. ———: BILL OF EXCEPTIONS: EXTENSION OF TIME. The trial court can not, in vacation, extend the time for filing a bill of exceptions after the expiration of the time originally granted had expired, and a bill filed· after such extension of time will be disregarded on appeal. *The State v. Chain, 361.*

11. SUPREME COURT PRACTICE: MOTION: RECITAL OF FACTS. Recital of facts in a motion to quash a panel of jurors is no evidence of the existence of such facts, and the supreme court will not, in the absence of evidence establishing them, review the action of the trial court in overruling the motion. *Cox v. The Atchison, Topeka & Santa Fe Railroad Company,. 362.*

12. INSTRUCTIONS: WAIVER OF ERROR. When the instructions in a case, taken as a whole, properly present it to the jury, the fact that one of them standing alone would be misleading will not cause a reversal of the judgment of the trial court. *Deweese v. Meramec Iron Mining Company, 423.*

13. APPELLATE PRACTICE: MURDER. The record examined on appeal from a conviction of murder in the second degree, and, no exceptions having been saved to the admission or exclusion of evidence, the instructions being in proper form and no errors appearing in the record proper, the judgment was affirmed. *The State v. Farris, 447.*

14. PRACTICE, CRIMINAL: MOTION FOR NEW TRIAL. Allegations of fact contained in a motion for new trial do not prove themselves; complaint, in such motion, of misconduct of attorney and jurors will not be noticed on appeal where there is no evidence in the record of any misconduct on their part. *The State v. Whalen, 467.*

15. APPELLATE PRACTICE: VERDICT: ERRONEOUS INSTRUCTION. Where a verdict is the only one that could properly have been rendered on the evidence, it will not be disturbed because of the giving of an erroneous instruction. *Greer v. Lafayette County Bank, 559.*

16. ———: DELIVERY OF COPY OF APPELLANT'S BRIEF TO RESPONDENT: DISMISSAL OF APPEAL. Where an appellant fails to deliver to the respondent a copy of his brief thirty days before the day on which the cause is set for hearing, as required by rule 15 of the supreme court, the appeal will be dismissed on motion of the respondent, as authorized by rule 16. *Rose v. Rose, 576.*

17. PRACTICE IN SUPREME COURT: FAILURE TO FILE INDEXED TRANSCRIPT. The filing of a printed transcript, which is neither indexed nor certified to by the clerk, is not a compliance with rule 14 of the supreme court allowing a printed and indexed transcript, duly certified by the clerk, to be filed instead of the manuscript record. *Walser v. Wear, 652.*

18. ———: FAILURE TO FILE ABSTRACT: DISMISSAL OF APPEAL. For failure to file an abstract as required by rule 13 of the supreme court, the appeal will be dismissed as authorized by rule 16. *Ib.*

19. ———: RECORD PROPER: BILL OF EXCEPTIONS. Recitals in the bill of exceptions will not supply the record proper. *Ib.*

20. RESIDENCE: QUESTION FOR COURT. The question of residence is one of fact for the court in cases tried by it, and where no declarations of law are given and there is substantial evidence to support its finding, it will not be disturbed on appeal. *Hall v. Schoenecke, 661.*

21. ———: REMOVAL: INTENTION OF RETURNING: RIGHT TO VOTE: FINDING OF TRIAL COURT: PRESUMPTION. Where there was evidence that a person moved to a place for the purpose of educating his children and no evidence that such intention was afterward changed, the finding of the court that he acquired no residence there will be presumed to be correct, where it does not appear upon what theory of law the court decided the questions of fact. *Ib.*

22. EJECTMENT: HUSBAND AND WIFE: APPELLATE PRACTICE. Where, in an action of ejectment by the husband and wife jointly, the right to the possession of the property by the husband upon the title of his wife is the only issue tried by the court below or raised by the pleadings, and judgment is rendered for defendant on the ground that the acts of the husband have estopped him from recovering possession, the judgment will not be reversed on the ground that the wife can not be deprived of her right to possession by the acts of her husband, such issue being raised for the first time in this court. *Evans v. Kunze, 670.*

23. APPELLATE PRACTICE: ESTOPPEL. A party will not be permitted to try a case upon one theory in the court below, and have the same reversed here upon an entirely different theory. *Ib.*

24. ———: ———: IMPROPER JOINDER OF PARTIES: APPELLATE PRACTICE: HARMLESS ERROR. The fact that a wife was unnecessarily joined with her husband as a party plaintiff in an action to recover possession of her land, and was included in the judgment against him, affords no ground for reversal, since the judgment may be corrected in this court by striking out her name as party plaintiff and leaving the judgment to stand in the name of the husband alone. *Ib.*

## PREFERENCE.

1. CORPORATION: DEBTOR AND CREDITOR: PREFERENCE. A corporation has the right, in good faith, to prefer a creditor, though it is in a failing condition, irrespective of whether its managers intend to go on, or to wind up its business, so long as the corporation is not dissolved, and retains control of its property. *Slavens v. Cook Drug Company, 341.*

2. INSOLVENT CORPORATION: PREFERENCE: ASSIGNMENT. An insolvent corporation, having possession and control of its property, may, in the absence of fraud or statutory restriction, prefer a *bona fide* creditor by a deed of trust on its property, and the execution of a general assignment of the same property immediately thereafter, and on the same day, will not invalidate the preference. *The Waggoner-Gates Milling Company v. The Ziegler-Zaiss Commission Company, 473.*

3. ——: ——. *Bona fide* creditors of such corporation, who are not stockholders or directors therein, are not precluded from taking security for their claims, though the notes held by them against the corporation were also indorsed by some of the directors individually. *Ib.*

## PRESUMPTION.

1. CONVEYANCE: BOUNDARY: HIGHWAY: PRACTICE: PRESUMPTION. The question whether a conveyance of land bounded on a highway passes the title to its center is one of intention to be ascertained from the language of the deed, together with other facts and circumstances properly going to explain that language, such as the situation of the land and the relation of the parties; but the presumption of intent to pass the title to the center of the highway will prevail, unless a contrary intention appears. *Grant v. Moon, 43.*

2. PRACTICE, CRIMINAL: SPECIAL GRAND JURY: PRESUMPTION. It will not be presumed that the trial court impaneled a special grand jury before the discharge of the regular one. *The State v. Overstreet, 470.*

3. RESIDENCE: INTENTION: PRESUMPTION. The presumption in favor of one having acquired a residence in this state by coming into it and remaining for two years may be rebutted by evidence that it was not his intention to acquire residence here. Whether a change of residence was affected in any case depends upon the intention with which the removal from the former residence was made. *Hall v. Schoenecke, 661.*

4. ——: REMOVAL: INTENTION OF RETURNING: RIGHT TO VOTE: FINDING OF TRIAL COURT: PRESUMPTION. Where there was evidence that a person moved to a place for the purpose of educating his children and no evidence that such intention was afterward changed, the finding of the court that he acquired no residence there will be presumed to be correct, where it does not appear upon what theory of law the court decided the questions of fact. *Ib.*

## PRINCIPAL AND AGENT.

PRINCIPAL AND AGENT: FRAUDULENT ACTS OF AGENT. A principal is bound by the acts of his accredited agent, done in the course of his employment, even though they be of a fraudulent character. *Greer v. Lafayette County Bank, 559.*

## PROCESS.

1. NUISANCE: NOTICE: ST. LOUIS CITY CHARTER. The charter and ordinances of the city of St. Louis provide that notices in relation to nuisances shall be served on the owner or agent having charge of the property on which a nuisance is charged to be maintained "in the same manner as writs of summons are required to be served in civil cases." *Held*, that a service on one of two members of a firm is not notice to the other. *The City of St. Louis v. Flynn, 413.*

2. ———: ———: CONSTRUCTIVE SERVICE. Where the statute provides for constructive service of process, the statutory requirements must be observed; two defendants can not be so served by leaving only one copy for both with a member of their family at *their* usual place of abode. *Ib.*

## PROHIBITION.

1. APPELLATE PRACTICE: PROHIBITION: CONTEMPT. Whether a Missouri creditor, who sues in Illinois to obtain the application to his demand of a fund due there to a Missouri corporation (in the hands of a receiver of a Missouri circuit court), is guilty of contempt of the latter, is *held* to be a question which the supreme court will not decide on an application for a prohibition against the circuit court, in advance of a ruling by the latter on that subject. *The State ex rel. Hofmann v. Scarritt, 331.*

2. PROHIBITION: CONTEMPT. A writ of prohibition will not lie to prevent the examination of a charge of contempt in a pending proceeding merely on the ground that the petition in the proceeding does not state a cause of action, or is otherwise defective. *Ib.*

3. ———: CHECK ON JUDICIAL POWER. The writ of prohibition may be invoked to check the use of judicial power beyond the sphere marked out by law for its exercise, as well as to stay an assumption of power over causes not committed to the court's consideration. *Ib.*

4. ———. The writ of prohibition should not be issued to correct judicial error on a subject within the jurisdiction of the court; and still less to anticipate a ruling on a question properly within the authority of the court to decide. *Ib.*

## PUBLIC POLICY.

See CONTRACTS, 4.

## RAILROADS.

1. RAILROADS: DEFECTIVE STEPS: INJURY TO PASSENGER. In an action against a railroad company for injury caused by the negligence of defendant in failing to provide "safe steps or platform for egress from the trains," an instruction that, "if defendant provided and used such platform steps to enable the passengers to alight as were ordinarily provided for similar cars on similar roads," it has satisfied the requirements of the law, was erroneous, the issue being whether the platform steps of defendant's cars, at the time plaintiff was injured, were safe for the use of passengers. *Dougherty v. The Kansas City & Independence Rapid Transit Railway, 33.*

2. ———: ———. A railroad company can not excuse itself from the obligation to furnish its passengers with safe appliances for getting in and out of its cars, by showing that the appliances it had adopted had been adopted and used by other railroads engaged in a similar work. *Ib.*

3. ———: CARRIER AND PASSENGER. In order to create the relation of carrier and passenger, there must be an offer to become a passenger on the one part and an acceptance of the offer on the part of the carrier. *Schaefer v. St. Louis & Suburban Railway Company, 64.*

4. ———: ———: INSTRUCTION. An instruction to the effect that one who attempts to get on a car, with the intention of paying his fare when called upon, is a passenger, is erroneous, in the absence of any qualification as to the time, place and manner of the attempt. *Ib.*

5. ———: PASSENGER: INSTRUCTION. It is not error, in an action for personal injuries against a railroad company, to refuse an instruction declaring that if plaintiff, without negligence on his part, was injured in attempting to get upon defendant's car, "then the burden is thrown upon the defendant to show to the satisfaction of the jury that its employees managing the car exercised the utmost human care," in its management. *Ib.*

6. ———: ———: CONTRIBUTORY NEGLIGENCE: GETTING ON OR OFF MOVING TRAINS: QUESTION FOR JURY. Whether a person who attempts to get on or off a slowly moving train, especially at a platform, is guilty of contributory negligence, is a question of mixed law and fact, to be determined by the jury, under the guidance of proper instructions, in the light of attending circumstances. *Ib.*

7. ———: PERSONAL INJURIES: PASSENGER: CONTRIBUTORY NEGLIGENCE: INSTRUCTION. In an action against a railroad company for personal injuries, instructions which do not recognize plaintiff as a passenger are not, for that reason, erroneous, where the real issue is whether or not, in the light of all the evidence, plaintiff was guilty of negligence in attempting to board defendant's car, which directly contributed to the injury of which he complained. *Ib.*

8. CONTRACT BETWEEN FERRY AND RAILROAD COMPANIES: INTERPRETATION. A contract between the Wiggins Ferry Company, the proprietor of a tract of land on the Mississippi river opposite St. Louis, including Bloody Island, and the Chicago & Alton Railroad Company, operating a road to such island, recited the ferry company's object to be to secure the railroad company's ferrying business, and the railroad company's object to be to secure depot grounds, etc., which were therein granted to it by the ferry company; the contract further providing that the railroad company would always employ said ferry company to transport across river all persons and property taken across, to or from the railroad, and that "no other than the Wiggins Ferry" should ever be employed by the railroad company to cross any passengers or freight coming or going on such road. *Held,* that the contract did not prevent the railroad company from carrying its freight and passengers over the river at the ferry crossing by means of a bridge afterward constructed, but merely prohibited it from employing any other ferry in transporting them. *Wiggins Ferry Company v. Chicago & Alton Railroad Company, 224.*

9. ———: ———: PUBLIC POLICY. A construction of the contract that it prevented the use of the bridge by the railroad company for the transportation of freight and passengers, would render it contrary to public policy and void. *Ib.*

10. ———: ———: ———. Where a contract is fairly and reasonably open to two constructions, one making it legal and the other illegal, the former must be adopted. *Ib.*

11. ———: ———: CARRIER: CONVERSION. A shipper of goods has the right to designate the connecting line over which his goods shall be carried, and the first carrier is bound to obey the direction of the shipper in respect thereto, and if he does not do so he is liable for conversion. *Ib.*

12. ———: ———: BREACH OF CONTRACT: LOSS OF PROFITS. If, however, the railroad company, by persistent and determined effort, diverted its car transfer business to another ferry, by reason of its failure to make any connection with the Wiggins Ferry Company, so that shippers had no choice of routes across the river, such railroad company, under its contract above mentioned, became liable to the Wiggins Ferry Company for its loss of profits on its business. *Ib.*

**13.** ——: ——. The railroad is not liable, under said contract, to the Wiggins Ferry Company for loss of profits on cars delivered by it for other railway companies to another ferry for transportation across the river under contracts between them and the ferry company, and with which contract the Wiggins Ferry Company had nothing to do. *Ib.*

**14.** ——: ——. Nor is such railroad company liable on account of cars delivered by it to another railroad company at Bloody Island, by which they were conveyed down the river eight miles beyond the limits of St. Louis, where they were ferried across the river and delivered to connecting carriers; such cars being delivered to such other road by directions of the consignor or consignee. *Ib.*

**15.** CARRIER: POOLING CONTRACT: PARTNERSHIP. A pooling contract entered into between three carriers provided that their joint gross earnings should be divided between them on a fixed basis, each company being required to report its earnings to a pooling auditor, whose duty it was to state the accounts between the contracting parties; it was further provided that transportation rates should be charged by each company according to a schedule to be agreed upon and that there should be no interference by one company with the business of the others. *Held,* that the contract did not constitute the parties thereto partners. *Ib.*

**16.** RAILROAD: SWITCH YARD: INJURY TO SERVANT: CONTRIBUTORY NEGLIGENCE. Servants of a railroad company operating a switch engine in its yards are not required to anticipate that an experienced section hand, familiar with the work of the engine and knowing the risk of crossing the track in front of moving cars, will heedlessly step on the track in front of such engine without even looking for it. *Loring v. Kansas City, Fort Scott & Memphis Railroad Company, 349.*

**17.** ——: ——: ——. The fact that the engine was being run at a rate of speed of twelve miles an hour did not render the company guilty of negligence, there being no ordinance prohibiting such speed and no highways to be crossed, and it appearing that the deceased was familiar with the movements of the engine. *Ib.*

**18.** ——: ——: ——: CONTRIBUTORY NEGLIGENCE. Where the servants of the company in charge of the engine are not bound to anticipate persons on the track, and the injured person's own negligence placed him in peril, there can be no recovery, unless those in charge of the engine could have prevented the injury *after* actually discovering the peril. *Ib.*

**19.** ——: ——: ——. Evidence examined and *held* that a section hand killed while at work on defendant's railway track was guilty of contributory negligence precluding a recovery by his widow for his death. *Ib.*

**20.** RAILROAD: KILLING STOCK: FENCE. Plaintiff, in an action against a railroad to recover double damages for killing his cows, having made a *prima facie* case by showing that the cows were killed on defendant's track where it was not fenced, the burden is on defendant of showing, as an excuse for not fencing the track, that a fence would have endangered the lives and limbs of defendant's employees engaged in switching. *Cox v. The Atchison, Topeka & Santa Fe Railroad Company, 362.*

VOL. 128—47

21. ———: ———: CATTLE GUARDS: QUESTION OF FACT. Whether the company could have maintained cattle guards nearer the station, adjacent to which the accident occurred, without endangering the safety of the company's employees was, under the evidence in this case, a question for the jury. *I b.*

22. ———: PUBLIC WAY: TRESPASSER. A person struck on a public road or street by a passing railway train is not a trespasser. *Lloyd v. The St. Louis, Iron Mountain & Southern Railway Company, 595.*

23. ———: PUBLIC CROSSING: RINGING BELL AND SOUNDING WHISTLE: NEGLIGENCE. The failure of the servants of a railway company to ring the locomotive bell or to sound the whistle when approaching a public crossing, as required by Revised Statutes, 1889, section 2508, will warrant the jury in finding for the injured person, when it appears that obedience to the statute would have prevented the injury. *I b.*

24. ———: ———: ———: ———. Where the bell is not rung nor the whistle sounded as required by the foregoing statute, and the engineer in charge of the train could, by the exercise of ordinary care, have seen the deceased in time to have prevented the accident, the case should be submitted to the jury notwithstanding the deceased may have been negligent in going upon the track. *I b.*

25. ———: ———: ———: ———. The evidence examined and *held* that it was sufficient to authorize a finding of the jury that the engineer, by the exercise of ordinary care, could have seen the deceased in time to have avoided the injury. *I b.*

26. PRACTICE: INSTRUCTION: COMMENTING ON EVIDENCE. An instruction that, in determining whether the employees in charge of a train approaching a highway crossing exercised ordinary care or were guilty of negligence, the jury should take into consideration the rate of speed at which the train was running, the place of the accident, the signals or alarms given and whether the employees were at their posts, and all the other facts and circumstances in evidence relative to the movement and management of the train is not objectionable as commenting on the evidence, but is a proper guide in determining what would be ordinary care or negligence under the circumstances. *I b.*

27. RAILROAD: NEGLIGENCE: DUTY OF BRAKEMAN: PERSONAL INJURY. Where a brakeman at the brake rod in the cupola of a caboose car from which he could see up and down the track, on a signal for brakes to stop the train, excitedly and recklessly calls out in the hearing of passengers, "Jump! jump for your lives!" the company is liable for injury to a passenger jumping from the train, although there was no real danger. *McPeak v. Missouri Pacific Railway Company, 617.*

28. ———: ———: IMMINENT PERIL: DISCRETION. One placed in a situation of apparent imminent peril, without time to deliberate, and acting upon the instinct of self-preservation, as a prudent person might be expected to act in the circumstances, who is injured by adopting a dangerous alternative in attempting to escape, may still recover from one by whose negligence he has been impelled to act, although no injury would have resulted had no attempt to escape been made. *I b.*

29. ———: ———: DUTY OF BRAKEMAN: PERSONAL INJURY: JUMPING FROM TRAIN. It was a question for the jury, in this case, to determine whether a reasonably prudent man would have jumped from the train, when urged to do so by the servant in charge of the brake, who occupied a position from which he could readily discover danger, considering the construction of the car, the signal for brakes, and that the urgency of the warning left no time for deliberation. *Ib.*

## RAPE.

1. CRIMINAL LAW: RAPE: AGE OF PROSECUTRIX: EVIDENCE. In a prosecution for rape, where the prosecutrix, her mother, and another testified positively and directly that the prosecutrix was, at the time of the alleged offense, under the age of fourteen years, and other witnesses gave indirect and unsatisfactory testimony to the contrary, the evidence will be held sufficient to sustain the finding of the jury that she was then under fourteen years of age. *The State v. Duffey, 549.*

2. ———: ———: ———: ———. The evidence examined and held sufficient to sustain the finding that defendant had sexual intercourse with the prosecutrix constituting rape, she being at the time under fourteen years of age. *Ib.*

3. ———: ———: ———: ———: CHASTITY. Evidence of bad reputation for chastity is admissible in prosecutions for rape, where the woman is capable of consenting, but is immaterial where the prosecutrix is under the age of consent, except to effect her credibility, for which purpose it is competent. *Ib.*

## RECOGNIZANCE.

1. CRIMINAL PRACTICE: CHANGE OF VENUE: RECOGNIZANCE. A defendant in a criminal case, to whom a change of venue to the circuit court of another county has been awarded, and who has entered into a recognizance to appear therein, is bound to appear at the next succeeding term of such court; and this is true although the time for his appearance as required in the recognizance had passed when it was executed. *State ex rel. Gibson v. Lay, 609.*

2. ———: ———: ———: CLERICAL ERROR. The recital in the recognizance as to the time of the appearance will be treated as a clerical error. *Ib.*

3. ———: ———: ———. Where a sheriff, under Revised Statutes, 1889, section 4126, takes and approves the recognizance of a defendant and files the same in the office of the circuit clerk, he can not impair its validity by subsequently removing it from the clerk's office and withdrawing his approval. *Ib.*

4. ———: ———: ———. The circuit court has in such case authority to protect its records notwithstanding jurisdiction of the cause itself has been lost by the entry of an order granting a change of venue. *Ib.*

## RECORD.

See OFFICES AND OFFICERS, 1.

## REDEMPTION.

See PLEDGE, 4.

## RELIGIOUS SOCIETY.

1. CONSTITUTION: AMENDMENT: RELIGIOUS SOCIETY. The constitution of a religious society, adopted by its general conference and acquiesced in for forty years, although it was never submitted to, or ratified by, the persons to be governed by it, and was never fully recognized by the entire body of the church, will be held to constitute the paramount law thereof, and can be changed or repealed only as provided in the constitution itself, and not by the conference or legislative body by which it was adopted. *Russie v. Brazzell, 93.*

2. ———: ———: ———. The method of amendment of the constitution of a religious society considered and *held* to be in substantial compliance with the provisions of such constitution. *Ib.*

3. ———: ———: ———. Where a constitution of a religious society provided that amendments thereto should be made on the request of two thirds of the society, a resolution of the general conference that two thirds of those voting should be taken as the request of two thirds of the members, is conclusive on the courts. *Ib.*

4. RELIGIOUS SOCIETY: CONFESSION OF FAITH, CHANGE OF. A revised confession, merely setting out more fully and clearly the doctrines of a religious society, is not a change of its confession of faith. *Ib.*

5. ———: CONSTITUTION: AMENDMENTS: BALLOTS. A vote on proposed amendments to a constitution of a religious society will not be adjudged invalid on collateral attack on the ground that the ballots were unfair, in that all contained the word "yes," with directions that those voting in the negative should erase such word and insert the word "no." *Ib.*

## REMARKS OF COUNSEL.

See PRACTICE, CRIMINAL, 12.

## REMARKS OF COURT.

See PRACTICE, CIVIL, 29.

## REMEDY.

RIGHT: REMEDY. Where all remedy is taken away by statute, the right which the remedy was intended to enforce is destroyed. *St. Louis Type Foundry Company v. Jackson, 119.*

## REPEAL.

1. CONSTITUTION: STATUTE: REPEAL BY IMPLICATION. An unconstitutional enactment will not by mere implication repeal a prior valid law. *City of Westport ex rel. Kitchen v. McGee, 152.*

2. STATUTES: REPEAL BY IMPLICATION. A later statute will not repeal a former one by implication, unless they are irreconcilably repugnant or it appears that the legislature intended the later act to take the place of the former one. *Kansas City v. Smart, 272.*

## REPLEVIN.

SALE: SYMBOLIC DELIVERY: REPLEVIN. Symbolic delivery of personal property, as by bill of sale or warehouse receipt, is sufficient to vest title in the vendee and a right to maintain replevin therefor. *Collins v. Wayne Lumber Company, 451.*

## REPUTATION.

See EVIDENCE, 4.

## RESCISSION.

DEED: RESCISSION: FRAUDULENT MISREPRESENTATION. Where it appears that a party, charging fraudulent misrepresentations in respect to the giving of a quitclaim deed to land, in fact acted upon his own judgment in so doing, and that the alleged misrepresentations formed no material inducement to his action, he can not rescind it. *Warren v. Ritchie, 311.*

## RESERVATION.

See DEDICATION, 2.

## RESIDENCE.

1. RESIDENCE, ACQUISITION OF, BY STUDENT. A student may gain a residence at the place where he attends school, although he may have gone there only for the purpose of attending school. Whether he has done so or not depends upon the facts and circumstances. *Hall v. Schoenecke, 661.*

2. ———: INTENTION: EVIDENCE. The question of residence, in such case, is largely one of intention, though, as to this, the evidence of the party himself is not necessarily conclusive. The fact that he is supported and maintained by his parents and spends his vacations with them, away from the school, is a strong, but not necessarily conclusive circumstance to prove that he has not changed his residence. *Ib.*

3. RESIDENCE: QUESTION FOR COURT. The question of residence is one of fact for the court in cases tried by it, and where no declarations of law are given and there is substantial evidence to support its finding, it will not be disturbed on appeal. *Ib.*

4. ———: INTENTION: PRESUMPTION. The presumption in favor of one having acquired a residence in this state by coming into it and remaining for two years may be rebutted by evidence that it was not his intention to acquire residence here. Whether a change of residence was effected in any case depends upon the intention with which the removal from the former residence was made. *Ib.*

5. ———: REMOVAL FOR PURPOSES OF EDUCATION: INTENTION OF RETURNING TO FORMER RESIDENCE: RIGHT TO VOTE AT TEMPORARY ABODE. A temporary removal by a person for the sole purpose of educating his children without any intention of abandoning his usual residence and with the intention of returning thereto when his purpose had been accomplished, will not constitute such a change of residence as would, under the law, entitle him to vote at his temporary abode. *Ib.*

6. ———: ———: ———: ———: FINDING OF TRIAL COURT: PRESUMPTION. Where there was evidence that a person moved to a place for the purpose of educating his children and no evidence that such intention was afterward changed, the finding of the court that he acquired no residence there will be presumed to be correct, where it does not appear upon what theory of law the court decided the questions of fact. *Ib.*

## REVISION OF STATUTES.

See STATUTES, 21.

## RIGHT.

RIGHT: REMEDY. Where all remedy is taken away by statute, the right which the remedy was intended to enforce is destroyed. *St. Louis Type Foundry Co. v. Jackson, 119.*

## ROADS AND HIGHWAYS.

1. HIGHWAY, OPENING OF: REGULARITY OF PROCEEDINGS. Regularity of proceedings in the county court of Jackson county for the opening of a boulevard begun at the regular May term of 1884 and adjourned to June, the June session being held at Kansas City and the others at Independence, considered and sustained. *Rose v. Kansas City, 135.*

2. ———: WIDTH: VALIDITY OF ORDER. An order establishing a highway is not void for failing to designate its width, where it is shown by the petition and other papers contained in the record and mentioned in the order. *Ib.*

3. ———: ———: COMMISSIONER'S REPORT. The report of the road commissioner in this case *held* not to show that he had laid out a highway of less width than that called for by the order of the court. *Ib.*

See BOUNDARIES, 1, 2.

MUNICIPAL CORPORATIONS, 19–27.

## ST. LOUIS.

See OFFICES AND OFFICERS, 2, 3.

## SALE.

1. SALE: MEMORANDUM: PAROL EVIDENCE. Where the memorandum of a contract of sale is incomplete, parol evidence is admissible to show the omitted matter. *Quick v. Glass, 320.*

2. SALE: VENDOR'S LIEN: WAIVER. A vendor of personal property who has possession of it at the time of the insolvency of the vendee may enforce a vendor's lien against it for the unpaid purchase price, although he has previously accepted the vendee's notes for the full sum of such purchase price. *Vogelsang's Administrator v. Fisher, 386.*

3. ———: ———: POSSESSION. A distiller, pursuant to a contract with a dealer, made for him a quantity of whiskey, branding the barrel with the dealer's name as distiller and stored it in a United States bonded warehouse invoiced to the dealer who gave to the distiller notes for the purchase price. The contract stipulated that the dealer should not be responsible for the management of the distillery while being operated in his name and that the distiller should charge storage on the whiskey while in the warehouse and give it all the necessary care and deliver it free of charge on board the cars for shipment to the dealer. *Held*, that the possession of the whiskey while in the warehouse was not in the dealer, but was in the distiller, jointly with the government storekeeper, so as to give the vendor a right to a lien, on the insolvency of the dealer. *Ib.*

4. ———: WAREHOUSE RECEIPTS: PLEDGE: VENDOR'S LIEN. The giving of *non* negotiable warehouse receipts by a vendee of whiskey stored in a government bonded warehouse, to a creditor of such vendee to secure an antecedent debt operates only as a pledge of such property to secure said debt and does not affect an existing vendor's lien thereon. *Ib.*

5. **Sale: symbolic delivery: replevin.** Symbolic delivery of personal property, as by bill of sale or warehouse receipt, is sufficient to vest title in the vendee and a right to maintain replevin therefor. *Collins v. Wayne Lumber Company, 451.*

6. ————: **contract: passing title.** In the absence of fraud, the title to lumber, cut in accordance with an agreement by plaintiff to buy the lumber cut by defendant's mill for a year, passed, as between the grantor and grantee, when the lumber was separately stacked, marked with plaintiff's initials, measured and a formal unconditional bill of sale was executed and delivered, though plaintiff still owed a residue on the lumber which was not to be paid until it was shipped. *Ib.*

7. **Sale: personal property.** A sale of personal property at common law could not be effected without a proper subject of sale, a price and the consent of the contracting parties; where any one of these necessary elements was lacking, there could be no sale. *Greer v. Lafayette County Bank, 559.*

8. ————: ————: **pledge.** Where bank stock was pledged as collateral security for a note given a bank and the note and collateral were sold by the pledgee to another bank which afterward transferred it to the president of the pledgee bank upon his direction, without any mutual agreement to that effect and without any price having been agreed upon, such transfer does not constitute a sale and the title of the pledged stock remained as before such attempted transfer. *Ib.*

9. **Loan payable on demand: pledge: sale: notice: conversion.** A sale of collaterals held for a loan payable on demand, without notice to or demand of the pledgor, is invalid and may, at the option of the latter, be affirmed or treated as a conversion. *Ib.*

10. **Pledge: sale: notice: agent: redemption.** The pledgee must, as a general rule, give reasonable notice to the pledgor of his intention to sell and he can not buy at the sale, whether made by himself or his agent or broker. A sale without notice or at which the pledgee purchases is a breach of the contract of pledge and the pledgor may treat such sale and purchase as a conversion and will be entitled to redeem on payment or tender of the principal debt. *Ib.*

See Taxation, 1.

### SEAL.

See Deeds, 6, 7, 8.

### SELF–DEFENSE.

See Criminal Law, 9.

### SPECIAL ASSESSMENTS.

See Taxation, 10.

### SPECIAL LAWS.

See Local and Special Laws.

### STARE DECISIS.

**Statute, construction of: stare decisis.** Where a mode of legislation has been followed on the faith of rulings of the supreme court, and rights have been acquired thereunder, the court will follow those rulings on the maxim, *stare decisis*, without reopening the question of their correctness. *The State ex rel. Dickason v. County Court of Marion County, 427.*

744 INDEX.

STATUTES.

1. STATUTE: CONSTRUCTION: FORFEITURE. It is a general principle of the common law that a statute should be liberally construed to prevent a forfeiture of rights. *McGrath v. Kansas City & Colorado Railroad Company, 1.*

2. ———— : ————. A change of language in a statute does not necessarily indicate a change in its prior construction; and will not be held to have such effect where the change appears to be merely an embodiment of that construction into positive law. *Ib.*

3. MUNICIPAL CORPORATION: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: STATUTES: REPEAL. The power of the mayor and council of Kansas City to establish a boulevard under its charter (arts. 3 and 7) was not abrogated by the amendment of section 3, article 10, of such charter, requiring the board of park and boulevard commissioners to select streets for the establishment of boulevards and to recommend its action thereon to the council. *Kansas City v. Smart, 272.*

4. STATUTES: REPEAL BY IMPLICATION. A later statute will not repeal a former one by implication, unless they are irreconcilably repugnant or it appears that the legislature intended the later act to take the place of the former one. *Ib.*

5. DRAMSHOP: LICENSE: RAILROAD INDEBTEDNESS: STATUTE. The proviso of section 4575 (R. S. 1889) does not pledge or give the state's credit, or county funds for the use of Mason township. *The State ex rel. Dickason v. County Court of Marion County, 427.*

6. ———— : ———— : ———— : ————: GENERAL LAW. A law which applies to all persons who may come into like situation and circumstances is not special, within the meaning of the constitution. *Ib.*

7. ———— : ———— : ———— : ————. The proviso of section 4575 does not impose any new liability on the county or township; nor does it impair any obligation of the township, or deprive the county of its funds without due process of law, or of the means to maintain its government. *Ib.*

8. ———— : ———— : ———— : ————: TOWNSHIP INDEBTEDNESS. The term "township indebtedness," in section 4575, applies to debts created by funding bonds chargeable upon the property of an unorganized, territorial township. The nature of such liability explained. *Ib.*

9. ———— : ———— : ———— : ————. Compromise bonds, duly issued under section 835, are a charge on the township property, whether the inception of the debt was valid or not. *Ib.*

10. ———— : ———— : ———— : ————: CONSTITUTION. The proviso in section 4575 (R. S. 1889) *held* constitutional as against the objection that it is retrospective in effect. *Ib.*

11. ————: ————: ————: ————. The proviso of section 4575 is within the scope of the title of the act of which it is part. *Ib.*

12. STATUTE: TITLE: CONSTITUTION. The title of an act is sufficient if it does not mislead as to its chief topic, and the minor features have a natural connection with the subject named in the title. *Ib.*

13. ————: ————: ————. Mere generality in the title of an act will not vitiate it, if it is not misleading. *Ib.*

14. ————: ————: ————. Amendments to sections of the revised statutes may be made by acts whose titles refer to those sections by numbers. *Ib.*

15. ————: SPECIAL LAW: CONSTITUTION. That an act is to apply only to counties having a stated population does not, of itself, render it special. *Ib.*

16. STATUTE, CONSTRUCTION OF: STARE DECISIS. Where a mode of legislation has been followed on the faith of rulings of the supreme court, and rights have been acquired thereunder, the court will follow those rulings on the maxim, *stare decisis*, without reopening the question of their correctness. *Ib.*

17. ————. A statute, fairly susceptible of a construction in harmony with the organic law, must be given that construction by the courts in order to sustain it. *Ib.*

18. ————: ————. It is the duty of the courts to sustain a legislative act, unless convinced that it infringes some particular provision of the organic law. *Ib.*

19. ————. The words of a statute should be construed in accordance with their plain and ordinary meaning. *Ib.*

20. ————. All parts of a law must be considered in getting at the full significance of any part of it. *Ib.*

21. STATUTES, REVISION OF. A revision of statutes is intended to take the place of the law as previously formulated and to be a substitute therefor. It displaces and repeals the former law relating to subjects within its purview and continues in operation whatever of the old law that is restated in it. Revised Statutes, 1889, section 6606; Revised Statutes, 1879, section 3160. *The State ex rel. Craig v. Woodson, 497.*

22. CONSTITUTION: ACTS, 1891, P. 175: SPECIAL OR LOCAL LEGISLATION. The provisions of the act approved April 23, 1891 (Acts, 1891, p. 175), for paying justices of the peace of the city of St. Louis a salary, and for paying their costs and fees into the city treasury, are not in conflict with any of the prohibitory clauses of section 53, article 4, of the constitution. *Spaulding v. Brady, 653.*

23. ————: ————: ————. Legislation which is authorized by the constitution itself can not be regarded as local or special within the meaning of the prohibition of section 53, article 4, of the constitution, although its application is purely local. *Ib.*

## STATUTES CITED AND CONSTRUED.

### REVISED STATUTES, 1889.

Section  424, page 490
543, page 21.
558, page 23.
835, page 438.
1580, pages 159, 160, 162.
1589, page 192.
1603, page 158.
1604, page 159.
1623, page 193.
1629, page 193.
2013, page 79.
2043, page 340.
2047, pages 340, 636.
2188, page 644.
2246, page 520.
2249, pages 508, 515, 520.
2250, page 520.
2303, page 293.
2304, page 636.
2608, page 607.
3487, page 533.
3748, page 267.
4160, page 613.
4161, page 613.
4162, page 613.
4163, page 614.
4166, page 616.
4167, pages 536, 616.
4425, page 6.
4430, page 255.

Section 4575, pages 436, 443.
4670, page 670.
4707, pages 507, 509, 519.
4721, page 271.
4722, page 271.
4723, page 271.
4725, page 266.
4726, page 266.
4744, pages 508, 511, 519.
4781, page 668.
4914, page 176.
5378, pages 272, 338.
5972, page 255.
6122, page 659.
6123, page 659.
6136, page 8.
6570, page 438.
6606, page 511.
6772, page 17.
6864, page 150.
6869, page 149.
7313, page 17.
7531, page 157.
7552, page 157.
7569, page 157.
7605, page 159.
7682, page 183.
8611, page 521.
8836, page 327.
Chapter  56, page 440.

### REVISED STATUTES, 1879.

Section  558, page 404.
1205, page 139.
1206, page 139.
1207, page 139.

Section 1208, page 139.
2849, page 8.
3160, page 511.
5529, page 510.
5560, page 511.

### WAGNER'S STATUTES, 1872.

Section 8, page 998, see page 219.
Section 9, page 998, see page 219.
Section 10, page 998, see page 219.
Section 11, page 998, see page 219.
Section 12, page 998, see page 219.
Section 38, page 1225, see page 219.
Section 165, page 1193, see page 219.

### GENERAL STATUTES, 1865.

Section 4, chapter 108, page 442, see page 327.
Section 8, chapter 44, see page 17.
Section 53, page 66, see page 510.
Section 76, page 121, see page 219.

# INDEX.

## REVISED STATUTES, 1855.

Section 1, page 1349, see page 219.
Section 56, page 706, see page 510.

## LAWS, 1893.

Section 1, page 260, see page 377.
Section 4, page 260, see page 378.
Section 7, page 151, see page 436.
Page 156, see page 668.

## LAWS, 1891.

Section 7, page 129, see page 436.
Page 61, see page 163.
Page 62, see page 163.
Page 70, see pages 59, 520.
Page 175, see pages 655, 660.

## LAWS, 1887.

Section 5, page 52, see page 161.
Page 157, see pages 139, 140.
Page 179, see page 439.

## LAWS, 1883.

Section 7, page 159, see page 141.
Section 8, page 159, see pages 142, 143.
Section 9, page 160, see pages 142, 143.
Page 86, see page 440.
Page 91, see page 266.
Page 157, see page 141.

## LAWS, 1877.

Section 2, page 175, see page 163.
Section 14, page 227, see page 139.
Section 15, page 228, see page 139.
Section 16, page 228, see page 139.
Section 17, page 228, see page 139.

## LAWS, 1875.

Page 252, see pages 181, 183.

## LAWS, 1873.

Section 5, page 155, see page 139.

## LAWS, 1867.

Page 114, see pages 510, 511.

## LAWS, 1864–5.

Page 227, see page 243.

## LAWS, 1863–4.

Page 255, see page 243.

## STOCK.

See CORPORATIONS, 4.

# 748                     INDEX.

## STREETS AND ALLEYS.

See MUNICIPAL CORPORATIONS, 1-8.

## SUPERSEDEAS.

ELECTION CONTESTS: APPEAL: BOND: SUPERSEDEAS. The appeal bond required to be given by section 4744, Revised Statutes, 1889, providing for appeals from judgments in election contests, does not operate as a *supersedeas* as to anything appealed from except the costs. *The State ex rel. Craig v. Woodson, 497.*

## SWAMP LANDS.

See LAND AND LAND TITLES, 9, 10, 11.

## TAXATION.

See TAXATION.

## TAX BILL.

See TAXATION, 8.

## TAX LIEN.

See TAXATION, 3.

## TAX SALE.

See TAXATION, 1.

## TOWNSHIPS.

See STATUTES, 5, 7, 8, 9.

## TAXES.

1. BACK TAXES: LIEN: JUDGMENT: SALE, SETTING ASIDE OF. Where the court had jurisdiction of the subject-matter and of the defendant in an action for back taxes, its judgment rendered therein is not void, and it was error, in the absence of fraud, to set aside the sale under execution on the judgment, on motion of the defendant, for any irregularity before the rendition of the judgment, such as failure to correct the delinquent list before suit was brought, or the payment of the taxes, or because of inadequacy of price at the sale. *The State ex rel. Daubin v. Boyd, 130.*

2. MUNICIPAL CORPORATION: EXTENSION OF LIMITS: TAXES. Lands brought into a city by the extension of its boundaries are not subject to a tax levy already made. *City of Westport ex. rel. Kitchen v. Mc-Gee, 152.*

3. ———: CITY OF FOURTH CLASS: TAXATION: LIEN. A city of the fourth class must by ordinance establish the rate of taxes upon the basis of the county assessment, and no lien is created therefor until the taxes are levied and extended by the city council on the city tax book. *I b.*

4. ———: ———: ———. The law pertaining to such cities does not require its taxes to be levied on any fixed date and the requirement that the mayor shall obtain a copy of the county assessment on the first day of May of each year is, as to such time, merely directory. *I b.*

5. ———: ———: ———: INTEREST. The allowance of twelve per cent. interest on delinquent taxes due cities of the fourth class is legal. (R. S. 1889, secs. 1604, 7605.) *I b.*

**6.** ——: ——: ——: EXEMPTION: CONSTITUTION. Revised Statutes, 1889, section 1580, exempting from taxation in cities of the fourth class agricultural lands exceeding five acres included within the city limits is violative of the constitution, article 10, section 3, providing that taxes "shall be uniform upon the same class of subjects and shall be levied and collected by general laws" and article 10, section 6, which exempts agricultural land when "used exclusively for agricultural or horticultural societies." *Ib.*

**7.** ——: ——: ——: ——. Although the exemption contained in the foregoing section is unconstitutional, the power of extending the city limits therein provided for is not so dependent on the exemption clause as to render the extension clause unconstitutional. *Ib.*

**8.** TAX BILL: LIMITATION: NEW PARTIES. Where, under a statute providing that a tax bill shall be a lien on the property for two years but no longer, unless within that time suit is brought, suit is commenced against S. alone, who is at the time deceased, and after two years his heirs are brought in by amendment, the action is barred. *Jaicks v. Sullivan, 177.*

**9.** TAXATION, RATE OF: CONSTITUTION. An annual tax, authorized by section 12, article 10, of the Missouri constitution, is not within the limitations of section 11 of that article, but may be imposed, under the conditions and restrictions of section 12, even though in excess of the rates stated in section 11. The effect and relations of these two sections are discussed. *Lamar Water & Electric Light Company v. City of Lamar, 188.*

**10.** ——: ——: SPECIAL ASSESSMENTS: LOCAL IMPROVEMENTS. The "special" taxes referred to in section 11, article 10, of the constitution, do not embrace special assessments for local improvements, though the latter are based on the taxing power. *Ib.*

**11.** ——: ——: ——: ——: MUNICIPAL CORPORATION. Where a city of the fourth class agrees in proper manner to pay a certain sum annually for a water supply, during a term of twenty years, the total sum that may fall due within that period is not an "indebtedness" for that sum, within the meaning of article 10, section 12, of the constitution. *Ib.*

**12.** ——: ——: TAXATION. In determining what constitutes the "income and revenue provided for" one year, within the meaning of section 12, article 10, of the constitution, all sources or income, including that from licenses, should be estimated. *Ib.*

TRADE-MARK.

See CRIMINAL LAW, 3.

TRESPASSER.

See RAILROADS, 22.

VENDOR'S LIEN.

See LIENS, 5, 6, 7.

## VENUE.

1. CRIMINAL LAW: PRACTICE: CHANGE OF VENUE: EVIDENCE. Where a change of venue has been taken in a criminal case, it is for the court trying the case to determine whether the order of removal and prior proceedings in the county in which the prosecution originated were sufficient to confer jurisdiction, and the transcript of such order and prior proceedings need not be offered in evidence on the trial by the state. *The State v. Lingle, 528.*

2. ———: ———: ———: PRESUMPTION. An order of removal on change of venue is sufficient, where the transcript contains the petition of defendant for a change, necessary affidavits in support of it, and recites that the application was considered by the court, the change awarded and bond fixed and given for defendant's appearance at the next term of the circuit court of the county to which the change was awarded, and it will not be presumed in such case that there might have been another application on a different ground. *Ib.*

3. CRIMINAL PRACTICE: CHANGE OF VENUE: RECOGNIZANCE. A defendant in a criminal case, to whom a change of venue to the circuit court of another county has been awarded, and who has entered into a recognizance to appear therein, is bound to appear at the next succeeding term of such court; and this is true although the time for his appearance as required in the recognizance had passed when it was executed. *The State ex rel. Gibson v. Lay, 609.*

4. ———: ———: ———: CLERICAL ERROR. The recital in the recognizance as to the time of the appearance will be treated as a clerical error. *Ib.*

5. ———: ———: ———. Where a sheriff, under Revised Statutes, 1889, section 4126, takes and approves the recognizance of a defendant and files the same in the office of the circuit clerk, he can not impair its validity by subsequently removing it from the clerk's office and withdrawing his approval. *Ib.*

6. ———: ———: ———. The circuit court has in such case authority to protect its records notwithstanding jurisdiction of the cause itself has been lost by the entry of an order granting a change of venue. *Ib.*

7. ———: ———. Where an order for a change of venue has been duly entered of record, the county to which the venue is changed immediately acquires jurisdiction of the cause. *Ib.*

8. ———: ———. *Semble,* that the awarding a change of venue in a criminal case in the absence of the prisoner is of doubtful propriety. *Ib.*

## VERDICT.

1. MUNICIPAL CORPORATION: KANSAS CITY CHARTER: ESTABLISHMENT OF BOULEVARDS: VERDICT. The mere fact that the verdict in such proceedings assessed the benefits to the city at one dollar will not justify setting it aside as unjust and discriminating, such verdict being founded on the conflicting evidence of numerous witnesses and on views of the premises by them extending over a period of several weeks. *Kansas City v. Smart, 272.*

2. ———: ———: ———: VERDICT. A mistake in the description affecting a certain lot in the verdict is immaterial where it is obviated by a correct description in the ordinance providing for the condemnation proceedings. *Ib.*

3. APPELLATE PRACTICE: VERDICT: ERRONEOUS INSTRUCTION. Where a verdict is the only one that could properly have been rendered on the evidence, it will not be disturbed because of the giving of an erroneous instruction. *Greer v. Lafayette County Bank, 559.*

### WAREHOUSE RECEIPTS.

See SALE, 4.

### WILLS.

1. WILL: AFTER–ACQUIRED PROPERTY: CONSTRUCTION. A will, as to the distribution of the property devised or bequeathed, is to be construed as of the date of the testator's death, unless a contrary intention appears. *Webb v. Archibald, 299.*

2. ———: ———: ———. A testatrix, by the first clause of her will, bequeathed a money legacy to her daughter K. and appointed a trustee to take possession of the same "on my death" and to invest it in land. By the second clause she devised equally to her two sons, to her daughter M. and to a grandson all her real estate, including a farm of four hundred acres on which she lived and twenty acres of land south of it. By the third clause she gave a legacy of $1,000 to one of her sons and provided that out of the remainder of the property her debts should be paid and that, if anything was then left it should be equally divided between her two sons and daughter mentioned in the second clause. *Held,* that the last three named devisees took under the third clause a farm which the testatrix acquired after the making of the will. *I b.*

# RULES FOR THE GOVERNMENT

OF THE

# SUPREME COURT OF MISSOURI,

*Adopted at the April Term, 1891.*

---

**Chief Justice, his duty.**

RULE 1. The Chief Justice shall superintend matters of order in the court room.

**Motions to be written, signed and filed.**

RULE 2. All motions in a cause shall be in writing, signed by counsel and filed of record.

**Argument of motions.**

RULE 3. No motion shall be argued unless by the direction of the court.

**Diminution of record, suggestion after joinder in error.**

RULE 4. No suggestion of diminution of record in civil cases will be entertained by the court after joinder in error, except by consent of parties.

**Application for certiorari.**

RULE 5. Whenever a *certiorari* may be applied for, there shall be an affidavit of the defect in the transcript which it is designed to supply, and at least twenty-four hours' notice shall be given to the adverse party or his attorney previous to the making of the application.

**Reviewing instructions.**

RULE 6. For the purpose of reviewing the action of the trial court, in giving and refusing instructions, it shall not be necessary to set out the evidence in the bill of exceptions; but it shall be sufficient to state that there was evidence tending to prove the particular fact or facts. If the parties disagree as to what fact or facts the evidence tends to prove, then the evidence of the witnesses may be stated in a narrative form avoiding repetition and omitting all immaterial matter.

**Bill of exceptions in equity cases.**

RULE 7. In cases of equitable jurisdiction the whole of the evidence shall be embodied in the bill of exceptions; provided that it shall be sufficient to state the legal effect of documentary evidence where there is no dispute as to the admissibility or legal effect thereof; and provided further, that parol evidence may be reduced to a narrative form where this can be done and at the same time preserve full force and effect of the evidence.

(i)

### Presumption in support of bill of exceptions.

RULE 8.   The only purpose of a statement, in a bill of exceptions, that it sets out all the evidence in a cause, being that the Supreme Court may have before it the same matter which was decided by the court of first instance, it shall be presumed as a matter of fact in all bills of exceptions, for the future, that they contain all the evidence applicable to any particular ruling to which exception is saved.

### Making up transcripts.

RULE 9.   The clerks of the several circuit courts and other courts of first instance, before which a trial of any cause is had, in which an appeal is taken or writ of error is sued out, shall not (unless an exception is saved to the regularity of the process, or its execution, or to the acquiring by the court of jurisdiction in the cause), in making out transcripts of the record for the Supreme Court, set out the original or any subsequent writ or the return thereof; but in lieu thereof shall say (*e. g.*): "Summons issued October 2, 1891, executed October 5, 1891," and, if any pleading be amended, the clerk, in making out transcripts, will treat the last amended pleading as the only one of that order in the cause, and will refrain from setting out any abandoned pleading as part of the record, unless it be made such by a bill of exceptions; and no clerk shall insert in the transcript any matter touching the organization of the court, or any mention of any continuance, motion or affidavit in the cause, unless the same be specially called for by the bill of exceptions.

### Words appellant and respondent, what they include.

RULE 10.   Whenever the words appellant and respondent appear in these rules they shall be taken to mean and include plaintiff and defendant in error and other parties occupying like positions in a cause.

### Abstracts in lieu of transcript, when filed and served.

RULE 11.   In those cases where the appellant shall, under the provisions of section 2253, Revised Statutes of 1889, file in this court a copy of the judgment, order or decree, in lieu of a complete transcript, he shall deliver to the respondent a copy of his abstract at least sixty days before the cause is set for hearing, and shall in like time file ten copies thereof with the clerk of this court.   If the respondent is not satisfied with such abstract, he shall deliver to the appellant a complete or additional abstract at least thirty days before the cause is set for hearing, and within like time file ten copies thereof with the clerk of this court. Objections to such complete or additional abstract shall be filed with the clerk of this court within ten days after service of such abstract upon the appellant, and a copy of such objections shall be served upon the respondent in like time.

### Abstracts, when filed and served.

RULE 12.   In all cases where a complete transcript is brought to this court in the first instance, the appellant shall deliver to respondent a copy of his abstract of the record at least thirty days before the day on which the cause is set for hearing, and file ten copies thereof with the clerk of this court not later than the day preceding the one on which the cause is

set for hearing. If the respondent desires to file a further or additional abstract, he shall deliver to the appellant a copy thereof at least five days before the cause is set for hearing, and file ten copies thereof with the clerk of this court on the day preceding that on which the cause is to be heard.

### Abstracts, what they shall contain.

RULE 13. The abstracts mentioned in rules 11 and 12 shall be printed in fair type, and shall be paged, and shall have a complete index at the end thereof, and shall set forth so much of the record as is necessary to a full and complete understanding of all the questions presented to this court for decision. Where there is no question made over the pleadings, or over deeds or other documentary evidence, it shall be sufficient to set out the substance of such pleadings or documentary evidence. The evidence of witnesses shall be stated in a narrative form, except when the questions and answers are necessary to a complete understanding of the evidence. When there is any question made over the pleadings, or as to the admissibility or legal effect of any documentary evidence, the pleadings and such documentary evidence must be set out in full with the indorsements thereon; and in all other respects the abstract must set forth a copy of so much of the record as is necessary to be consulted in the disposition of all the assigned errors.

### Printed transcripts.

RULE 14. A printed and indexed transcript duly certified by the clerk of the trial court may be filed instead of a manuscript record; and in all cases ten printed and indexed, uncertified copies of the entire record, filed and served within the time prescribed by these rules for serving abstracts shall be deemed a full compliance with said rule and dispense with the necessity of any further abstracts.

### Briefs, what to contain and when served.

RULE 15. The appellant shall deliver to the opposing party a copy of his brief thirty days before the day on which the cause is set for hearing, and the respondent shall deliver a copy of his brief to the opposing party at least five days before the last-named date, and the appellant shall deliver a copy of his brief in reply to the opposing party not later than the day preceding that on which the cause is set for hearing, and ten copies of each brief shall be filed with the clerk on or before the last-named date.

All briefs shall be printed and shall contain, separate and apart from the argument or discussion of authorities, a statement, in numerical order, of the points relied on, together with a citation of authorities appropriate under each point. And any brief failing to comply with this rule may be disregarded by the court.

The brief filed by appellant shall distinctly and separately allege the errors committed by the inferior court, and no reference will be permitted at the argument to the errors not thus specified, unless for good cause shown the court shall otherwise direct.

In citing authorities, in support of any proposition, it shall be the duty of the counsel to give the names of the parties to any case cited from

any report of the adjudged cases, as well as the number of the volume and the page where the same will be found; and when reference is made to a passage in any elementary work or treatise, the number of the edition, the volume, section, paging or side paging shall be set forth.

### Failure to comply with rules 11, 12, 13 and 15.

RULE 16.   If any appellant in any civil cases shall fail to comply with rules, numbered 11, 12, 13 and 15, the court, when the cause is called for hearing, will dismiss the appeal or writ of error; or at the option of the respondent continue the cause at the costs of the party in default.

### Costs, when allowed for printing abstracts and records.

RULE 17.   Costs will not be allowed either party for any abstract, filed in lieu of a full transcript under section 2253, Revised Statutes, 1889, which fails to make a full presentation of all the record necessary to be considered in disposing of all the questions arising in the cause.   But in those cases brought to this court by a copy of the judgment, order or decree instead of a full transcript, and in which the appellant shall file in this court a printed copy of the entire record as and for an abstract, costs will be allowed for printing the same.

In any case in which a manuscript record has been or may be filed in this court a reasonable fee for printing an abstract of the record or the entire record in lieu of an abstract may be taxed as costs upon the written stipulation of both parties to that effect.   The affidavit of the printer shall be received in every case, where costs may properly be taxed for printing, as *prima facie* evidence of the reasonableness thereof; and, if the adverse party objects thereto, such objection shall be filed within ten days after service of notice of the amount of such charge.

### Service of abstracts and briefs.

RULE 18.   Delivery of an abstract or brief to the attorney of record of the opposing party shall be deemed a delivery to such party under the foregoing rules, and the evidence of such delivery must be by the written acknowledgment of such opposing party or his attorney, or the affidavit of the person making the service, and such evidence of service must be filed in this court with the abstract or brief.

### Taking record from clerk's office.

RULE 19.   No member of the bar shall be permitted to take a record from the clerk's office without the written permission of some judge of the court; provided, any enrolled attorney may withdraw the record in any cause in which he is counsel for the purpose of having the same printed in full by filing with the clerk of this court the written consent of the adverse party or his attorney and also a receipt, agreeing to return such record within the time to be named therein.

### Motions for rehearing.

RULE 20.   Motions for rehearing must be accompanied by a brief statement of the reasons for a reconsideration of the cause, and must be founded on papers showing clearly that some question decisive of the case, and duly submitted by counsel, has been overlooked by the court, or that

the decision is in conflict with an express statute, or with a controlling decision to which the attention of the court was not called through the neglect or inadvertence of counsel; and the question so submitted by the counsel and overlooked by the court, or the statute with which the decision conflicts, or the controlling decision to which the attention of the court was not called, as the case may be, must be distinctly and particularly set forth in the motion, otherwise the motion will be disregarded. Such motion must be filed within ten days after the opinion of the court shall be delivered, and notice of the filing thereof must be served on the opposite counsel.

## Extension of time.

RULE 21. Hereafter in no case will extension of time for filing statements, abstracts and briefs be granted, except upon affidavit showing satisfactory cause.

## Notice to adverse party.

RULE 22. A party, in any cause, filing a motion either to dismiss an appeal or writ of error, or to affirm the judgment, shall first notify the adverse party or his attorney of record, at least twenty-four hours before making the motion, by telegram, by letter, or by written notice, and shall, on filing such motion, satisfy the court that such notice has been given.

RULE 23. A motion to transfer a cause under the provisions of the constitution from either division to court *in banc* must be filed within ten days after the final disposition of the cause by the division, and notice of such motion shall be given as provided in Rule 22.

RULE 24. All rules not included in the foregoing enumeration are hereby rescinded.

### ADDITIONAL RULE.

RULE 25. Original writs or other process issued by either division of the court, or by any judge in vacation shall be returnable to and disposed of by such division.

All motions and matters in civil cases which have not been assigned by the court *in banc* to a division for final determination, upon the record, shall be presented to, heard and determined by Division Number One.

All matters in civil causes which have been assigned to a division shall be presented to and heard and determined by such division.

All criminal causes, and matters pertaining thereto, shall be heard and determined by Division Number Two. *(Adopted October 13, 1893.)*